## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEFON MORANT,<br><br>                  Plaintiff,<br><br>   v.<br><br>The CITY OF NEW HAVEN; Chief of Police NICHOLAS PASTORE, in his individual and official capacities; and Officers VINCENT RAUCCI, ROBERT LAWLOR, VAUGHN MAHER, JOSEPH PETTOLA, and MICHAEL SWEENEY, in their individual capacities;<br><br>                Defendants. | Civil Action No.<br>3:22-CV-630 (CSH)<br><br><br><br>JUNE 28, 2023 |

### RULING ON DEFENDANT VINCENT RAUCCI'S MOTION TO QUASH SUBPOENA
### [Doc. 66]

**Haight, Senior District Judge:**

## I. BACKGROUND

Plaintiff Stefon Morant commenced this civil rights action, seeking damages for wrongful imprisonment for the double homicide of Ricardo Turner and Lamont Fields on October 11, 1990, which Plaintiff did not commit. Doc. 1, ¶ 1. On June 8, 1994, Morant was found guilty of two counts of felony murder and thereafter sentenced to a seventy-year term of incarceration. *Id.* ¶ 89. On June 17, 2015, following this Court's ruling granting the federal habeas petition of Scott Lewis, Plaintiff's wrongfully charged and convicted co-defendant for the double murder, and the affirmance of that ruling in Lewis's favor on appeal, Morant was granted a sentence modification and released

from prison after twenty-one years.[1] *Id.* ¶ 143. Plaintiff alleges that his release followed a hearing in which "State's Attorney Dearington acknowledged that the State's key witness (Ruiz) had been put up to presenting a false ('contrived') account" against Morant "at the behest of the [New Haven Police Department, herein "NHPD"] detective (Raucci) in charge of the investigation." *Id.*

In the instant false imprisonment action, Plaintiff alleges that his civil rights have been violated by Defendants City of New Haven, Police Chief Nicholas Pastore, and Officers Vincent Raucci, Robert Lawlor, Vaughn Maher, Joseph Pettola, and Michael Sweeney. In his Complaint, Plaintiff sets forth six counts of federal claims arising under 42 U.S.C. § 1983 and three counts of state law claims.[2]

In the conduct of discovery, by subpoena dated January 20, 2023 (herein, "Subpoena"), Morant subpoenaed non-party New Haven State's Attorney's Office ("NHSAO") to obtain disclosure of records relating to Defendant Vincent M. Raucci. Specifically, Plaintiff seeks records "relating to any and all arrests, prosecutions or other legal proceedings" in which Raucci was a defendant.

---

[1] *See Lewis v. Comm'r of Correction,* 975 F. Supp. 2d 169, 208 (D. Conn. 2013), *aff'd sub nom. Lewis v. Connecticut Com'r of Correction,* 786 F.3d 176 (2d Cir. 2015), *withdrawn from bound volume, opinion amended and superseded,* 790 F.3d 109 (2d Cir. 2015), *and aff'd sub nom. Lewis v. Connecticut Com'r of Correction,* 790 F.3d 109 (2d Cir. 2015).

[2] In particular, Plaintiff alleges the following Counts arising under 42 U.S.C. § 1983: Count I, a *Brady* claim for failure to disclose exculpatory evidence (against Raucci, Maher, Sweeney, Pettola and Lawlor); Count II, denial of due process/fabrication of evidence (against Raucci, Maher, and Pettola); Count III, coercion of statement in violation of Fifth and Fourteenth Amendments (against Raucci and Maher); Count IV, failure to intercede (against Maher, Sweeney, Pettola and Lawlor); Count V, supervisor liability (against Sweeney, Maher, Lawlor and Pastore); and Count VI, municipal liability (against Pastore in his official capacity and City of New Haven). Plaintiff also brings the following three state law claims: Count VII, negligence in violation of Plaintiff's civil rights under Connecticut law (against Raucci, Maher, Sweeney, Pettola, Lawlor, and Pastore); Count VIII, indemnification under Conn. Gen. Stat. § 7-465 (against the City of New Haven); and Count IX, direct action under Conn. Gen. Stat. § 52-557n (against the City of New Haven).

Doc. 66, at 1, Doc. 66-1 (Ex. A), at 4.

