UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEFON MORANT,<br><br>　　　　　　Plaintiff,<br>　v.<br><br>The CITY OF NEW HAVEN; Chief of Police NICHOLAS PASTORE, in his individual and official capacities; and Officers VINCENT RAUCCI, ROBERT LAWLOR, VAUGHN MAHER, JOSEPH PETTOLA, and MICHAEL SWEENEY, in their individual capacities;<br><br>　　　　　　Defendants. | Civil Action No.<br>3:22-CV-630 (CSH)<br><br><br><br><br><br>APRIL 23, 2024 |

**RULING ON DEFENDANTS' MOTIONS TO AMEND AFFIRMATIVE DEFENSES IN THEIR ANSWERS TO PLAINTIFF'S AMENDED COMPLAINT [Doc. 85-88, 91]**

**Haight, Senior District Judge:**

### I. BACKGROUND

Plaintiff Stefon Morant commenced this civil rights action, seeking damages for wrongful imprisonment for the double homicide of Ricardo Turner and Lamont Fields on October 11, 1990, which Plaintiff did not commit. Doc. 33 ("Amended Complaint"), ¶ 1.

On June 8, 1994, following a jury trial in a Connecticut state court, Morant was found guilty of two counts of felony murder and thereafter sentenced to a seventy-year term of incarceration. *Id.* ¶ 95. Morant was charged with having committed those two murders together with a co-defendant, Scott Lewis. Lewis was separately tried, and also convicted. Lewis eventually moved for *habeas corpus* relief. On June 17, 2015, following this Court's ruling granting the federal *habeas* petition

1

of Lewis, and the affirmance of that ruling by the Second Circuit Court of Appeals, Morant was granted a sentence modification and released from prison after twenty-one years.[1] *Id*. ¶ 149.

Plaintiff Morant has alleged in his Amended Complaint that "[o]n July 7, 2021, the felony charges, on which [he] had been convicted and incarcerated, were expunged by the Connecticut Board of Pardons and Paroles [also "BOPP"], 'forever acquit[ting], releas[ing] and discharg[ing]' him from said convictions." *Id.* ¶¶ 6, 150. Thus, after being wrongfully imprisoned for more than two decades until his release in 2015, he received a grant of "full and unconditional pardon" by the BOPP. *Id.* ¶ 150. Plaintiff has produced a copy of the "Certificate of Pardon" for the record. *See* Doc. 93-1 (BOPP transmittal letter re: Absolute Pardon and "Certificate of Pardon").[2]

Thereafter, on May 5, 2022, Plaintiff initiated this federal false imprisonment action in this Court, alleging that his civil rights were violated by Defendants City of New Haven, Police Chief Nicholas Pastore, and Officers Vincent Raucci, Robert Lawlor, Vaughn Maher, Joseph Pettola, and Michael Sweeney. Specifically, Morant seeks damages from these named Defendants for the misconduct that caused his wrongful state conviction and imprisonment. In his Amended Complaint, Plaintiff sets forth seven counts of federal claims arising under 42 U.S.C. § 1983 and

---

[1] *See Lewis v. Comm'r of Correction,* 975 F. Supp. 2d 169, 208 (D. Conn. 2013), *aff'd sub nom. Lewis v. Connecticut Com'r of Correction*, 786 F.3d 176 (2d Cir. 2015), *withdrawn from bound volume, opinion amended and superseded*, 790 F.3d 109 (2d Cir. 2015), *and aff'd sub nom. Lewis v. Connecticut Com'r of Correction*, 790 F.3d 109 (2d Cir. 2015).

[2] As stated in the transmittal letter from "Parole Supervisor" T. Brooks, Morant was informed that "your application for an Absolute Pardon was heard by a panel of the Board of Pardons and Paroles at a Full [H]earing on 07/07/2021 at BOPP- Zoom Virtual Hearing . . . and the Board voted to grant you an Absolute Pardon." Doc. 93-1, at 2. "[Y]ou are now legally able to truthfully state you have never been arrested or convicted of a crime in the state of Connecticut as it relates to any of the convictions pardoned." *Id.*

three counts of state law claims.[3]