In response, pursuant to Federal Rule 45(d)(3) of Civil Procedure and Connecticut General Statutes § 54-142a, Raucci has moved to quash the Subpoena based on two grounds. First, Raucci asserts that "the records sought are, upon information and belief, considered erased pursuant to Connecticut law." Doc. 66, at 1. Second, Raucci argues that the Subpoena is "overly broad as it is not limited in time," so that it "appears to request production of virtually any records that relate to [him]." *Id.*

Plaintiff opposes the motion to quash, arguing that Raucci lacks standing to object because the Subpoena was served on NHSAO, a non-party. Doc. 68, at 1-2. Furthermore, because the Federal Rules of Civil procedure govern these proceedings, a federal court may compel production of documents, despite state law privilege, if there are "important federal objectives" that would be promoted by such discovery in this section 1983 action. *Id.* at 2.

The Court considers the parties' arguments and resolves Raucci's "Motion to Quash Subpoena" herein.

## II. DISCUSSION

### A. Subpoena

"The decision of whether to quash or modify a subpoena is within the district court's discretion." *Olszewski v. Bloomberg L.P.*, No. 96 Civ. 3393, 2000 WL 1843236, at *4 (S.D.N.Y. Dec.13, 2000). The Subpoena at issue, dated January 20, 2023, was allegedly disclosed to Defendants on February 7, 2023. Doc. 66, at 1. The text of that subpoena seeks to compel the NHSAO to produce the following:

> All informations, prosecution records, pleadings, transcripts, file notes, police
> reports, incident reports, arrest warrant affidavits/applications, search warrant

3

> affidavits/applications, court records and any other documents in the possession,
> custody, or control of the New Haven State's Attorney's Office, relating to any and
> all arrests, prosecutions or other legal proceedings in which the following individual
> was a defendant: Vincent M. Raucci (DOB [redacted]).

*Id.* (quoting Doc. 66-1, at 4).  On its face, the Subpoena is addressed to "Keeper of the Records, State's Attorney's Office, 235 Church St. New Haven, CT 06510." Doc. 66-1, at 2.  Also, there is no time frame (*i.e.,* no dates specified) for the records to be produced.

## B.  Standing to Oppose Subpoena

Raucci is the party opposing the Subpoena, but he is not the addressed recipient of that request for documents. The Court thus first addresses Plaintiff's argument that Defendant Raucci lacks standing to oppose the Subpoena.  Without standing, his opposition would necessarily be deemed moot.

As a general rule, a party lacks standing to move to quash or modify a subpoena directed at a non-party. *Ireh v. Nassau Univ. Med. Ctr.*, No. CV 06-09 (LDW) (AKT), 2008 WL 4283344, at *3 (E.D.N.Y. Sept. 17, 2008) (collecting cases), *aff'd*, 371 F. App'x 180 (2d Cir. 2010).  *See also generally* 9 James Wm. Moore, *et al.*, *Moore's Federal Practice* ¶ 45.50 (3d ed.2007). "If, however, a party claims a 'personal right or privilege regarding the production . . . sought by a subpoena directed to a nonparty, the party has standing to move to quash' the subpoena." *Ireh*, 2008 WL 4283344, at *3 (quoting *Moore's* ¶ 45.50 and citing *Allocco Recycling, Ltd. v. Doherty*, 220 F.R.D. 407, 410-11 (S.D.N.Y.2004)).

Raucci seeks to claim "privilege" pursuant to Connecticut General Statutes § 54-142a.  That statute provides for erasure of all police and court records pertaining to a charge when the accused has been found not guilty or the charge has been dismissed.  Specifically, section 54-142a provides, in relevant part:

> (a) Whenever in any criminal case, on or after October 1, 1969, the accused, by a final judgment, is found not guilty of the charge or the charge is dismissed, all police and court records and records of any state's attorney pertaining to such charge shall be erased upon the expiration of the time to file a writ of error or take an appeal, if an appeal is not taken, or upon final determination of the appeal sustaining a finding of not guilty or a dismissal, if an appeal is taken.

Conn. Gen. Stat. § 54-142a (a).   "Under Connecticut law 'erasure' does not mean physical destruction of records but rather non-disclosure of them when mandated by statute." *United States v. One Parcel of Prop. Located at 31-33 York St., Hartford, Conn.*, 930 F.2d 139, 140 (2d Cir. 1991) (herein "*One Parcel*") (citing *Doe v. Manson*, 183 Conn. 183 (1981)).