Pending before the Court are motions by all Defendants — City of New Haven (also "City") [Doc. 85], Michael Sweeney [Doc. 86], Robert Lawlor, Vaughn Maher, and Joseph Pettola [Doc. 87], Nicholas Pastore [Doc. 88], and Vincent Raucci [Doc. 91] — in which each seeks to amend an Affirmative Defense in that party's Answer. Specifically, pursuant to Federal Rule of Civil Procedure 15(a)(2), each Defendant requests to add a description to, and thereby amplify, its/his First Affirmative Defense set forth in its/his Answer, regarding how the Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted. In this regard, each proposed amendment includes the following language, which is identical in sum and/or substance:

> The Plaintiff's Complaint fails to state a claim upon which relief may be granted because, *inter alia*, the action taken by the Connecticut Board of Pardons and Paroles on Plaintiff's application for pardon does not constitute the ending of prosecution without a conviction required for liability and award of damages in an action pursuant to 42 U.S.C. § 1983, and allowing a recovery of damages against the Defendant would violate the due process protection of the United States and State of Connecticut constitutions.

Doc. 85-2, at 2. *See also* Doc. 86-2, at 9; Doc. 87-2, at 5-6; Doc. 88-2, at 6; and Doc. 91-2, at 5.

---

[3] In particular, Plaintiff alleges the following seven Counts arising under 42 U.S.C. § 1983: Count I, malicious prosecution in violation of the Fourth and Fourteenth Amendments (against Raucci, Maher, Sweeney, Pettola, and Lawlor); Count II, civil rights conspiracy (against Raucci, Maher, Sweeney, Pettola, and Lawlor); Count III, a *Brady* claim for failure to disclose exculpatory evidence (against Raucci, Maher, Sweeney, Pettola, and Lawlor); Count IV, denial of due process/ fabrication of evidence (against Raucci, Maher, and Pettola); Count V, coerced statement in violation of the Fifth and Fourteenth Amendments (against Raucci and Maher); Count VI, failure to intercede (against Maher, Sweeney, Pettola, and Lawlor); and Count VII, municipality liability (against Pastore, in his official capacity, and the City of New Haven). Plaintiff also brings the following three state law claims: Count VIII, negligence in violation of Plaintiff's civil rights under Connecticut law (against Raucci, Maher, Sweeney, Pettola, Lawlor, and Pastore); Count IX, indemnification under Conn. Gen. Stat. § 7-465 (against the City of New Haven); and Count X, direct action under Conn. Gen. Stat. § 52-557n (against the City of New Haven).

Plaintiff opposes each motion to amend, arguing that the "Defendants have not established good cause to amend at this very late stage of discovery, in contravention of the deadlines established under the Court's long-standing scheduling order, and permitting them to do so would unduly prejudice Plaintiff." Doc. 93, at 1. Furthermore, Plaintiff asserts that "the Affirmative Defense [Defendants] seek to add is not legally viable, as Plaintiff's pardon unquestionably qualifies him to bring suit for his wrongful conviction under Section 1983." *Id.*

Because all Defendants request the same amendment and support their requests with identical arguments, the Court resolves all pending motions to amend [Doc. 85-88, 91] in this Ruling.

## II. DISCUSSION

### A. Standard to Amend - Fed. R. Civ. P. 15

Pursuant to Federal Rule of Civil Procedure 15, a party may amend its pleading "once as a matter of course" no later than 21 days after serving it, or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a) (1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* 15(a)(2). The court "should freely give leave when justice so requires." *Id.*

In the present case, the requisite period to amend has expired and Plaintiff opposes the proposed amendments to Defendants' Answers.[4] Therefore, Defendants may only amend "with the

---

[4] To be clear, this is also not the first instance in which certain Defendants have amended their Answers. On August 11, 2023, Defendant Raucci moved to amend his Answer, as did Defendants Lawlor, Maher, and Pettola on August 16, 2023, to add a testimonial immunity

court's leave," which shall be "freely give[n] ... when justice so requires." Fed. R. Civ. P. 15(a)(2). Whether to grant leave to amend ultimately lies within the court's discretion, taking into account factors set forth by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182 (1962). Under *Foman*, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought [to amend] should, as the rules require, be 'freely given.'" 371 U.S. at 182.

**B. Good Faith, Undue Delay, and Prejudice**

In the case at bar, Plaintiff opposes Defendants' requests for leave to amend their Answers on the basis of failure to establish good faith, undue delay, and undue prejudice to Plaintiff. First, Plaintiff argues that Defendants have failed to meet the "good cause" standard in Federal Rule of Civil Procedure 16. Under Rule 16(b)(4), "[a] schedule [of case deadlines set by the district judge] may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16 (b)(4).