In his motion to quash the Subpoena, Raucci notes that the Connecticut erasure "statute requires 'sealing the files and segregating them from materials which have not been erased and protecting them from disclosure, except . . . in a few, very limited circumstances described in the statutes." Doc. 66, at 2 (quoting *State v. Anonymous*, 237 Conn. 501, 513 (1996)).  Raucci contends that in seeking the materials designated in the Subpoena, Plaintiff has failed to "regard . . . whether these records concerning [him] have been erased by operation of law." *Id.* at 2-3.

The Court finds that the issue at bar is whether the state documents requested under the Subpoena must be delivered to Plaintiff by the  NHSAO pursuant to federal discovery procedure, despite the fact that Raucci may have a state-created privilege with respect to the documents on the ground that  they may be deemed "erased" under section 54-142a.[3]   As to the permissible scope of

_____

[3]  Plaintiff asserts that "NHSAO's failure to object to Plaintiff's subpoena demonstrates [that] there is no reason to believe erasure here has occurred."  Doc. 68, at 3.  In contrast, movant Raucci has stated that "upon information and belief," the records sought are "considered erased pursuant to Connecticut law."  Doc. 66, at 1.  "[T]he burden of persuasion in a motion to quash a subpoena . . . is borne by the movant." *Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 424 (E.D.N.Y. 2007) (citation omitted).  For purposes of plausibility, the Second Circuit has permitted allegations "upon information and belief" where the facts are peculiarly within the possession and control of an

federal civil discovery, Rule 26 of Federal Civil Procedure provides:

> Parties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1) ("Scope in General") (emphasis added).

As to "[q]uestions of privilege," such questions "in federal civil rights cases are governed by federal law." *Kelley v. City of Hamden*, No. 3:15-CV-00977(AWT), 2015 WL 9694383, at *3 (D. Conn. Nov. 23, 2015) (quoting *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y.1988) and collecting cases).  *See also Martin v. Lamb*, 122 F.R.D. 143, 145 (W.D.N.Y.1988) ("The circuit courts have 'consistently held' that, in cases involving a federal claim, federal (not state) law applies.") (citing, *inter alia*, *Von Bulow by Auersperg v. Von Bulow*, 811 F.2d 136, 141 (2d Cir.1987), *cert. denied sub nom.*, *Reynolds v. Von Bulow*, 481 U.S. 1015(1987)).

## C.  Relevance of Substance

The present action contains both federal and state civil rights claims; and "when there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule." *Kelley,*  2015 WL 9694383, at *3 (quoting *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000)); *see also Wm. T. Thompson Co. v. Gen.*

---

opposing party. *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).  Here,  NHSAO holds the records, and Raucci is also likely aware of whether there are applicable records of charges or investigations under the state statute (*e.g.*, records of charges investigated or brought against him, which have resulted in "not guilty" findings or dismissal).  In these circumstances, where erasure of the Raucci records may be confirmed or denied by Subpoena-recipient NHSAO, should that entity be ordered to produce said documents, the Court will proceed to address Raucci's assertion of potential privilege under the erasure statute herein.

*Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir.1982) (same); *Wilson v. Kauai Rests., Inc.*, No. 2:11 -

CV-2033(MCE)(GGH), 2013 WL 618151, at *1 (E.D.Cal. Feb. 19, 2013) ("This rule [regarding

privilege] is as follows: ... in a case with mixed federal and state claims, federal law is controlling.").

Furthermore, in *One Parcel*, the Second Circuit found that Connecticut General Statutes

§ 54-142a did not bar admission of erased arrest records as evidence in a forfeiture proceeding

pursuant to federal statute, 21 U.S.C. § 881(a)(7).  930 F.2d at 141. The Court reasoned that because

the privilege that would preclude the admission of relevant evidence arose from state statute, and

not from common law, such a privilege must be "construed narrowly" and "must yield when

outweighed by a federal interest in presenting relevant information to the trier of fact." *Id.*  As a

"confidentiality statute," Connecticut General Statutes § 54–142a effectively creates a privilege

under Connecticut state law, which "may preclude admission of relevant evidence but only to the

extent that privilege is recognized 'by the principles of the common law as they may be interpreted

by the courts of the United States.'" *Id.* (citing  Fed. R. Evid. 501). Because the privilege advanced

under section 54–142a "has been created by state statute, and does not arise from common law[,]"

it does not "automatically preclude the use of otherwise admissible evidence." 930 F.2d at 141

(citation omitted).