As then-Circuit Judge Sotomayer explained in *Parker v. Columbia Pictures Industries*, 204 F.3d 326 (2d Cir. 2000), the Rule 16 limitation on the time for amendments "is designed to offer a measure of certainty in pretrial proceedings, ensuring that 'at some point both the parties and the pleadings will be fixed.'" *Parker,* 204 F.3d. at 339-40 (quoting Fed. R. Civ. P. 16(b) advisory committee's notes (1983 amendments)). As described in *Parker*, the good cause prerequisite for

---

affirmative defense. *See* Doc. 70, 71. At that time, Plaintiff did not oppose the motions [Doc. 72], and the Court approved the requested amendments on October 19, 2023 [Doc. 75]. Subsequently, Defendant Raucci filed an Amended Answer to include the defense of "absolute witness and testimonial immunity" [Doc. 77], but Defendants Lawlor, Maher, and Pettola did not.

allowing amendments beyond the time prescribed in the scheduling order is reserved strictly for those "certain cases" in which the deadline "cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* at 340 (brackets omitted). A party cannot, therefore, demonstrate diligence where, as here, the proposed amendment is based on information that the party "knew, or should have known, in advance of the deadline." *Stein v. Needle*, No. 3:19-CV-1634 (VLB), 2021 WL 5889343, at *3 (D. Conn. Dec. 13, 2021) (denying motion to amend for failure to state good cause).

Plaintiff included the allegation in his original Complaint that he was granted a full and unconditional pardon by the Connecticut BOPP. *See* Doc. 1, ¶¶ 6, 144. Furthermore, Defendants have failed to provide any explanation as to why they waited for approximately a year and a half to request this expanded affirmative defense. Under these circumstances, the Court concurs that Defendants have likely failed to show "good cause" to amend at this time.

In addition, and alternatively, Plaintiff has asserted that the timing of Defendants' motions to amend their Answers are the product of undue delay and thus result in prejudice to Plaintiff. The proposed amendments to the First Affirmative Defense relate to the sufficiency of Plaintiff's pardon as a legal basis for his claims; and this issue was not raised until January 10, 2024, over a year and a half after the parties commenced engaging in discovery – "exchanging thousands of pages of documents and taking the depositions of 15 witnesses." Doc. 93, at 3. The Court further notes that absent an extension of discovery deadlines, and but for a brief extension for two specific depositions, fact discovery expired on March 8, 2024.

Discovery became fully permissible after the parties "conferred as required by Rule 26(f)," Fed. R. Civ. P. 26(d) ("Timing" of Discovery), in June of 2022, and at the latest, upon entry of the

initial Scheduling Order [Doc. 37] in July of 2022. However, the present motions to amend were not filed until January of 2024, after approximately a year and five months of discovery had occurred.[5] At this point, with discovery essentially concluded, including two additional depositions on April 2 and 3, 2024, there would be notable delay and expense, comprising prejudice, if the Court were to grant the amendments. As Plaintiff explains in his opposition brief, "almost two years into this case and in the final days before the close of fact discovery," he will have "no choice but to develop a robust factual record to respond to the anticipated factual arguments" should Defendants be allowed to amend. Doc. 93, at 7-8. Moreover, there would likely be objections by the State to much of the discovery on "this issue based on the deliberative process and mental process privileges" when administrative decision-making is examined. *Id*. at 8 (citing *Goetz v. Crosson*, 41 F.3d 800, 805 (2d Cir. 1994)). Discovery would necessarily be extended, burdening Plaintiff with additional time and expense in this litigation.

Defendants counter Plaintiff's assertion of prejudice by arguing that their "affirmative defense of failure to state a claim upon which relief may be granted has been recognized as an

---

[5] As Plaintiff recounted:

> [On] January 10, 2024, Defendants notified Plaintiff's counsel of the proposed Amendment, raising the issue of the sufficiency of Plaintiff's pardon as a legal basis for his claims, for the first time. Between January 15 through January 23, 2024—almost a year and a half after their deadlines to respond to the Amended Complaint and on the eve of the fact discovery cutoff ([at that time] set for February 2, 2024 and subject to a pending motion on consent of all parties to be extended to March 8, 2024, without impacting any other deadlines in the scheduling order, Dkt. 89) all Defendants moved to amend their Affirmative Defenses . . . .