Balancing the privilege arising under state statute with federal interests in relevant discovery,

the Second Circuit held: "While as a matter of comity federal courts accord deference to

state-created privileges, . . . such privileges are construed narrowly, *see Von Bulow v. Von Bulow*,

811 F.2d 136, 141 (2d Cir.), *cert. denied*, 481 U.S. 1015 (1987), and must yield when outweighed

by a federal interest in presenting relevant information to a trier of fact, *see Patterson v. Norfolk and

Western Ry. Co.*, 489 F.2d 303, 306–07 (6th Cir.1973)." *One Parcel*,  930 F.2d at 141 (lateral

7

citations omitted). *See also King*, 121 F.R.D. at 187 ("State rules may illustrate important privacy interests, and a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished *at no substantial cost to federal substantive and procedural policy*.") (emphasis added)(internal quotation marks omitted) (collecting cases).

In the instant case, there is no federal privilege that supports the non-disclosure of the subpoenaed documents, and the privilege asserted does not arise under common law. *See One Parcel*, 930 F.2d at 141. *See also, e.g., Nunez v. Pachman*, 578 F.3d 228, 229 (3d Cir. 2009) (disclosure of an expunged criminal record did not violate the right of privacy afforded by the Due Process Clause of the Constitution); *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir.1995) ("An expungement order does not privatize criminal activity."); *Kelley*, 2015 WL 9694383, at *4 ("[P]laintiff does not have a privacy interest in the documents sought, and is unlikely to suffer any prejudice in the instance these documents are disclosed to defense counsel.").[4]

Furthermore, the substantive contents of the subpoenaed documents are clearly relevant to Plaintiff Morant's civil rights claims under 42 U.S.C. § 1983. In particular, Plaintiff seeks damages for wrongful imprisonment that resulted from Raucci's alleged fabrication of evidence and coercion of false witness statements. Plaintiff requests the "erased" documents to "substantiate[ ] Raucci's corrupt criminal activity," to show that "Raucci was an associate of Frank Parise, a well-known

---

[4] As discussed *infra,* any specific concerns that Raucci and/or NHSAO may have regarding production of confidential information may be addressed by entry of a protective order limiting the use and disclosure of any personally identifiable information contained in the records. *See, e.g., Crespo v. Beauton*, No. 15-CV-412(WWE)(WIG), 2016 WL 525996, at *2 (D. Conn. Feb. 9, 2016); *Kelley v. City of Hamden*, No. 3:15CV00977(AWT), 2015 WL 9694383, at *4 n. 4 (D. Conn. Nov. 23, 2015).

organized-crime figure and drug trafficker in the New Haven area " and "falsely implicated Plaintiff and Mr. Lewis in retaliation on behalf of [Parise]." Doc. 68, at 4. Moreover, Raucci allegedly "used drugs," leading to his "association with drug dealers," which "influenced his work" as a detective. *Id*. The documents sought, relating to the NHSAO's investigation and/or prosecution of Raucci, are also relevant to the NHPD's "customs and practices causing Raucci's misconduct." *Id.* The "NHPD repeatedly witnessed Raucci engage in misconduct and criminal activity." *Id.*

Under these circumstances, Plaintiff argues that the documents "bear[ ] on, or . . . reasonably could lead to other matter that could bear on [his] claim[s]." Doc. 68, at 4 (quoting *Bagley v. Yale Univ.*, No. 3:13-CV-1890 (CSH), 2015 WL 8750901, at *7 (D. Conn. Dec. 14, 2015). It appears that Plaintiff's inability to obtain Raucci's arrest and/or investigation records – to substantiate his claims of Raucci's corruption as an NHPD detective and NHPD's customs and policies with respect to such misconduct – would seriously hamper Plaintiff's civil rights claims.