Doc. 93, at 3.

adequate defense standing alone."[6] Doc. 96, at 2 (citing *Conley v. Gibson*, 355 U.S. 41 (1957)). Furthermore, their "proposed amplification meets the goals of civil discovery under the F.R.C.P., as it provided Plaintiff with notice in advance of his deposition (which occurred on January 30, 2024) that the Defendant was taking the position that the executive pardon Plaintiff received was an insufficient termination of the prosecution to proceed with the pending suit under § 42 U.S.C. 1983 for money damages." *Id.* "The Plaintiff was free to move for a more definite statement pursuant to F.R.C.P. 12(e) if additional information of the defense was needed, which it did not . . . ." *Id.*

In so arguing, Defendants shift the burden to Plaintiff to inquire regarding the basis for their general affirmative defense of failure to state a claim. They assert that they are facilitating the litigation process by filling in the reason the Section 1983 action fails to state a claim. Plaintiff and the Court need no longer guess — a proposition the Court finds less than persuasive in the present circumstances.

At the outset, the Court notes that in *Conley*, the case cited by the City of New Haven, the Supreme Court stated that it follows "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in

---

[6] The Court notes that Defendant City of New Haven wrote the reply to Plaintiff's "Objection" [Doc. 93] to all Defendants' requests to Amend except that of Defendant Raucci. Defendants Sweeney, Lawlor, Maher, Pettola, and Pastore each explicitly adopted and incorporated the arguments of the City of New Haven [Doc. 96] into their Reply briefs. Doc. 97, at 2; Doc. 98, at 2; Doc. 99, at 2; and Doc. 100, at 1. Although Defendant Raucci filed a separate reply, he essentially made the same substantive arguments as the City. Specifically, he argued that Plaintiff could not demonstrate prejudice on this record. He also refuted the Plaintiff's conclusion that the "issue of whether the pardon is an adequate ending of the prosecution without conviction is . . . settled law," citing *Thompson* and replying that "[n]othing could be further from the truth." Doc. 99, at 3-4.

support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). That holding was abrogated by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and later evolved into the plausibility standard for failure to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Twombly*, 550 U.S. at 570). In defining the plausibility standard for failure to state a claim, the Supreme Court did not state whether any specific underlying legal basis for that defense passes muster. Moreover, as discussed *infra*, if a proposed amendment is legally baseless (*i.e.*, futile), it must be rejected under *Foman*, 371 U.S. at 182.

Furthermore, although amendments that provide additional detail are generally welcomed, said amendments generally provide additional facts, as opposed to pure legal conclusions. In the proposed amendment, the Defendants simply posit that the BOPP's pardon "does not constitute the ending of prosecution without a conviction," as "required for liability . . . in an action pursuant to 42 U.S.C. §1983." *See, e.g.*, Doc. 85-2 at 2.

**C. Futility of Amendment**

Even if Defendants were able to meet the "good cause" standard and an expedited, limited period of discovery could be imposed to curtail delay, the question rises of whether the substance of Defendants' proposed amendments state a legal argument which is moot. Where a proposed amendment would be "futile," failing as a matter of law, the Court should reject it under *Foman*, 371 U.S. at 182.

The language of each Defendant's proposed amendment states that the Plaintiff's Complaint fails to state a claim upon which relief may be granted because "the action taken by the Connecticut

9

Board of Pardons and Paroles on Plaintiff's application for pardon does not constitute the ending of prosecution without a conviction required for liability and award of damages in an action pursuant to 42 U.S.C. § 1983, and allowing a recovery of damages against the Defendant would violate the due process protection of the United States and State of Connecticut constitutions." *See, e.g.,* Doc. 85-2, at 2.

In asserting this amendment, Defendants either overlook or misread the United States Supreme Court's holding in *Heck v. Humphrey*, 512 U. S. 477 (1994). In *Heck*, Justice Scalia, writing for the majority, stated:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, *expunged by executive order*, *declared invalid by a state tribunal authorized to make such determination,* or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 486–87 (emphasis added). Given the holding in *Heck*, where, as here, a plaintiff has had his sentence expunged or declared invalid by an "Absolute Pardon" by the state parole board, he has proven that his claim for damages under Section 1983 would not impact the validity of an existing conviction or sentence. In short, he has established that his conviction and sentence were invalidated.