Therefore, balancing the competing interests to determine whether the "erased" documents under Connecticut General Statutes § 54-142a should be disclosed, the Court concludes that, as in *Kelley*, also a section 1983 case in this District, the "'important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983[,]' prevail[ ] over any interest in the confidentiality of the arrest records." *Kelley*, 2015 WL 9694383, at *4 (quoting *King*, 121 F.R.D. at 187). Specifically, the federal policy of preserving civil rights under section 1983, preventing state actors' misconduct resulting in wrongful imprisonment, overrides Raucci's interest in confidentiality of the "erased" state's investigation and prosecution records. *See also, e.g., One Parcel*, 930 F.2d at 141 ("In the instant matter, the universally-recognized federal interest in eradicating the illegal drug trade by seizing the

9

tools that facilitate that trade prevails over any interest in the confidentiality of the arrest records.").

Having ruled that the pertinent federal interests prevail over the asserted state privilege in this case, the Court turns to the remaining issue of relevance regarding time span of the documents sought.

**D.  Relevance re:  Time Span**

In his motion to quash, Raucci asserts that the Subpoena is "overly broad as it is not limited in time." Doc. 66, at 1.  As discussed above, the Subpoena at issue was served on a non-party, NHSAO, but Defendant Raucci moves to quash, invoking a personal privilege with respect to the documents sought under Connecticut's erasure statute, Conn. Gen. Stat. § 54-142a.

In general, a "party lacks standing to challenge, on grounds of relevance or burden, a subpoena served on a non-party." *United States Reg'l Econ. Dev. Auth., LLC v. Matthews*, No. 3:16-CV-01093 (CSH), 2018 WL 2172713, at *8 (D. Conn. May 10, 2018) (quoting *US Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12 CIV. 6811 (CM) (JCF), 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012)).  *See also Dominion Res. Servs., Inc. v. Alstom Power, Inc.*, No. 3:16-CV-00544 (JCH), 2017 WL 3575892, at *3 (D. Conn. Aug. 18, 2017)); *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590 (LTS), 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013).

Consequently, "a challenge to a subpoena based on grounds of relevance or burden may only be raised by the entity to which the subpoena is directed; a party lacks standing to raise such challenges to a subpoena directed at a nonparty." *Matthews,* 2018 WL 2172713, at *8.  *See also, e.g., GEOMC Co. v. Calmare Therapeutics, Inc.,* No. 3:14-CV-1222 (VAB), 2020 WL 6375562, at *6 (D. Conn. Oct. 30, 2020) (defendant lacked standing to challenge subpoena on grounds that evidence sought was "duplicative and overbroad" of discovery it had already produced, or plans to

produce); *A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, No. 3:07-CV-929(WWE), 2013 WL 6511934, at *2 (D. Conn. Dec. 12, 2013) (defendant lacked standing to challenge subpoena directed to non-parties on grounds of undue burden and harassment); *Malibu Media, LLC v. Doe No. 4*, No. 12-CV-2950(JPO), 2012 WL 5987854, at *2 (S.D.N.Y. Nov. 30, 2012) (defendant lacked standing to move to quash a subpoena directed at a nonparty on grounds of undue burden, "as the burden of literal compliance with this subpoena falls to a third-party"). As Raucci is not the recipient of the Subpoena, given the foregoing legal principles, the Court will not entertain an argument from him that the Subpoena is unduly burdensome as the burden of compliance falls to third-party NHSAO.

However, because Raucci has a claim of personal privilege regarding documents which have been erased by Connecticut statute, the Court will consider whether the sought-after documents are "relevant" to the case by determining whether their probative value outweighs the privacy interest that Raucci asserts. *Matthews,* 2018 WL 2172713, at *9 (citing *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 CIV. 1654 (RA) (HBP), 2014 WL 5420225, at *6 (S.D.N.Y. Oct. 24, 2014) ("If the movants have standing, 'the next inquiry requires weighing the relevance or probative value of the documents being sought against the privacy interests . . . asserted.'") (citation omitted).

As the Court has concluded, the general subject matter of the documents – pertaining to state criminal arrests or investigations of Raucci –is relevant to Morant's federal civil rights claims. In this regard, federal interests in broad discovery override his state privilege. However, the time span of documents sought must still be considered with respect to "relevance" in federal discovery.

"Federal Rule of Civil Procedure 26(b)(1) governs the relevance of documents requested by a Rule 45 subpoena." *A & R Body Specialty & Collision Works,* 2013 WL 6044333, at *2 (citation

omitted).  As discussed above, Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . ." Fed. R. Civ. P. 26(b)(1). Moreover, "relevance" under Rule 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  As Rule 26 itself states, "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). *See also, e.g.*, *Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y.2006) (noting that the information sought "need not be admissible at trial to be discoverable").