In support of their position that the pardon was insufficient— did not constitute the ending

of prosecution without a conviction—Defendants focus on the United States Supreme Court's language in a subsequent case, *Thompson v. Clark*, 596 U.S. 36 (2022). In that case, following dismissal of state criminal charges, a pretrial detainee brought a Section 1983 action in a federal district court for malicious prosecution under the Fourth Amendment, against the police officers who had initiated the state criminal proceedings against him. After trial of the federal Section 1983 action, the district judge granted judgment for the officers, 364 F. Supp. 3d 178 (E.D.N.Y. 2019), finding that the arrestee failed to establish that his state criminal proceeding was terminated in his favor, as required for malicious prosecution.

The detainee appealed, the United States Court of Appeals for the Second Circuit affirmed, 794 F. App'x 140 (2d Cir. 2020), and the Supreme Court granted *certiorari*, 141 S. Ct. 1682, 209 L. Ed. 2d 263 (2021). The Supreme Court then held that "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." 596 U.S. 36, 49 (2022). Rather, "[a] plaintiff need only show that the criminal prosecution ended without a conviction." *Id.*

Focusing on the words "without a conviction," Defendants argue –

> [W]hile there need not be a demonstration of innocence to meet the "favorable termination" requirement, the Plaintiff must demonstrate that the "criminal prosecution ended without a conviction." [*Thompson*, 596 U.S. at 48-49,] 142 S.Ct. at 1340-41. It is undisputed that Morant's criminal prosecution did NOT end with a conviction; his criminal prosecution ended with him convicted of two counts of felony murder, and a reduced total effective sentence of 25 years to serve. The fact that he received a non-judicial pardon from the Executive Branch does not change the status of how his criminal prosecution by the Judicial Branch ended. This is an issue of great consequence that should be decided by this Court on a fully developed record, which will be provided to the Court at the time the Defendants' Motions for

11

Summary Judgment are filed.[7]

Doc. 96, at 4-5.

By making this argument, Defendants disregard the effect of a complete and absolute pardon of a plaintiff's convictions—a position completely in conflict with the holding in *Heck* as to a conviction "expunged" or "declared invalid," 512 U.S. at 487. Defendants essentially suggest that the judicial branch could disregard the "non-judicial pardon" with respect to the status of Plaintiff Morant's conviction. However, "[u]nlike probation, pardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review." *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981). "In Connecticut, the pardoning power is vested in the legislature; *Palka v. Walker*, 124 Conn. 121, 198 A. 265 (1938); which has delegated its exercise to the board of pardons." *McLaughlin v. Bronson*, 206 Conn. 267, 271 (1988) (citing *Dumschat*, 452 U.S. at 463). In this case, the BOPP has exercised its authority to make the decision to invalidate Plaintiff's conviction. It is "expunged" – erased or removed completely.[8]

Having considered their arguments fully, the Court finds that Defendants have misread and/or misinterpreted the Supreme Court's holding in *Thompson*. The Supreme Court made clear that the plaintiff in *Thompson* did not need to show that there was affirmative proof of his innocence — such as a complete pardon. Rather, it was sufficient for him to demonstrate that there had been "a favorable termination" of the underlying criminal case. 596 U.S. at 44. Because plaintiff

---

[7] The Court infers that the City meant to state that "Morant's criminal prosecution did NOT end *with*[*out*] a conviction." Doc. 96, at 4-5.

[8] To "expunge," by definition, is "[t]o remove from a record, list, or book; to erase or destroy." Black's Law Dictionary (11th ed. 2019).

Thompson was able to show that his prosecution ended without a conviction, he did not also have to show an "affirmative indication of innocence, such as an acquittal or a dismissal accompanied by a statement from the judge that the evidence was insufficient." *Id.* The *Thompson* opinion concludes by saying:

> [W]e hold that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction. Thompson has satisfied that requirement here.

*Id.* at 49.

*Thompson* does not undercut *Heck*. *Thompson* holds that where a prosecutor and trial judge dismiss charges against a defendant without explanation, that satisfies the requirement in a subsequent Section 1983 action that defendant obtained a favorable termination of the criminal proceeding.