In the case at bar, Raucci argues that the Subpoena seeks documents that are not relevant to the case because it "appears to request the production of virtually any records that relate to [him]" as "it is not limited in time." Doc. 66, at 1.  In other words, the Subpoena is  "patently deficient on its face due to overbreadth." *Id.* at 3.   "By failing to limit the scope of the subpoena, either temporally, or by subject matter, it is grossly disproportionate to the needs of the case." *Id.* at 4. For example, the Subpoena might "compel the State's Attorney to produce records that post-date [P]laintiff's arrest and prosecution, which events occurred in the early 1990s, more than thirty years ago." *Id.*  Raucci concludes that "such records would have no bearing on the present civil action as they would be patently irrelevant." *Id.*

In response, Plaintiff argues that the lack of a time frame in the Subpoena relates to the extended period of time at issue in this case.  Plaintiff states that the "corrupt and criminal behavior" by Raucci began "before [Plaintiff's] false arrest and continued after Plaintiff and his co-defendant [Lewis] were convicted and had begun to serve their wrongful sentences of incarceration." Doc. 68,

at 7.  Moreover, "NHPD officers and supervisors were aware of Raucci's unconstitutional behavior, and failed to supervise or discipline him, creating an unconstitutional pattern, practice, and custom . . . [of] NHPD, of coercing and fabricating witness statements and suppressing exculpatory evidence." *Id.*  Plaintiff further asserts that "municipal liability for unconstitutional policies like the one in effect in New Haven at the time of Plaintiff's arrest 'will often turn on evidence concerning victims other than the plaintiffs,' and evidence of an individual officer's legal history may also establish whether the municipality should have been aware of the officer's criminal conduct and acted to guard against future misconduct." *Id.* (quoting *Outlaw v. City of Hartford*, 884 F.3d 351, 380 (2d Cir. 2018)).  Therefore, "any documents relating to arrests, prosecutions, or other legal proceedings concerning Defendant Raucci are relevant, or may lead to evidence which is relevant to Plaintiff's claims." *Id.* (citing *Maresco v. Evans Chemetics, Div. Of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992)).  "Plaintiff's request is not temporally-limited," admittedly covers "records which did not result in conviction, and post-date the events at issue," but the records sought "may be highly relevant to establishing that the NHPD maintained its unconstitutional policy of fabricating and coercing witness statements and suppressing exculpatory evidence at the time of Plaintiff's arrest and despite being on clear notice of unconstitutional conduct perpetrated by its officers." *Id*. (collecting cases).

Although the nature of the NHSAO documents sought are relevant to the issues in the case, the complete lack of a temporal span in the Subpoena results in an overly broad request. Accordingly, a reasonable time limitation may be imposed by the Court.  Recognizing the need for a somewhat expansive time frame in this case (to enable  Plaintiff to potentially gather records relating to Raucci's alleged misconduct both before and after Plaintiff's arrest),  the Court finds that

a sixteen -year period – ranging from 1985 to 2001 – appears sufficient for purposes of tracking the alleged corruption of Defendant Raucci.[5] *See, e.g., Crespo v. Beauton*, No. 15-CV-412 (WWE)(WIG), 2016 WL 525996, at *2 (D. Conn. Feb. 9, 2016) (in ruling on motion to quash, court accepted Plaintiff's proposed compromise of "limiting his requests to a five year period"). This time span commences five years before the precipitating event in this action, the Turner-Fields double homicide (October 11, 1990); continues through Raucci's investigation of the murders and Plaintiff's subsequent arrest (February 1992); and ends five years after Raucci resigned from the NHPD (April 11, 1996). Doc. 1 ("Complaint"), ¶¶ 19, 84, 128. If records of Raucci's alleged misconduct from 1985 to 2001 lead to, or reasonably could lead to, other matter that may bear on issues in the case (*e.g.*, New Haven's municipal liability, Plaintiff's false arrest), Plaintiff may serve a subsequent subpoena to gain NHSAO records relating to Raucci's investigated or prosecuted misconduct which occurred before or after the 1985-2001 period now designated.