Evidence of a complete pardon, as demonstrated in this case by Plaintiff Morant, remains an accepted means of proving that one's Section 1983 action will not impact the validity of a conviction or sentence. *See, e.g.*, *Watson v. Tong*, No. 22-1258-CV, 2023 WL 176963, at *2 (2d Cir. Jan. 13, 2023) ("Watson's Section 1983 claims for a wrongful conviction and imprisonment accrued, if at all, when he was pardoned on September 30, 2009."), *cert. denied sub nom. Watson v. Connecticut*, 144 S. Ct. 285, 217 L. Ed. 2d 129 (2023).

In Connecticut, "General Statutes § 18–26(a) confers upon the board [of pardons] jurisdiction and authority to grant conditional or absolute commutations." *McLaughlin v. Bronson*, 206 Conn. 267, 270, 537 A.2d 1004, 1006 (1988). An absolute commutation, such as the one received by Plaintiff Morant, necessarily invalidates a conviction under *Heck*, 512 U.S. at 487. Under such

13

circumstances, a Section 1983 action cannot create an inconsistent result with respect to a conviction. "Under the *Heck* Court's favorable-termination requirement, if a [S]ection 1983 plaintiff establishes— before bringing suit—that the 'action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.'" *Smalls v. Collins*, 10 F.4th 117, 137 (2d Cir. 2021) (quoting *Heck*, 512 U.S. at 487).

Given the holding in *Heck*, Defendants' proposed amendments are futile as a matter of law. Plaintiff's pardon by the Connecticut Board of Pardons and Paroles irrefutably expunged his conviction, stating explicitly that it was "a full, complete, absolute and unconditional pardon for [his relevant] crime" of murder, Case No. NNH-CR92-0352995-T, for which he "was convicted in the State of Connecticut." Doc. 93-1 ("Certificate of Pardon"), at 1. Moreover, the pardon did "hereby forever acquit, release and discharge" Plaintiff from said conviction and "enjoin[ed] all officers to respect to this Pardon." *Id.* Therefore, under *Heck,* it is incorrect and futile, as a matter of law, for Defendants to assert that "the action taken by the Connecticut Board of Pardons and Paroles on Plaintiff's application for pardon does not constitute the ending of prosecution without a conviction required for liability and award of damages in an action pursuant to 42 U.S.C. § 1983."[9] Doc. 85-88, 91.

In British parlance, Defendants' argument is "too clever by half." By focusing on the phrase in *Thompson*, "criminal prosecution ended without a conviction," Defendants attempt to negate the effect of an "Absolute Pardon" in discharging and erasing a conviction "as if [one] ha[d] never been

---

[9] It follows that the Court finds no legal basis for the argument that a "due process violation" would occur if the case proceeds.

arrested or convicted," Doc. 93-1, at 2. In the case at bar, Plaintiff Morant's pardon plainly gave rise to the right to proceed with a Section 1983 claim for a wrongful conviction and imprisonment. *See, e.g., Watson*, 2023 WL 176963, at *2; *Smalls*, 10 F.4th at 137.

### III. CONCLUSION

Having fully considered the arguments of the parties, the Court hereby DENIES Defendants' motions to amend their affirmative defenses in their Answers. Doc. 85-88, 91. Although leave to amend is generally "freely give[n]" under Federal Rule of Civil Procedure 15(a)(2), these motions present the rare occurrence in which justice bars leave to amend, rather than "so requires" it. Fed. R. Civ. P. 15(a)(2). Given the current state of the proceedings, following the close of the discovery period, it is likely that Defendants' requests for leave to amend are products of "undue delay" and unduly "prejudice . . . the opposing party." *Foman*, 371 U.S. at 182. However, even if the proposed amendments had been presented earlier, they are futile on their face under *Heck v. Humphrey*, 512 U.S. 477 (1994). By demonstrating that he was fully pardoned by the Connecticut Board of Pardons and Parole, Plaintiff has established a favorable termination of a criminal prosecution for purposes of pursuing his Section 1983 claims. The original language in Defendants' first affirmative defense — "Plaintiff[']s complaint fails to state a claim upon which relief may be granted"— remains unaltered.

It is SO ORDERED.

Signed: New Haven, Connecticut
       April 23, 2024

                                      */s/Charles S. Haight, Jr.*
                                      CHARLES S. HAIGHT, JR.
                                      Senior United States District Judge