### III. CONCLUSION AND ORDERS

The Court finds that the important federal interests in broad discovery and in upholding the federal civil rights principles embodied in 42 U.S.C. § 1983 prevail over any interest in confidentiality of Defendant Raucci's arrest records under the Connecticut erasure statute, Conn. Gen. Stat. § 54-142a. Defendant Raucci's "Motion to Quash Subpoena" [Doc. 66] is thus DENIED. However, to ensure relevance of the documents sought, the Court inserts a proviso into the Subpoena, hereby imposing a sixteen-year time limitation on the documents to be produced: **1985 to 2001.** Accordingly, NHSAO must disclose to Plaintiff's counsel forthwith all documents sought

---

[5]  The Court is cognizant that Plaintiff alleges additional police misconduct by the NHPD in the years following 2001. Doc. 1, ¶¶ 110-11. However, the present Subpoena addresses only the conduct of Vincent Raucci, who allegedly resigned from NHPD on April 11, 1996. *Id.* ¶ 128.

in the Subpoena (dated January 20, 2023) relating to any and all arrests, prosecutions or other legal

proceedings of Defendant Raucci from 1985 to 2001. Specifically, NHSAO must produce:

> All informations, prosecution records, pleadings, transcripts, file notes, police reports, incident reports, arrest warrant affidavits/applications, search warrant affidavits/applications, court records and any other documents in the possession, custody, or control of the New Haven State's Attorney's Office, relating to any and all arrests, prosecutions or other legal proceedings in which the following individual was a defendant: Vincent M. Raucci (DOB [redacted])" [from 1985 to 2001].

*See* Doc. 66-1 ("Subpoena"), at 4.

Furthermore, to address Raucci's concerns regarding disposition of confidential information,

the Court will enter a protective order to limit the use and disclosure of personally identifiable

information contained in NHSAO's investigation and arrest records. Pursuant to Rule 26(c)(1), Fed.

R. Civ. P., the Court may, for good cause, issue an order to protect a party from "annoyance,

embarrassment, oppression, or undue burden or expense." The Second Circuit has interpreted Rule

26(c) as "a grant of power to impose conditions on *discovery* in order to prevent injury, harassment,

or abuse of the court's processes." *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940,

945 (2d Cir. 1983) (emphasis in original) (citations  omitted). Additionally, "Rule 26(c) 'confers

broad powers upon the court to limit or prevent discovery even though the information sought is

relevant and within the scope of Rule 26(b).'" *John Wiley & Sons, Inc. v. Book Dog Books, LLC*,

298 F.R.D. 184, 186 (S.D.N.Y. 2014) (quoting *Coyne v. Houss*, 584 F. Supp. 1105, 1109 (E.D.N.Y.

1984)).

In the present case,  to protect the confidentiality of personally identifiable information of

individuals, including Raucci and/or any alleged victims of crime, contained in documents produced

by NHSAO with respect to the Subpoena, the Court hereby ORDERS:

(1)     Plaintiff's counsel shall not disseminate the disclosed documents to third parties

without explicit authorization by the Court;

(2)     Plaintiff's Counsel shall not provide copies of the disclosed documents to his client or witnesses, but may allow them to review the documents in the presence of counsel;

(3)     Disclosed documents shall be used solely for purposes of this litigation;

(4)     If any party intends to submit or file a disclosed document as an evidentiary exhibit in this matter, that party must file a motion to seal the document with the Court; and

(5)     All copies, electronic and physical, of the documents shall be destroyed by counsel after judgment enters in this case and any appeals have been concluded, or six months after judgment is entered in this case if no appeals are filed.[6]

It is SO ORDERED.

Signed: New Haven, Connecticut
         June 28, 2023

                                        */s/Charles S. Haight, Jr.*
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge

---

[6]  The parties are reminded that pursuant to the Local Civil Rule 5 of this District, "[a] confidentiality order or protective order entered by the Court to govern discovery shall not qualify as an order to seal documents  . . . ." D. Conn. L. Civ. P. 5(e)(3).  Furthermore, "the blanket sealing of entire documents or all documents within a case is . . . generally disfavored." *CSL Silicones, Inc. v. Midsun Grp. Inc.*, No. 3:14-CV-1897 (CSH), 2017 WL 4750701, at *1 (D. Conn. July 12, 2017) (citing *Doctor's Assoc. Inc. v. QIP Holders LLC*, No. 3:06-cv-1710, 2007 WL 2782516, at *1 (D. Conn. Sept. 24, 2007)).  Therefore, personally identifiable information should be redacted in connection with any motion to seal.

16