**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| STEFON MORANT, | ) | 3:22-CV-630 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF NEW HAVEN et al., | ) | |
| *Defendants*. | ) | April 23, 2026 |

**OMNIBUS RULING AND ORDER ON MOTIONS *IN LIMINE***

Sarala V. Nagala, United States District Judge.

Pending before the undersigned are twenty-two motions *in limine* regarding proposed evidence in connection with Plaintiff Stefon Morant's upcoming civil trial:  eight motions filed by Plaintiff, ECF Nos. 270–73, 278, 279, 281, and 290; eight motions filed by Defendant the City of New Haven (the "City"), ECF Nos. 268, 269, 280, 282, 283, 285, 289, and 291; four motions filed by Defendant Vincent Raucci, ECF Nos. 274–77; and two motions filed by Defendants Lawlor and Maher, ECF Nos. 287 and 288.[1]  For clarity, the Court addresses these motions below by party, rather than sequentially by docket number.  The Court also addresses the parties' positions with respect to designations of deposition and other testimony of former Defendants Nicholas Pastore and Robert Lawlor.

## I.    BACKGROUND

The Court assumes the parties' familiarity with the facts of this case as described in the Court's order on the parties' motions for summary judgment.  *See Morant v. City of New Haven*, No. 3:22-CV-630 (SVN), 2025 WL 2821260 (D. Conn. Oct. 3, 2025); ECF No. 210.  Accordingly,

---

[1] Both of Defendants' Lawlor's and Maher's motions do not make independent arguments, but rather adopt Defendant Raucci's motion at ECF No. 277 and the City's motion at ECF No. 283, respectively.  Defendant Sweeney has filed a joinder where he also does not make any independent arguments but rather adopts the City's motions at ECF Nos. 268, 269, 280, 283, and 291 as well as Defendant Raucci's motion at ECF No. 277.  ECF No. 292.

the Court limits its discussion to a brief refresher of the core facts and the necessary procedural background.

Plaintiff brings this action against the City and five New Haven Police Department ("NHPD") officers:  former Chief of Police Nicholas Pastore,[2] Vincent Raucci, Robert Lawlor,[3] Vaughn Maher, and Michael Sweeney.  Plaintiff alleges that, because of the misconduct of the NHPD officers and the City's failure to correct the officers' misconduct, he was wrongfully convicted, along with Scott Lewis, of a double homicide he did not commit.  Plaintiff spent twenty-one years in prison until he was released in 2015; he was granted a full and unconditional pardon in 2021.

Plaintiff commenced this action asserting ten federal and state law claims against the NHPD officers and the City arising under 42 U.S.C. § 1983.[4]  Plaintiff sought partial summary judgment on Count Three, his claim for failure to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), against Defendant Sweeney.  ECF No. 73.  Defendant Sweeney opposed the motion.  The City moved for summary judgment against Plaintiff on all claims asserted against it, ECF No. 128-1.  Likewise, the individual Defendants also moved for summary judgment on all of Plaintiff's claims against them.  ECF No. 131 (Pastore); 134-1 (Lawlor and Maher); ECF No. 135-1 (Raucci); ECF No. 136-1 (Sweeney).  On October 3, 2025, the Court granted Plaintiff's partial motion for summary judgment against Sweeney on Count Three, denied Sweeney's cross-motion for summary judgment, granted Pastore's partial motion

---

[2] A Suggestion of Death as to Pastore was filed on October 18, 2024.  *See* ECF No. 152.  Carolyn Pastore, as Administratrix of the Estate of Pastore, was subsequently substituted as a party for him.  *See* ECF No. 160.

[3] A Suggestion of Death as to Lawlor and motion to substitute party was filed on March 19, 2026.  *See* ECF No. 344. Gail Lawlor, as Administratrix of the Estate of Lawlor, was subsequently substituted as a party for him.  ECF No. 346.

[4] All claims are fully set forth in the Court's summary judgment ruling.  *See Morant*, 2025 WL 2821260 at *1.

for summary judgment on Count Eight (negligence), and denied all other Defendants' motions for summary judgment. *Morant*, 2025 WL 2821260 at *34.[5]

The Court held a pretrial conference on the motions *in limine* that are the subject of this omnibus ruling and order, as well as other pretrial matters, on April 17, 2026, (the "Pretrial Conference"). Jury selection is scheduled to begin on April 28, 2026.

## II.    LEGAL STANDARD

Motions *in limine* "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieiri v. Defaria*, 88 F.3d 136, 141 (2d. Cir. 1996) (citation omitted). Evidence should be excluded on a motion *in limine* only when it is clearly inadmissible on any grounds. *Levinson v. Westport Nat'l Bank,* No. 3:09-CV-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013).

To be admissible at trial, evidence must be relevant. Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. The standard is "very low." *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (quoting *United v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008)). All relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 402; *see White*, 692 F.3d at 246.

---

[5] At the Pretrial Conference on April 17, 2026, the City suggested that because the only remaining count against Pastore is Count Seven—Plaintiff's municipal liability claim against the City and Pastore in his official capacity— Pastore's estate is no longer an individual Defendant in this action for all practical purposes. The parties agreed that any reference to his estate should be removed from jury-facing documents for trial. The Court granted this request and merely notes Pastore's estate as a matter of procedural record here.

Relevant evidence may nevertheless be excluded by a court "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The moving party bears the burden of establishing the inadmissibility of the evidence for any purpose. *See United States v. Pugh*, 162 F. Supp. 3d 97, 101 (E.D.N.Y. 2016). Additionally, under Rule 404(b), evidence of prior bad acts may not be admitted merely to show a person's propensity to commit the act in question. Fed. R. Evid. 404(b). But such evidence may be admitted for any other relevant purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident, under the Second Circuit's "inclusionary" approach—subject to Rule 403's balancing test. Fed. R. Evid. 404(b)(2); *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991).

A court's ruling on a motion *in limine* is not set in stone; it "is subject to change when the case unfolds . . . Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Palmieiri*, 88 F.3d at 139 (quoting *Luce v. United States*, 469 U.S. 38, 41–42 (1984)). A trial judge may also "reserve judgment on a motion *in limine* until trial to ensure the motion is considered in the proper factual context." *Walker v. Schult*, 365 F. Supp. 3d 266, 275 (N.D.N.Y. 2019) (citation omitted).

## III.    DISCUSSION

### A.    Plaintiff's Motions

#### 1.  ECF No. 270

Pursuant to Federal Rule of Evidence ("FRE") 402, 403, and 404(b), Plaintiff moves to exclude character and prior bad acts evidence related to himself and Scott Lewis. ECF No. 270-1 at 1–2. The evidence Plaintiff seeks to exclude falls into four general categories: prior criminal convictions and arrests, a shooting incident concerning Scott Lewis's car, Plaintiff's drug and

alcohol use except for on the day he was questioned by the NHPD, and details relating to Lewis's and Plaintiff's distribution of drugs. *Id.* at 3–7. Plaintiff's motion is granted in part, denied in part, and deferred in part.

First, as to Plaintiff's prior convictions and arrests, in its opposition, the City states that it "does not seek to introduce evidence of plaintiff's prior convictions for breach of peace or fishing without proper permission." City Opp'n, ECF No. 302 at 4; *see* ECF No. 270-2 at 3 (Plaintiff's criminal history). The City confirmed this intent at the Pretrial Conference, stating that it did not plan to introduce this evidence at trial for any purpose. Thus, Plaintiff's motion is denied as moot with respect to the request to exclude Plaintiff's prior convictions.

Next, Plaintiff seeks to preclude introduction of evidence related to a shooting of Lewis's car. The City conceded at the Pretrial Conference that this evidence has no relevance. Accordingly, Plaintiff's motion is denied as moot on this point as well. With respect to evidence related to Plaintiff's or Lewis's involvement with firearms generally, Plaintiff's motion is granted except as to evidence relating to any use of firearms in the Turner-Fields homicide.

Plaintiff also seeks to preclude the introduction of evidence related to his alcohol use generally. Plaintiff's alcohol consumption is not at issue in this action, save for his alleged intoxication on the day he was brought in for questioning. Introduction of Plaintiff's alcohol use for any other purpose would have no relevance and serve only to distract the jury from the main issues in this case. Accordingly, evidence of Plaintiff's alcohol use except as to his alleged consumption of alcohol on January 16, 1991 is precluded.

Likewise, evidence of Plaintiff's personal use of cocaine or other drugs is irrelevant except for his alleged consumption of marijuana on January 16, 1991; and even if otherwise minimally relevant to damages or otherwise, is outweighed by the risk of unfair prejudice relating to his use

of drugs.  The motion is granted with respect to Plaintiff's alcohol and personal drug use except for on the day of his January 16, 1991, interview.

Finally, the City opposes Plaintiff's motion with respect to Plaintiff's and Lewis's involvement in selling cocaine.  The City argues that the investigating officers were aware of Plaintiff's involvement in drugs and "considered this information during their investigation."  ECF No. 302 at 4.  Thus, the City proffers that the information is admissible for the non-propensity purpose of proving the individual Defendants' state of mind during the investigation, including their intent.  *Id.* at 5.  That can be true, however, only if the individual Defendants actually *knew* about Lewis's and Plaintiff's cocaine trafficking activity at the time they were being investigated.  Plaintiff has pointed to Raucci's deposition testimony, in which he stated that he had "never heard of these people," meaning Lewis and Plaintiff, before Ovil Ruiz mentioned them in his interview.  *See* Raucci Dep. Tr., ECF No. 145-20 at 215.  Likewise, Maher testified that he had first heard of Lewis when he was mentioned by Raucci after the Ruiz statement.  Maher Dep. Tr., ECF No. 145-25 at 163–64.  As neither the City nor the individual Defendants have proffered evidence suggesting that the individual Defendants knew about Lewis's and Plaintiff's cocaine distribution at the beginning of the investigation, evidence of their drug distribution cannot be relevant to their intent to begin investigating Plaintiff and Lewis.  Further, even assuming that Raucci and Maher were aware of Plaintiff before the start of their investigation, the evidence of Plaintiff's involvement in the drug trade comes from Ovil Ruiz's allegedly coerced and fabricated statement, so whether it truly allowed Raucci and Maher to form any meaningful intent to investigate Plaintiff remains an open question.  Ovil Ruiz Jan. 14, 1991, Statement, ECF No. 73-8, Ex. 5 at 1–21.  To the extent the evidence at trial shows that the individual Defendants learned about drug distribution by Plaintiff and Lewis at some point during the investigation and that it then became relevant to

6

their state of mind in continuing to pursue Plaintiff and Lewis as suspects in the investigation, the evidence might be admissible for a non-propensity purpose. But the Court cannot make that determination on the present record, and will defer this question until trial.

At the Pretrial Conference, the City also proffered that evidence of Lewis's and Plaintiff's drug distribution was relevant not as prior bad acts under Rule 404(b), but rather as direct evidence supporting Defendants' view that Plaintiff and Lewis actually were responsible for the Turner-Fields homicides. Plaintiff conceded that evidence of Lewis's drug distribution was relevant, and the Court also holds that evidence of Plaintiff's drug distribution activities engaged in *with* Lewis are relevant to the defense's theory of the case, insofar as Defendants seek to paint Lewis and Plaintiff as co-conspirators in the drug-related Turner-Fields homicides. Defendants are allowed to introduce evidence of Lewis's drug distribution activities and Plaintiff's drug distribution activities that he engaged in with Lewis.

Finally, the City argues that information about Plaintiff's involvement in drug dealing (both with and separate from Lewis)—along with information about his general lifestyle during the period in question—is relevant to the question of damages. ECF No. 302 at 7. The City's briefing states that "plaintiff's life carried substantial risks of violence, arrest, and incarceration," which it claims "relates directly [to] the nature and extent of any claimed loss of enjoyment of life." *Id.* The Court agrees with Plaintiff that this argument seems premised on devaluing the years Plaintiff spent wrongfully incarcerated, because he was "bound to end up dead or in prison anyway." Pl.'s Reply, ECF No. 337 at 4. But the Court cannot conclude that introduction of Plaintiff's independent drug dealing is irrelevant to Defendants' damages defense; nor has Plaintiff articulated how it is *unduly* prejudicial (even if somewhat "ugly," as Plaintiff puts it). Thus, Defendants are permitted to introduce evidence of Plaintiff's independent drug dealing activities

7

on the question of damages.  The Court will entertain a request for a limiting instruction regarding the appropriate use of this evidence.

Accordingly, Plaintiff's motion is granted in part, denied in part, and deferred in part.

### 2.  ECF No. 271

Pursuant to FRE 401, 403, and 802, Plaintiff moves to exclude six judicial opinions (the "Opinions") issued against him—prior to his pardon—upholding his conviction or denying him post-conviction relief.  *See* Joint Trial Memorandum ("JTM"), ECF No. 293, Exs. 517–22.  The City opposes this motion and seeks to introduce the Opinions for non-hearsay purposes.  City Opp'n, ECF No. 303.  The Court denies Plaintiff's motion as moot.

First, "[i]t is well settled in the Second Circuit that a judgment or judicial opinion in another case . . . is inadmissible hearsay."  *LoCurto v. AT&T Mobility Servs. LLC*, No. 13-CV-4303 (AT) (KNF), 2018 WL 11604501, at *4 (S.D.N.Y. Sept. 26, 2018).  This is the case because, for instance, "[e]xcluding credibility assessing statements by judges in other cases avoids the practical difficulty of weighing judicial opinions against contrary evidence."  *Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001).  Accordingly, the Opinions would be inadmissible to show the truth of the matters asserted therein—*e.g.*, that there was no *Brady* violation or fabricated evidence.  *See Bertuglia v. City of N. Y.*, 133 F. Supp. 3d 608, 631 n.14 (S.D.N.Y. 2015).

The City argued in its briefing that the Opinions are relevant for non-hearsay purposes, specifically to demonstrate "what information was available to the City, Chief Pastore, Chief Wearing and all future command staff following plaintiff's conviction," with respect to Plaintiff's failure to rectify arguments in connection with his negligence claim, and as well as being relevant for the "identifiable person-imminent harm exception to governmental immunity" argument.  City Opp'n, ECF No. 303 at 4, 6.

At the Pretrial Conference, however, Plaintiff stated on the record that he does not intend to pursue his negligence claim against the City based on any post-conviction conduct; and he likely will not rely on any allegedly negligent conduct of any non-parties to prove his negligence claim. Accordingly, Plaintiff's motion is denied as moot, without prejudice to renewal, should the evidence and presentation of claims develop otherwise at trial.

With respect to the City's theory of relevance concerning the "identifiable person, imminent harm" exception to discretionary act immunity, the Opinions concerning post-conviction relief are irrelevant. As the Court noted in its summary judgment ruling, "for purposes of the exception to discretionary act immunity, the Court must examine the information available to the government agent at the time of her discretionary act or omission," and the "omissions and acts at the heart of Plaintiff's case relate to the information obtained in 1991 from witness interviews undertaken in the course of the investigation into the murders." *Morant*, 2025 WL 2821260, at *27 (internal citation omitted). Because the Opinions all post-date Plaintiff's conviction, they have no relevance to assessing the identifiable person, imminent harm exception.

### 3. ECF No. 272

Pursuant to FRE 611, Plaintiff seeks the ability to ask leading questions of certain witnesses he may call during his case-in-chief, including Defendants, non-party New Haven police officers and former officers, and former New Haven prosecutor, now-Judge David Gold. ECF No. 272 at 1. The City opposes the motion. City Opp'n, ECF No. 304. Defendant Raucci has also opposed Plaintiff's motion and moved for a reciprocal order allowing leading questioning of witnesses expected to be adverse to him. Raucci Opp'n, ECF No. 305.

The Court: grants Plaintiff's motion as to the individual Defendants and current and former NHPD officers; defers ruling on the remainder of Plaintiff's motion until trial; grants Defendant Raucci's request for a reciprocal order as to Plaintiff and Lewis; and defers ruling on Defendant

Raucci's request for a reciprocal order as to Augustin Castro, Ovil Ruiz, Donna Raucci, Joseph Pettola, Lisa Bull (DiLullo), Brian Donnelly, and any other unnamed potentially adverse witnesses.

"[W]hen a party calls a hostile witness, an adverse party, or a witness identified with an adverse party," the Court "should allow" leading questions on direct examination. FRE 611(c)(2). "[G]enerally trial judges are afforded a large degree of discretion in overseeing the examination of witnesses." *Sanders v. N.Y.C. Hum. Res. Admin.*, 361 F.3d 749, 757 (2d Cir. 2004) (citations omitted). "'The term witness identified with an adverse party is intended to apply broadly,'" including "'based upon employment by the party or by virtue of a demonstrated connection to the opposing party.'" *United States v. Patel*, No. 3:21-CR-220 (VAB), 2023 WL 2643815, at *29 (D. Conn. Mar. 27, 2023) (quoting *In re Rsrv. Fund Sec. & Derivative Litig.*, Nos. 09 MD. 2011 (PGG), 09-CV-4346 (PGG), 2012 WL 12354219, at *9 (S.D.N.Y. Sept. 10, 2012)). Even former officers and employees can also qualify as identifying with an adverse party. *In re 650 Fifth Ave. & Related Props.*, No. 08-CV-10934 (KBF), 2017 WL 6419014, at *2 (S.D.N.Y. May 30, 2017) (former board members and presidents of adverse party "plainly f[e]ll with the type of witnesses that ordinarily may be led . . . under Rule 611"). Finally, even where a formerly hostile party is no longer "currently a litigant," witnesses may still be considered identified with the former party so long as that party's position has not materially changed. *Id.*

The Court grants Plaintiff's motion as to the individual Defendants, who are adverse parties, and any current or former New Haven police officers, who are associated with an adverse party, pursuant to FRE 611(c)(2); *see also Patel*, 2023 WL 2643815, at *29. At the Pretrial Conference, Plaintiff specifically argued for permission to treat Joseph Pettola—formerly a Defendant in this action—and Brian Sullivan, a former NHPD officer and an adverse party to

10

Plaintiff's counsel in another action, as adverse witnesses. Because Joseph Pettola was formerly a defendant in this action and the City has not suggested his adverse nature has changed, the Court grants this request. *See In re 650 Fifth Ave. and Related Properties*, 2017 WL 6419014 at *2.[6] Further, because Sullivan was a former NHPD officer, he is associated with an adverse party and the Court grants Plaintiff's request as to him as well. *Id.*

The Court defers ruling, however, as to Judge Gold. Whether a witness is identified with an adverse party is a matter of discretion for the Court, and the Court will make this determination as to Judge Gold in the context of trial. *See e.g.*, *Martinez v. City of N. Y.*, No. 16-CV-79 (NRM) (CLP), 2022 WL 17090267, at *22 (E.D.N.Y. Nov. 18, 2022) (deferring ruling as to whether non-defendant police officer witnesses were identified with an adverse party until trial and until plaintiff "specifie[d] the grounds under which she believes each witness satisfies the criteria of Rule 611(c)(2)").

The Court further grants Defendant Raucci's reciprocal request as to Plaintiff as an adverse party and Lewis as a witness identified with an adverse party under Rule 611(c)(2). The Court again defers ruling on Defendant Raucci's reciprocal request as to Defendant Sweeney, Augustin Castro, Ovil Ruiz, Donna Raucci, Joseph Pettola, Lisa Bull (DiLullo), Brian Donnelly, and any other unnamed potentially adverse witnesses, until such time as Raucci can articulate the specific basis under FRE 611(c)(2) for posing leading questions. *Martinez*, 2022 WL 17090267, at *22; *Rosario v. City of N. Y.*, No. 18 Civ. 4023 (LGS), 2021 WL 9455782, at *3 (S.D.N.Y. Nov. 23, 2021) (denying motion *in limine* and finding plaintiff could not ask leading questions for a hostile witness unless defendants "prove themselves hostile on the stand"). Accordingly, Plaintiff's motion is granted in part and deferred in part.

---

[6] While *In re 650 Fifth Ave* discussed witnesses for a former party to the litigation, the reasoning applies equally when such former party would itself act as a witness.

### 4. ECF No. 273

Plaintiff seeks to collaterally estop Defendants from contesting the final judgments and factual findings necessary to those judgments from fourteen lawsuits spanning from 1984 to 2007 where NHPD detectives allegedly fabricated evidence, coerced witness statements, withheld exculpatory evidence or otherwise engaged in misconduct resulting in wrongful prosecutions and/or convictions. ECF No. 273-1 at 1–2. While the motion appears to seek to collaterally estop Defendants from contesting *all* fourteen lawsuits, Plaintiff confirmed at the Pretrial Conference that his motion is directed only at *Ham v. Greene*, 248 Conn. 508 (1999), *cert. denied*, 528 U.S. 929 (1999), where Defendant Sweeney and another New Haven Police Department officer were found liable for false arrest, malicious prosecution, and state law claims including negligence, and the City defended and indemnified them. The City opposes this motion, City Opp'n, ECF No. 306, as does Sweeney, Sweeney Opp'n, ECF No. 317.

Collateral estoppel, or issue preclusion, "precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim." *Mazziotti v. Allstate Ins. Co.*, 240 Conn. 799, 812 (1997) (internal citation omitted). Collateral estoppel applies where:

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

*Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013); *see also Wiacek Farms, LLC v. City of Shelton*, 132 Conn. App. 163, 169 (2011).

First, the Court defers ruling on Plaintiff's motion as to the preclusive effect of any underlying factual findings in the *Ham* case against the City. The City stated at the Pretrial Conference that it would not dispute the fact that Sweeney and the other police officer were sued

in *Ham* and a judgment was entered against them, but it reserves the right to contest any underlying facts in the *Ham* case at the appropriate time, if necessary. Based on the City's position, the Court defers its decision as to whether the City was in privity with Sweeney in the *Ham* case until trial, should Plaintiff seek preclusive effect of any underlying factual findings in *Ham*.

Second, Plaintiff's motion is granted as to Defendant Sweeney, subject to a limiting instruction. Defendant Sweeney does not object to the "reference to or evidence of the fact of the judgment in *Ham*" being introduced generally, but appears to suggest that reference to or evidence of the fact that the judgment was entered against Sweeney specifically would be unfairly prejudicial under Rule 403, as the jury may conclude that if Sweeney violated Ham's constitutional rights, he must also have violated Plaintiff's. ECF No. 317 at 1. Sweeney's concern can be cured with a limiting instruction, telling the jury that while they can consider the fact of the *Ham* judgment (against Sweeney and the other officer) for non-propensity purposes—such as whether the City was on notice of constitutional violations of its officers and any non-propensity purpose Plaintiff articulates as to Sweeney himself—they cannot use it to infer that simply because Sweeney violated Ham's constitutional rights (or was negligent), he also violated Plaintiff's rights.

Thus, Plaintiff's motion is granted insofar as it seeks to introduce the fact and evidence of the judgment in *Ham* as evidence against both the City and Sweeney, but the Court will deliver a limiting instruction with respect to the jury's use of *Ham* against Sweeney, and will defer ruling on the City's collateral estoppel argument with respect to the underlying facts of *Ham* until trial.

### 5.  *ECF No. 278*

Pursuant to FRE 201, Plaintiff requests that the Court take judicial notice of various convictions, vacaturs of convictions, and pardons relating to prior lawsuits against NHPD detectives spanning from 1984 to 2008 as well as in Plaintiff's and Lewis's own cases. ECF No. 278-1 at 1–2. Plaintiff also requests that the jury be instructed that Sweeney "has been

conclusively found to have violated Mr. Morant's constitutional right to a fair trial" under *Brady*. The Court grants Plaintiff's motion as to its request for judicial notice and grants it in part as to his request for a jury instruction on Sweeney's *Brady* violation, subject to the limitations below.

Upon request, and with the necessary information, the Court "must" take judicial notice of facts that are "not subject to reasonable dispute," because they either are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b), (c). Courts routinely take judicial notice of judgments and filings in state court proceedings, including pardons. *See VDARE Found., Inc. v. James*, 162 F.4th 77, 83 (2d Cir. 2025); *Stewart v. Pennsylvania*, No. 23-CV-295, 2024 WL 53012, at *1 n.2 (E.D. Pa. Jan. 4, 2024) (taking judicial notice of "the Board of Pardons' publication of recommendation and pardon decisions"). In a civil case, the court "must instruct the jury to accept the noticed fact as conclusive." Fed. R. Evid. 201(f). And, importantly, a court may only take judicial notice of documents from prior proceedings to "establish the fact of such litigation and related filings," and "not for the truth of the matters asserted in other litigation." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

The City argues that the facts that Plaintiff requests this Court take judicial notice of are not "adjudicative facts," but rather "legislative facts" that do not fall under Rule 201. *See* Fed. R. Evid. 201(a) ("This rule governs judicial notice of an adjudicative fact only, not a legislative fact."). The Second Circuit has cited with approval the Eighth Circuit's distinction between these two types of facts: "Legislative facts are established truths, facts or pronouncements that do not change from case to case but apply universally, while adjudicative facts are those developed in a particular case." *United States v. Hernandez-Fundora*, 58 F.3d 802, 812 (2d Cir. 1995) (citing *United States v. Gould*, 536 F.2d 216, 220 (8th Cir. 1976)).

14

The facts as to which Plaintiff requests judicial notice—that certain other individuals were charged, convicted, and/or incarcerated and in most instances their charges were dismissed or convictions were later vacated in some manner—are adjudicative facts. These are facts developed in *this* case (though relevant to other cases), that can be determined from a source that whose accuracy cannot be questioned: state court filings and certificates of pardon issued by the Board of Pardons and Paroles. The City attempts to argue that taking judicial notice of these facts would "require" the jury to treat the post-conviction relief "as evidence that the underlying convictions were wrongful, that institutional actors failed or that law enforcement officers engaged in misconduct." ECF No. 307 at 3. But Plaintiff's limited proposed adjudicative facts do no more than establish facts that are not subject to reasonable dispute, stemming from sources whose accuracy cannot be question. They do not ask the Court to take notice of any reason for *why* post-conviction relief was granted; they would merely convey to the jury the fact that certain events occurred. To the extent the City's argument is rooted in concerns about relevancy and Rule 403, it is unpersuasive, given the clear relevance of these facts and high probative value as to Plaintiff's various theories of *Monell* liability (assuming Plaintiff establishes the factual similarity of the other cases to his claims here). *See generally Weppner v. Cnty. of Erie*, 22-CV-519 (MAV), 2025 WL 3214581, at *3–12 (W.D.N.Y. Nov. 18, 2025) (examining relevance of "other case" evidence to the plaintiff's *Monell* claims). Accordingly, the Court does not find the probative value is substantially outweighed by a risk of unfair prejudice against the City. Plaintiff's motion is granted

as to its request for judicial notice.  The Court will take judicial notice of the facts listed at ECF No. 278-1 at 2–3.[7]

Plaintiff's motion is also granted in part as to its request to issue an instruction to the jury that Defendant Sweeney has been determined to have violated Plaintiff's constitutional right to a fair trial pursuant to *Brady*.  The City and Sweeney argue that because "the jury is still required to decide whether Sweeney's *Brady* violation was the but-for cause of plaintiff's conviction . . . liability has not been determined," and thus the Court should not instruct the jury as to its summary judgment ruling in Plaintiff's favor on Count Three.  ECF No. 307 at 10 (citing *Drumgold v. Callahan*, 707 F.3d 28, 49 (1st Cir. 2013)); *see also* ECF No. 318 at 2–3.

At the Pretrial Conference, Plaintiff contested that an additional finding of causation beyond materiality was necessary under Second Circuit precedent but stated that, regardless, he intends to prove at trial both that Sweeney's constitutional violation was the cause of his conviction, and that he is entitled to damages on his *Brady* claim.  Thus, based on the parties' agreement at the Pretrial Conference, the Court will instruct the jury that Sweeney has been found to have violated Plaintiff's constitutional rights by withholding exculpatory and impeaching information, but that the jury may not conclude that any other Defendant committed the same constitutional violation solely based on the fact that Sweeney has been found to have done so. Additionally, the Court will instruct the jury that it will still need to independently make a finding (1) as to whether Sweeney's violation of Plaintiff's constitutional rights caused Plaintiff's wrongful conviction; and (2) whether Plaintiff is entitled to damages for Sweeney's actions.  *See*

---

[7] Because judicial notice cannot be taken as truth of matters asserted in other litigation, the Court believes that it is appropriate to allow the parties to confer about the form in which these facts are presented to the jury.  Given Plaintiff's representation that it seeks solely to introduce the facts listed at ECF No. 278-1 at 2–3, the Court plans to extract those facts and place them into a document with the case caption, which it will circulate to the parties for comment.  The Court will then inquire with the parties at trial when it would be appropriate time to announce each particular conclusive fact to the jury.

*Drumgold*, 707 F.3d 28, 49; *Poventud v. City of N.Y.*, 750 F.3d 121, 158–59 (2d Cir. 2014) (Jacobs, J., dissenting).  The Court will address the applicable causation standard in the context of drafting the final jury instructions.

>    6.   *ECF No. 279*

Pursuant to FRE 401 and 403, Plaintiff seeks to redact or replace all instances of a slur that is used as a derogatory term for homosexual men, and refrain from the use of such slur at trial. ECF No. 279-1 at 1.  The Court grants this motion.

The word Plaintiff seeks to redact is a homophobic slur beginning with the letter "f" that carries with it an inflammatory connotation.  *See e.g.*, *640 Octavia, LLC v. Heinz-Pieper*, 843 F. App'x 924, 924–25 (9th Cir. 2021).  The City originally argued that the use of this slur "informed investigators' understanding of potential motive and contributed to the investigative theories pursued at the time," and thus that its inclusion was necessary to provide the full investigative context.  City Opp'n, ECF No. 308 at 2.  But the City did not point to a single instance in the record where the officers involved alleged that Plaintiff was a suspect because of any anti-gay prejudice or was motivated in any part by the victims' homosexuality.

At the Pretrial Conference, the City conceded that references to the slur should be redacted or sanitized, though Sweeney stood on his objection to redaction of the word.  Absent any evidence of its relevance to an investigative theory of the case as to Plaintiff, the inclusion of an inflammatory and prejudicial slur holds little to no probative value, and any such probative value is clearly outweighed by a risk of unfair prejudice and confusing what is at issue in the case.[8]

---

[8] As Plaintiff's counsel noted at the Pretrial Conference, even if there was evidence for this investigative theory, the use of the slur in the contemporaneous transcripts shows it is used—both by suspects and the interviewing officers— as a stand-in for homosexual men generally, casting doubt on the value of a suspect's use of the term as an investigative rationale.  *See e.g.*, ECF No. 73-8 at 4–5 (Ruiz: "Scott Lewis shot, uh, his, his, uh, f****t boyfriend"; Officer: "Turner you said was a f****t?").

Further, inclusion of this slur without any probative value runs the risk of undue delay and wasting time, as its use during trial could dissuade potential jury members from wanting to serve, delaying the empaneling of a jury in a trial that is projected to last six weeks.

Accordingly, Plaintiff's motion is granted as to all written instances of the slur. Any written instance of the slur shall be removed and replaced with "f****t(s)." On April 22, 2026, the parties filed a notice as to the feasibility of removing auditory instances of the slur, particularly with respect to interrogation tapes whose alleged editing and splicing is a key piece of evidence in this case. Pl.'s Redaction Notice, ECF No. 383. Plaintiff has proposed a method for removing the slur which "clearly omit[s] the slur as agreed upon, without interfering with the 'click' noises Plaintiff alleges were starts and stops of the tape." *Id.* at 2. Defendants contend this is not the case, and that the redactions interrupt the "flow of the discussion." *Id.* To the extent this is Defendants' sole ground for objection, the Court finds it unpersuasive. Having listened to the sample audio from the Jose Roque interview submitted with Plaintiff's notice, *see* Audio Sample, Ex. B, ECF No. 383-2 at 1, the Court finds the proposed form of redaction sufficient and does not overly interrupt the flow of the interrogation. The Court adopts Plaintiff's proposal; the Court will issue a jury instruction indicating the reasons for the bleeps in the audio recordings and that they are not part of the original tape. Additionally, as the jury will have transcript as a demonstrative to assist them with following the audio, there will be no risk of juror confusion.

### 7. ECF No. 281

Pursuant to FRE 403, 701, and 704, Plaintiff seeks an order "precluding any non-party witness, particularly any current or former prosecutor or law enforcement officer, from (1) testifying as to legal conclusions at trial, and (2) offering testimony on the credibility of either Defendants or other witnesses or evidence." ECF No. 281-1 at 1. The City opposes this motion,

18

City Opp'n, ECF No. 310, and Defendants Lawlor, Maher, and Raucci have joined the City's opposition.  Lawlor & Maher Joinder, ECF No. 320; Raucci Joinder, ECF No. 326.

Under Second Circuit precedent, the rules of evidence "prohibit witnesses (a) from vouching for other witnesses, (b) from testifying in the form of legal conclusions, and (c) from interpreting evidence that jurors can equally well analyze on their own."  *Cameron v. City of N. Y.*, 598 F.3d 50, 54 (2d Cir. 2010).  But lay witnesses may "testify in the form of an opinion, even one that goes to an ultimate issue to be decided by the trier of fact," as long as that opinion helps to provide a clearer understanding of the witness' testimony or the determination of a fact at issue in the case.  *Id.* at 62 (internal citation omitted).

Here, the City does not contend that it intends to have any of its witnesses testify as to legal conclusions or the credibility of other witnesses.  *See* ECF No. 310 at 2–5 (Gold's testimony to be "factual testimony describing how the prosecution unfolded," and law enforcement officers to be asked about "personal observations, the investigative steps they took, the information they received from witnesses and their interactions with the prosecutor").

At the Pretrial Conference, Plaintiff argued that testimony concerning Gold's assessment of Ruiz's credibility at the time of the prosecution consists of impermissible vouching under *Cameron*.  *See Cameron*, 598 F.3d at 64.  *Cameron* draws distinctions between  a permissible type of character vouching that is implicit in "a prosecutor's decision to continue a prosecution," and impermissible prosecutor testimony such as testifying that he took a case to trial because he "believed the . . . evidence corroborated the events recounted by the police officers and actually strengthened the prosecution," or that he "had no reason to believe that anything the complaining offers told [him] was not accurate."  *Id.* (cleaned up).  Based on Defendants' description of Gold's proposed testimony, it does not appear he will opine on Ruiz's credibility other than implicitly,

through his testimony about his decision to proceed with the prosecution. But should Gold's testimony at trial appear to drift into *Cameron*'s impermissible categories, Plaintiff may object at trial on such grounds.

Finally, the parties appear to be in agreement that former prosecutor Gold and any non-party officer witnesses may be permitted to testify as to their own opinions, as long as they are helpful to the jury's understanding of an issue.

Accordingly, Plaintiff's motion is denied as moot, subject to renewal of the objection if the trial testimony contravenes *Cameron* or any other applicable Second Circuit precedent. *See Cameron*, 598 F.3d at 61–62.

### 8. ECF No. 290

Pursuant to FRE 401, 403, 801, and 804, Plaintiff seeks to preclude numerous witness transcripts across a variety of sources that the City has purportedly "indiscriminately" designated in their entirety. ECF No. 290-1 at 1. The City, in turn, argues that many of the transcripts Plaintiff has designated are not admissible under the former testimony exception to the hearsay rule for unavailable witnesses, FRE 804, and that, if they are admitted, the entire cross-examination for each of these witnesses should be read into the record. ECF No. 315.[9]

FRE 804 permits the former testimony of an unavailable witness to be admitted as an exception to the rule against hearsay under certain circumstances, if it is offered "against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1). For former

---

[9] Plaintiff no longer seeks to designate any portion of the transcripts of Defendant Lawlor's testimony in connection with Plaintiff's petition for a new trial or in connection with Lewis's federal habeas action. Pl.'s Notice of Designations, ECF No. 377. In any event, such testimony is not hearsay, as it is a party-opponent's statement. *See* Fed. R. Evid. 801(d)(2)(A). The City challenges admission of the prior testimony from witnesses Carol Cheek, Jeffrey Rochler, Anthony DiLullo, Melvin Wearing, Francisco Ortiz, Hector Ortiz, Diane Basilicato, Doreen Stiles, Leroy Dease, and Anthony Stevenson. *See* ECF No. 315 at 4–14. The City does not appear to contest that these witnesses are unavailable, but contests the other elements of the former testimony exception to the hearsay rule.

20

testimony to be admissible under this rule, Plaintiff must show, by a preponderance of the evidence, that (1) the witness is unavailable; (2) the party against whom the testimony is offered is the same as in the prior proceeding or a predecessor in interest; and (3) that the party had the same motive and opportunity to examine the witness. *See Annunziata v. City of N.Y.*, No. 06-CV-7637 (SAS), 2008 WL 2229903, at *7 (S.D.N.Y. May 28, 2008); *United States v. DiNapoli*, 8 F.3d 909, 912 (2d Cir. 1993). "Where both proceedings are trials and the same matter is seriously disputed at both trials, it will normally be the case that the side opposing the version of a witness at the first trial had a motive to develop that witness's testimony similar to the motive at the second trial." *DiNapoli*, 8 F.3d at 912. On the other hand, if the two proceedings are "different in significant respects, such as their purposes or the applicable burden of proof," "[t]he situation is not necessarily the same." *Id.* at 913.

Out-of-circuit cases have held that prosecutors in an underlying criminal matter may have a similar motive to develop the testimony of witnesses in certain circumstances. *See, e.g.*, *Lisker v. City of Los Angeles*, No. 09-CV-9374 (AHM), 2012 WL 3610134, at *1 (C.D. Cal. Aug. 20, 2012) (finding that the state had a motive to "defend the integrity of the police investigation" in the underlying criminal case, which was similar to the motive of the defendants in the ensuing § 1983 suit that was based on fabrication and withholding of evidence); *Trulove v. D'Amico*, No. 16-CV-50 (YGR), 2018 WL 1248095, at *2 (N.D. Cal. Mar. 11, 2018) (holding that the prosecutors in the underlying criminal proceeding had a motive to establish the credibility of a witness's identification of the criminal defendant/section 1983 plaintiff and the integrity of the criminal investigation, like the defendant in the section 1983 action); *Clark v. Abdallah*, No. 21-10001 (VAR), 2023 WL 4852230, at *17 (E.D. Mich. July 28, 2023) (finding prosecutors at criminal trial and arresting officers who were defendants in the section 1983 suit had similar

21

motive of establishing the plaintiffs' guilt); *but see Annunziata*, 2008 WL 2229903, at *8–9 (concluding that the district attorney in the underlying criminal trial had no motive to inquire about alleged police coercion of the statement of a witness who later recanted).

The Court is continuing its review of the testimony that is the subject of this motion, and will need to hear further argument as to the applicability of this exception at the second Pretrial Conference scheduled for April 27, 2026.  If Plaintiff has opted not to introduce any of this proposed former testimony, he shall notify the Court as soon as possible, to avoid waste of the judicial resources involved in reviewing transcripts that Plaintiff will not actually seek to admit.

B.  The City's Motions

9.  *ECF Nos. 268 & 269*

The City has moved to preclude the introduction of evidence and argument concerning post-conviction proceedings, including pardons, habeas rulings, vacaturs and related litigation of Plaintiff and Lewis.  Because Plaintiff and Lewis's post-conviction pardons and related relief are essential to the claims at issue and because failure to include the fact of their existence would impermissibly color the jury's perception, the City's motions are denied.

The City first argues that any evidence of Plaintiff or Lewis's post-conviction developments is not relevant.  First, the City argues irrelevance because "the Court has already determined that [the] 'favorable termination' prerequisite for a wrongful conviction claim has been met," taking the issue away from the jury.  ECF No. 268-1 at 4.  Not so; the Court's ruling merely found that Plaintiff's pardon qualified as favorable termination of his prosecution and that he was not required to demonstrate that his criminal prosecution ended without a conviction.  *Morant*, 2025 WL 2821260, at *12–13.  Plaintiff will now need to prove up the favorable termination element, along with the other elements, of his malicious prosecution claim at trial.  Central to that will be evidence of the fact of Plaintiff's pardon.  Lewis's post-conviction developments also have

probative value as to Plaintiff as strong circumstantial evidence given they were both charged with the same crime.

Further, courts have held that evidence going towards a plaintiff's innocence in wrongful conviction cases can be circumstantial evidence that defendants in such action acted improperly. *Restivo v. Hessemann*, 846 F.3d 547, 559 (2d Cir. 2017) (while plaintiffs "were not required to prove their innocence to win on their claims at trial . . . evidence of their innocence provides an important backdrop for their claims at trial"). Plaintiff can use his and Lewis's post-conviction relief as evidence of their innocence, and as circumstantial evidence, making it more likely that certain witness statements Defendants took were false or coerced. *Rubalcava v. City of San Jose*, No. 20-CV-04191 (BLF), 2024 WL 2031641, at *1 (N.D. Cal. May 6, 2024) ("proof of [plaintiff's] innocence has a tendency to make it more probable that [d]efendants falsified their police reports"). The post-conviction relief is also relevant as to the causation element of Plaintiff's *Brady* claim.

Finally, evidence of post-conviction relief is relevant to Plaintiff's damages calculations. "A jury that believed the plaintiff was guilty of the crime would award lower damages because the imprisonment is attributable to the person's own actions as well as the civil defendants' misbehavior[.]" *Parish v. City of Elkhart, Ind.*, 702 F.3d 997, 999 (7th Cir. 2012). Likewise, a jury that believed Plaintiff was innocent may award higher damages for emotional distress suffered as a result of a wrongful incarceration. And even if the post-conviction relief were relevant for no other purpose, courts have held that it is relevant to "show the complete procedural history of [Plaintiff's] case." *Howard v. City of Durham*, 68 F.4th 934, 960 (4th Cir. 2023). Accordingly, the Court finds Plaintiff and Lewis's post-conviction relief relevant.

Nor is the evidence unfairly prejudicial under FRE 403. As discussed, the probative value of Plaintiff and Lewis's post-conviction proceedings and determinations is high, and the Court

plans to instruct the jury not to conflate Plaintiff's post-conviction pardon and determinations with either an establishment of innocence or with liability of the Defendants as to any of Plaintiff's claims. *See, e.g.*, Not. Regarding Pardon Instruction, ECF No. 381. Accordingly, the Court does not find that this evidence would be unfairly prejudicial and denies the City's motions. To the extent Sweeney has joined the City's motions at ECF Nos. 268 and 269, *see* ECF No. 292, these motions are denied as to him as well. Pursuant to the Court's order at ECF No. 366, the Court will consider the parties' proposed jury limiting instruction at ECF No. 381, as to the meaning and import of Plaintiff's pardon, once evidence of it is introduced.[10]

### 10. ECF No. 280

The City moves to preclude Plaintiff—either himself, through counsel, or through his witnesses—from referencing the Court's summary judgment ruling as to Defendant Sweeney on Count Three. ECF No. 280-1 at 1. For the reasons set forth in the Court's ruling on Plaintiff's motion at ECF No. 278, the City's motion is denied. To the extent Sweeney has joined the City's motion, *see* ECF No. 292, the motion is denied as to him as well.

### 11. ECF No. 282

The City moves to preclude testimonial or documentary evidence regarding its conduct, policies or practices that post-dates Plaintiff's arrest in 1992. ECF No. 282-1 at 1. Because this evidence and the time at which it occurred is relevant to Plaintiff's various theories of *Monell* liability and its probative value is not substantially outweighed by a risk of unfair prejudice, the City's motion is denied.

---

[10] Plaintiff has also represented that he will not seek to introduce evidence of Lewis's settlement of his federal civil rights suit. Had he not done so, the Court would have precluded such as evidence as irrelevant and unduly prejudicial to Defendants.

Plaintiff's theories of *Monell* liability will require him to establish:  "(1) acquiescence in the [NHPD's] unconstitutional custom and practice of suppressing exculpatory and impeachment evidence from prosecutors; (2) failure to provide minimally appropriate supervision and discipline despite having notice of NHPD officers' constitutional violations and even criminal misconduct; and (3) ratification of unconstitutional misconduct leading to Plaintiff's wrongful conviction." ECF No. 325 at 1.  As the Court previously noted in its summary judgement ruling, some of the evidence for Plaintiff's *Monell* claim post-dates his 1992 arrest, which may "diminish" its probative value.  *Morant*, 2025 WL 2821260, at *30.  But this does not translate to an automatic bar on evidence that post-dates Plaintiff's conviction.[11]  The City does not point to any caselaw that mandates the exclusion of evidence that post-dates a plaintiff's conviction, particularly as to a *Monell* claim.  The caselaw suggests merely, as the Court previously noted, that post-conviction evidence's probative value may be diminished the further removed it becomes from the conviction.

Additionally, Plaintiff's *Monell* claim relies partially on demonstrating that the City was on notice of a *general* pattern of misconduct.  One way this may be demonstrated is through circumstantial evidence that the complained-of behavior continued to occur after Plaintiff was convicted, and thus necessarily would have existed at the time of his arrest, interrogation, and eventual conviction.  The City also challenges this, and argues that because *Monell* claims must be based on an unconstitutional behavior that "can fairly be said to be a moving force behind the constitutional violation underlying the *Monell* claim," post-event evidence cannot be relevant to

---

[11] The City argues that the correct reference point for determining whether Plaintiff's evidence is contemporaneous with or post-dates the event in question is Plaintiff's arrest date. ECF No. 335 at 1.  Picking an isolated line from the Court's summary judgment ruling, the City quotes back the Court's statement that certain cases of police misconduct "occurred prior to or nearly contemporaneously with Plaintiff's *investigation and arrest*," to justify a blanket rule that post-arrest evidence has no relevance. *Id.* (citing *Morant*, 2025 WL 2821260, at *30).  This ignores the Court's previous discussion of *post-conviction* evidence of Pastore's conduct to support the City's liability on a ratification theory. *See Morant*, 2025 WL 2821260, at *29.  Accordingly, the City's argument that this Court previously cabined post-event evidence to post-arrest evidence is incorrect.

establishing Plaintiff's *Monell* claim, as such evidence could not have been the driving force behind Plaintiff's claim. ECF No. 282-1 at 10 (citing *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). But this argument misunderstands the purpose of Plaintiff's post-event evidence: circumstantial evidence that a practice existed and was widespread post-event may help prove that the practice also existed at the time of the event. *See Weppner*, 2025 WL 3214581, at *6 ("While subsequent or contemporaneous conduct cannot serve as notice to policymakers of deficiencies in their supervision, or serve as proof of causation, it may be 'circumstantial evidence of the existence of a preceding municipal policy or custom.'") (quoting *Chepilko v. City of N.Y.*, No. 06-CV-5491 (ARR) (LB), 2012 WL 398700, at *15 (E.D.N.Y. Feb. 6, 2012) and collecting other cases)). And while the post-event evidence obviously cannot be the moving force behind the alleged violation of Plaintiff's constitutional rights or serve a notice function, it is probative as to Plaintiff's contention that the practice *at the time of the alleged violation* was such a moving force.

As to the Rule 403 balancing test, the Court acknowledges that some of the specific pieces of evidence Plaintiff wishes to rely on post-date Plaintiff's conviction by many years and thus may have diminished probative value. But they do not lack probative value altogether, and the City has not articulated how this evidence is unfairly prejudicial to it. The Court does not find that the risk of unfair prejudice *substantially* outweighs the probative value of this evidence. Further, clear jury instructions as to the purpose of such evidence and how it may be used as to Plaintiff's various *Monell* theories would sufficiently curb such concerns. Accordingly, the City's motion is denied.[12]

---

[12] The Court addresses only generally whether the post-event evidence cited in the motion would be inadmissible based on its temporal removal from the events that are the subject of this action. As to the admissibility of any individual post-event evidence, such as the FBI report that is the subject to one of Raucci's motions *in limine*, the Court addresses those in the context of more specific motions *in limine*, and reserves the possibility of assessing the admissibility of specific pieces of evidence at trial.

Any party is free to propose such limiting instructions with respect to post-conviction evidence, should the need arise at trial.

### 12. ECF No. 283

The City has moved to preclude Plaintiff from designating and presenting at trial portions of deposition testimony obtained through "argumentative, badgering and confrontational questioning" by Plaintiff's counsel. ECF No. 283-1 at 1. The City cites to one exchange during the deposition of Defendant Raucci and two during the deposition of former Police Chief Pastore. *Id.* at 2–3. The City also states that it has attached to its motion three exhibits containing deposition transcripts for Defendants Lawlor and Pastore with further examples, *see* ECF No. 283-1 at 2–3, but these exhibits were not submitted to the Court in connection with the motion. The Court has nonetheless reviewed the highlighted testimony, which was submitted in connection with assessing the parties' deposition designations. The City's motion is denied.

First, questions asked by lawyers at a deposition or at trial are not considered evidence, and thus the specific questions asked in these depositions cannot be precluded. *See Joiner v. Chartwells*, No. 5-CV-845 (JCH), 2009 WL 10713596, at *3 n.2 (D. Conn. Oct. 15, 2009). As to the testimony elicited, because at the time of the depositions both Defendants were adverse parties, Plaintiff was permitted under FRE 611(c)(2) to ask leading questions of these witnesses, regardless of whether the testimony constituted direct or cross examination. While the City attempts to paint Plaintiff's questions as argumentative, rather than merely leading, the Court is not convinced. The nature of a leading question is argumentative, as such questions often "embed[] a disputed [but desired] conclusion within the question itself," and then ask the adverse witness to answer in the affirmative. ECF No. 283-1 at 2. This is exactly what Plaintiff's counsel did in the excerpts from Raucci's and Pastore's depositions highlighted in the City's motion. Had this testimony occurred in open court, the undersigned would not have sustained objections to it on the City's cited

27

grounds.    Further, this questioning was not harassing of either witness.    While questioning surrounding an affair and the fathering of a child with a former sex worker may have certainly been *uncomfortable* for Pastore and presents the closest call, Plaintiff has provided sufficient context for such question, going towards the ability of Pastore to enforce discipline in the NHPD. Pl.'s Opp'n, ECF No. 319 at 5–6.

Accordingly, the Court denies the City's motion.   To the extent Lawlor & Maher joined this motion at ECF No. 288 and Sweeney joined it at ECF No. 292, it is denied as to them well. The Court will, however, instruct the jury that questions asked by lawyers for any party are not evidence. *See Joiner*, 2009 WL 10713596, at *3 n.2.

### 13. ECF Nos. 285 & 291

The City seeks to preclude Plaintiff from challenging the constitutionality or admissibility of findings made during the motion to suppress his January 16, 1991 statement hearing in his state criminal trial under the doctrine of collateral estoppel.   ECF No. 285-1 at 1.   The City has also filed a motion *in limine* to preclude testimony or evidence that Defendant Sweeney violated Plaintiff's constitutional rights by withholding exculpatory evidence pursuant to collateral estoppel.   ECF No. 291-1 at 1.   That motion also seeks reconsideration of the Court's granting of summary judgment in favor of Plaintiff as to his *Brady* claim against Sweeney pursuant to Rule 60(b).   Given the similarities in arguments between these motions, the Court decides them together. Because collateral estoppel does not apply, and the City's motions impermissibly amount to a merits challenge to both Plaintiff's coerced statement claim and the Court's *Brady* violation determination, the motions are denied.

First, under Connecticut state law, collateral estoppel does not apply where a judgement has been vacated and carries no preclusive effect.   *See State* v. *Brundage*, 320 Conn. 740, 753–54 (2016) ("[b]ecause the defendant's judgments . . .   have been vacated, those judgments have no

28

preclusive effect").[13]    Because Plaintiff's conviction was invalidated in 2021, the state court's judgments carry no preclusive effect with respect to determinations made by the state courts as to whether, for instance, Plaintiff's confession was coerced or his *Brady* rights were violated.  Thus, the City's collateral estoppel arguments fail at the outset.  *See Morant*, 2025 WL 2821260, at \*12.

Even assuming collateral estoppel did apply here, however, the City's motions *in limine* would be procedurally improper as they amount to motions on the merits of Plaintiff's coerced statement and *Brady* claims.  "'It is well settled that [m]otions *in limine* address evidentiary questions and are inappropriate devices for resolving substantive issues, such as the sufficiency of the evidence to support a claim or defense.'"  *Williams v. Rushmore Loan Mgmt. Servs. LLC*, No. 3:15-CV-673 (DFM) (RNC), 2017 WL 822793, at \*1 (D. Conn. Mar. 2, 2017) (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 532 (D.N.J. 2008)).  But this is exactly what the City's motions attempt to do:  circumvent jury consideration of claims related to alleged constitutional violations through a legal argument made in a motion *in limine* that would, if accepted, foreclose such consideration.  Indeed, the City's request for Rule 60(b) relief as to the Court's *Brady* claim determination regarding Sweeney all but gives away the game in explicitly seeking a merits-based determination.  Accordingly, the City's motions *in limine* are denied.

To the extent the City seeks Rule 60(b) reconsideration of the Court's previous determination of a *Brady* violation by Defendant Sweeney, this too is denied and borders on frivolous.  Setting aside that a motion *in limine* is not a procedurally proper vehicle to seek this relief and the question of whether the City has standing to challenge the determination of a *Brady* violation claim against Defendant Sweeney, the City's argument fails on its merits as well.  Rule

---

[13] Plaintiff is correct that state law, not federal law, applies to determine whether collateral estoppel exists as to a state court judgment.  *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered").

60(b), in relevant part, permits a party to seek relief from a final judgment or order for "mistake, inadvertence, surprise, or excusable neglect," or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (b)(6). Rule 60(b) relief is reserved for "extraordinary circumstances." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988). The movant must provide "highly convincing material," in support of the request for relief, and relief under the rule is discretionary. *Leeber Realty LLC v. Trustco Bank*, No. 17-CV-2934 (KMK), 2019 WL 498253, at *3 (S.D.N.Y. Feb. 8, 2019) (quoting *United States v. Cirami*, 563 F.2d 26, 33 (2d Cir. 1977)).

The City fails to meet any portion of this standard. The City has set forth no grounds for reconsideration that did not already exist at the time of the Court's summary judgment order. Further, Defendant Sweeney already raised preclusion arguments in his motion for reconsideration on this exact claim, which the Court rejected in full. *See* Order on Mot. for Reconsideration, ECF No. 219. Defendant Raucci also made similar arguments in his summary judgment motion, which the Court likewise rejected. *See Morant*, 2025 WL 2821260, at *18, n.13. The City sets forth no further arguments for reconsideration. Rather, the City argues "extraordinary circumstances" exist for reconsideration given the different conclusions that both state and federal judges have reached related to whether Sweeney committed a *Brady* violation. ECF No. 291-1 at 6–7. But the record (and advocacy) was likely different before the state courts that addressed this issue. The record (and advocacy) before *this* Court demonstrated that there was no genuine dispute about whether Sweeney violated Plaintiff's rights under *Brady*, for reasons the Court explained in the summary judgment ruling. Rule 60 is not a vehicle for litigants to make a Hail Mary challenge on the eve of trial, when a federal court's ruling from months earlier happened to run opposite to a state court judge's ruling (that was later effectively vacated). And the City's argument, taken to its logical conclusion, would mean that a civil rights plaintiff would be unlikely to ever win an affirmative

30

summary judgment motion where his conviction was initially upheld by state courts but later overturned, simply because the courts disagreed on a particular issue.  That cannot be the case.

Accordingly, the City's requests to collaterally estop Plaintiff from challenging the constitutionality or admissibility of findings made during the motion to suppress his January 16, 1991 statement hearing in his state criminal trial, ECF No. 285, and for Rule 60(b) reconsideration of the Court's granting of summary judgment in favor of Plaintiff on his *Brady* claim against Defendant Sweeney, ECF No. 291, are denied.  Likewise, Sweeney's joinder at ECF No. 292, to the extent it joins the City's motion for Rule 60(b) relief at ECF No. 291, is denied.

### 14. ECF No. 289

The City has moved to preclude Plaintiff's designation testimony of Rachel Cain as to particular exonerations or the number of exonerations in New Haven in or around the 1980s and 1990s as unduly prejudicial.  ECF No. 289-1 at 1.  At the Pretrial Conference, Plaintiff stated that it is unlikely he will introduce Cain's testimony at trial.  Accordingly, the City's motion is denied as moot but without prejudice to renewal, based on developments at trial.[14]

C.  Defendant Raucci's Motions

### 15. ECF No. 274

Pursuant to FRE 401, 402, 403, 404, 701, 702, 801, and 802, Defendant Raucci seeks to preclude Plaintiff from soliciting the following testimony at trial:

- All testimony from Donna Desai, Detective Raucci's ex-wife;
- All testimony from Patricia Roberts regarding Detective Raucci;
- Certain designated transcript testimony from witnesses Francisco Ortiz, Jeff Rochler, Melvin Wearing, Nicholas Pastore;
- Certain lay opinion testimony from witnesses including, but not limited to, Joseph Pettola; and

---

[14] While the motion is denied as moot, the Court notes that it is skeptical such evidence would pass the Rule 403 balancing test.  The testimony has low probative value in light of the multiple exonerations already in evidence.  And any minimal probative value is substantially outweighed by a danger of misleading the jury, given that it is undisputed that many of the exonerations Cain referenced were not the result of the New Haven Police Department's conduct.

- Testimony from Michael Dearington regarding his current opinions about Detective Raucci as a person and/or as an officer, as well as any testimony about, references to, or discussion of Dearington's in-court statements made during Plaintiff's sentence modification hearing about Raucci based on hindsight and/or any alleged newly discovered information learned after plaintiff's 1994 conviction should be precluded.

ECF No. 274-1 at 3. Defendant Raucci's motion is granted in part and denied in part.

### a. Donna (Raucci) Desai

First, Defendant Raucci argues that *all* testimony from his ex-wife should be precluded as it serves little probative value for Raucci's behavior and actions from 1990–1991, and poses a danger of unfair prejudice by presenting the jury with evidence of his drug use and dealing and allegations of domestic violation against his ex-wife. ECF No. 274-1 at 5–7. The Court takes Defendant's enumerated examples of her testimony one at a time.

First, as a general matter, Desai's testimony about Raucci's alleged physical abuse of her and the lack of NHPD response when she reported it has low probative value as to the issues in this case; and any probative value is substantially outweighed by its risk of unfair prejudice. Plaintiff counters that this evidence is relevant to show the NHPD's "blue wall of silence" and provide circumstantial evidence of the City's failure to discipline its officers. Pl.'s Opp'n, ECF No. 321 at 2. But Raucci's alleged domestic violence is not connected to his on-the-job performance as a police officer, which is what this case concerns, and the circumstances under which unidentified NHPD officers who responded to Desai's calls failed to react to them are highly unclear. Even if this evidence were relevant, it carries low probative value given it does not speak to any of Raucci's professional activity, and carries with it a substantial risk of unfair prejudice to him as it "could unduly inflame the passion of the jury," on the delicate subject of domestic abuse. *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006).

But Desai's particular testimony that Defendant Sweeney was the officer called to respond to one of her calls about Raucci's alleged domestic violence incidents—after which no corrective action was taken—is relevant and its relatively higher probative value is not substantially outweighed by a risk of unfair prejudice.  Sweeney's direct knowledge of Raucci's alleged domestic violence and alleged failure to discipline him goes towards the NHPD's "blue wall of silence" and the City's failure to discipline its officers.  Pl.'s Opp'n, ECF No. 321 at 2.  While domestic violence is without question a sensitive topic not to be introduced to the jury lightly, the probative value of Sweeney's knowledge of Raucci's alleged domestic violence and failure to discipline Raucci is not substantially outweighed by a risk of unfair prejudice or confusion of the jury.  In sum, Desai's testimony on Raucci's domestic abuse will be precluded except as to her testimony concerning Sweeney's response to her report of domestic violence allegedly perpetrated by Raucci.[15]

Plaintiff also seeks to introduce Desai's testimony that she witnessed Raucci use cocaine multiple times "starting in 1990," as well as his indulgence in luxuries and access to large sums of money around this time, providing circumstantial evidence of Raucci's involvement with the drug trade.  Pl.'s Opp'n, ECF No. 321 at 3.  Unlike with Desai's testimony about Raucci's domestic violence, her testimony about Raucci's indulgence in luxuries and access to inexplicable sums of money goes towards multiple theories of liability, providing circumstantial evidence of his involvement in drug dealing.  *See U.S. v. Ross*, 151 F.4th 487, 500 (3d Cir. 2025) ("expensive items lacking a verified, legitimate explanation can be used as circumstantial evidence of drug

---

[15] On April 22, 2026, Raucci filed supplemental briefing in which he seeks to preclude testimony regarding a past consensual intimate relationship between Raucci and a woman who was involved in a domestic violence incident investigated by the NHPD.  *See* Raucci Supp. Br., ECF No.  373 at 4.  If Plaintiff seeks to introduce evidence concerning this issue during trial, he shall raise it with the Court outside the presence of the jury, so that the Court may determine its admissibility.

dealing"). This testimony is also circumstantial evidence of Raucci's motive to frame Plaintiff for the Turner-Fields homicides, insofar as it relates to Raucci's involvement with cocaine, and his alleged ability to engage in brazen illegal conduct as a NHPD officer with no apparent fears of repercussion. Likewise, Raucci's alleged drug use during the period when he was investigating Plaintiff is relevant to Plaintiff's theory that Raucci had access to cocaine because he was associated with drug dealers in New Haven, leading to motive to frame Plaintiff and Lewis for the murders. It is also relevant to Raucci's credibility, insofar as he is expected to testify that he never used drugs. Further, the probative value of this evidence is not substantially outweighed by a risk of *unfair* prejudice, as it directly relates to Plaintiff's theories of liability.

Finally, Desai is anticipated to testify about a meeting between Pastore and Desai's father—a colleague of Pastore's—at which Desai was present, concerning Pastore telling Raucci to "stay out of certain areas" and Raucci failing to heed that advice. *See* Desai Mar. 1, 2023, Dep. Tr., ECF No. 147-29 at 28. Testimony of this meeting is relevant to, and probative of, Plaintiff's *Monell* theories, including failure to discipline and supervise. The risk of unfair prejudice is low. Thus, Desai will be permitted to testify about this meeting.

Finally, the City seeks to introduce Exhibit No. 527, which contains an audio recording purportedly of Desai, in which the other party to the phone call asks Desai if she can obtain cocaine. In the call, Desai references "V," which may be a reference to Vincent Raucci. Desai also says that she has a couple people she could ask for cocaine who could procure it on short notice. The Court requires a further articulation of the relevance of this exhibit and any potential Rule 403 concerns before it can rule on its admissibility. The City must raise this issue outside of the presence of the jury before it seeks admission of this exhibit.

Accordingly, Raucci's request to exclude all testimony by Desai is denied, but his request to exclude testimony of *general* domestic violence calls from Desai concerning him is granted. Desai will be permitted to testify to the topics discussed above.

### b. Patricia Roberts

Next, Raucci seeks to preclude all testimony from Patricia Roberts, a now-deceased witness who testified at a deposition concerning Raucci's drug use and drug dealing activities, as irrelevant and unfairly prejudicial. ECF No. 274-1 at 7–8. Raucci's motion is denied.

Plaintiff seeks to rely on Roberts' testimony to demonstrate Raucci's association with Frank Parise, which is in turn relevant to Plaintiff's theory of Raucci's motive for allegedly framing Plaintiff and Lewis, and Raucci's involvement in drug use and drug dealing activities generally, including at an address on Clay Street relevant to the investigation at issue. ECF No. 321 at 5–6. While Roberts testified that she believes she first met Raucci in 1995, this evidence still has relevance, as Plaintiff argues that Raucci has denied *ever* being involved with cocaine, meaning evidence of his drug use (and drug dealing) at *any* time is relevant to challenge this assertion. ECF No. 274-1 at 7. Moreover, the apparent facility that Raucci had with cocaine use and distribution in 1995 is probative of whether he had such facility a few years earlier, while Plaintiff was being investigated and prosecuted. Finally, Roberts' testimony concerning Raucci allegedly protecting drug dealers in 1995 is relevant circumstantial evidence for Plaintiff's theory that Raucci was engaged in similar activity during the investigation and prosecution of Plaintiff just a few years earlier. The probative value of Roberts' testimony as to these issues is not outweighed by any unduly prejudicial impact on Raucci. Accordingly, Raucci's motion is denied as to Roberts' testimony.

c. Francisco Ortiz, Jeff Rochler, Melvin Wearing, & Nicholas Pastore

The Court will consider whether certain designated transcript testimony from witnesses Francisco Ortiz, Jeff Rochler, Melvin Wearing, and Nicholas Pastore should be excluded as part of its rulings on deposition designations and the City's Rule 804 arguments concerning former testimony.

d. Michael Dearington

Next, Raucci argues that statements of Michael Dearington, the State's Attorney who appeared at Plaintiff's sentence modification hearing in 2015 to explain the State's reasoning behind Plaintiff's sentencing modification, should be excluded as they "cast Detective Raucci in a negative light and reiterate[] unsubstantiated subjective beliefs about Raucci's investigatory conduct and general reputation as an officer," and the statement was not made at the time of Plaintiff's prosecution. ECF No. 274-1 at 9–10. The Court earlier found that evidence of Plaintiff's post-conviction relief is relevant to attempt to demonstrate innocence. Dearington's statements are simply another type of evidence Plaintiff may rely on to do so.

Further, Plaintiff makes clear that he does not seek to introduce Dearington's statements for any purpose other than to demonstrate that Plaintiff's sentence modification was due to his innocence, not a mere technicality. ECF No. 321 at 8. Nor does the fact that these statements were made post-conviction impact their relevance, for the same reason Plaintiff's other post-conviction evidence of his innocence is relevant. Finally, the Court is confident that any risk of inadvertent prejudice to Raucci through Dearington's testimony can be mitigated with a well-tailored jury charge that it may not consider Dearington's statement for any other purpose than to establish the reason the State offered for Plaintiff's sentence modification. If Plaintiff seeks to

offer this statement for its truth, he must articulate an exception to the hearsay rule before doing so. Accordingly, Raucci's motion is denied insofar as it seeks to preclude Dearington's statements.

e. Joseph Pettola

Finally, the Court denies Raucci's motion to preclude testimony from Joseph Pettola providing first-hand observation of Raucci's alleged planting of a bag of white powder at a crime scene in the 1980s, and also as to Pettola's opinion that Raucci is untrustworthy, to the extent he rendered such an opinion. ECF No. 274-1 at 10–14.

Following the Pretrial Conference, Plaintiff submitted supplemental opposition to Raucci's motion, further arguing in favor of inclusion of Pettola's firsthand observations and opinion testimony. Pl.'s Supp. Opp'n, ECF No. 365. Defendant Raucci filed an opposition. Raucci Supp. Reply, ECF No. 373.

First, Pettola's observation of Raucci offering to plant evidence at a crime scene—which is undoubtedly based on his personal knowledge—is relevant as to the NHPD's "blue wall of silence," for Plaintiff's *Monell* claim, because Plaintiff has apparently elicited deposition testimony that Pettola did not report Raucci's suggestion to plant suspected cocaine at a crime scene out of fear that such a report would negatively impact Pettola's own career within the NHPD. While Plaintiff cannot establish when the alleged event occurred beyond sometime in the "mid-1980s," evidence of a "blue wall of silence" where the reporting of illegal behavior of fellow officers would negatively impact an officer's career that predates Plaintiff's arrest is circumstantial evidence that such practice would continue to exist at the time of Plaintiff's arrest in 1992. ECF No. 321 at 11. Additionally, the incident is relevant to Plaintiff's individual liability claims against Raucci, as it tends to show that (a) Raucci had access to suspected cocaine, which is relevant for the reasons described elsewhere in this ruling; and (b) he may have had a belief that he could fabricate evidence without fear of repercussion or even a report to supervisors within the police

37

department.    Further, given Raucci's purported wholesale denial of any use of or dealing in cocaine, evidence from the mid-1980s on this issue is nevertheless relevant to his credibility. Raucci's supplemental briefing on this issue argues that, because Pettola identified the substance at issue only as white powder, and not definitively cocaine, the jury would be left to speculate about the nature of the substance.  ECF No. 373 at 2.  This is a matter that goes to the weight of the anticipated testimony, but it is not a reason to preclude the evidence altogether.  The Court is not convinced that Pettola's testimony is so speculative as to render its probative value substantially outweighed by an *unfair* risk of prejudice.  Thus, Raucci's motion is denied as to this testimony, though the parties shall propose a limiting instruction with respect to non-propensity uses of this incident against him on Plaintiff's individual claims.

Raucci's motion is also denied as to Pettola's opinion testimony that Raucci is untrustworthy, to the extent he will offer such an opinion.[16]  Pursuant to FRE 608(a), a witness's "credibility may be attacked . . . by testimony about the witness's reputation for having a character for . . . untruthfulness, or by testimony in the form of an opinion about that character."  Pettola's testimony that Raucci—his fellow NHPD officer—is untrustworthy is textbook Rule 608 evidence as Pettola's opinion about Raucci's character for truthfulness, assuming this is indeed the way Plaintiff seeks to use this evidence.  ECF No. 321 at 10.

While Raucci also argues that Pettola's testimony would be impermissible as lay testimony under FRE 701, the argument is unpersuasive.  Witnesses who are not testifying as experts may give "testimony in the form of an opinion" that is "rationally based on the witness's perception," and "not based on scientific, technical, or other specialized knowledge."  Fed. R. Evid. 701(a), (c). "Lay opinion testimony 'amounts to little more than a shorthand rendition of facts that the witness

---

[16] Plaintiff notes that Pettola did not previously testify that Raucci was untrustworthy, though Sweeney may have. ECF No. 321 at 10 n.5.  If Sweeney in fact offers this testimony, it would be admissible for the same reasons.

personally perceived,' and that the 'witness's personal perception [is] a fundamental prerequisite to admissibility' under Rule 701." *Munoz v. U.S.*, No. 7-CV-2080 (ILG), 2008 WL 2942861, at *16 (E.D.N.Y. July 28, 2008) (quoting 4 *Weinstein's Federal Evidence* § 701.03[1] (2d ed. 2008)). Raucci has not clarified how Pettola's opinion was shaped or formed by his specialized knowledge as a police officer, or other technical knowledge as opposed his own general observations and perception of Raucci's character. Accordingly, Raucci's motion is also denied as to his FRE 701 exclusion argument.

### *16. ECF No. 275*

Pursuant to FRE 401, 402, 403, 404, 801, and 802, Raucci seeks to preclude the admission of evidence, documents, testimony, argument or comment related to: (1) any criminal investigations or prosecutions against him; (2) any misconduct investigations and subsequent discipline against him, including the 1996 FBI investigation; (3) an alleged affiliation with Frank Parise for purposes of carrying out drug operations and framing Plaintiff and Scott Lewis for murder; and (4) references to Raucci as a "bad" "corrupt" or "dirty" cop. ECF No. 275-1 at 1. Raucci's motion is granted in part, denied in part, and deferred in part.

### a. New Mexico Testimony

First, Plaintiff seeks to introduce portions of Raucci's 2025 New Mexico trial testimony. Pl.'s Opp'n, ECF No. 316 at 4. Plaintiff seeks to use this evidence to speak to the manner of Raucci's departure from the NHPD, as well as the existence and nature of Raucci's drug use, which goes towards both Plaintiff's *Monell* theories of liability as well as circumstantial evidence of Raucci's motive and opportunity to frame Plaintiff. *Id.* Upon a review of the transcript, however, the probative value of Raucci's testimony is low. Raucci's discussion of drug use and his pension is minimal, and he claims that he "didn't condone" drug use and that if he "saw it, [he] would stop it." Raucci N.M. Testimony, Pl.'s Ex. 120 at 19. Further, any discussion by Raucci of his pension

or the circumstances under which he left the police department is unnecessarily cumulative of Plaintiff's other evidence on the matter. Even assuming that Plaintiff could present the testimony in a way that would not describe the context of the New Mexico criminal proceedings, the topics referred to could still lead a jury to infer that Raucci had recently been involved in a proceeding concerning his involvement in drugs, which is at issue here. Accordingly, given the low probative value and risk of unfair prejudice with this testimony, Raucci's motion is granted.

b. Internal Affairs, Disciplinary, and FBI Investigations

Next as to the evidence related to the internal affairs, disciplinary, and FBI investigations launched into Raucci, Raucci's motion is granted in part and deferred in part.

First, Raucci argues that the FBI report, and testimony about the FBI investigation, is inadmissible under FRE 403 and 404 as evidence of "other crimes, wrongs, or acts" for the purpose of proving "the character of a person in order to show action in conformity therewith," and for being unfairly prejudicial. With respect to testimony about the *existence* of the investigation— including that it was opened after Lewis contacted the FBI and concerned both Raucci's activities with respect to Lewis's and Plaintiff's prosecutions for the Turner-Fields homicides and his alleged involvement in drug distribution—the Court finds that this testimony is highly relevant to Plaintiff's individual claims against Raucci and to his *Monell* claims, insofar as a former FBI agent is expected to testify that she notified certain persons within the NHPD of the existence of the investigation (regardless of whether the NHPD received a copy of the full report).

With respect to the admissibility of the entire FBI report, Plaintiff maintained at the Pretrial Conference the FBI file was given to the NHPD in full, making the evidence powerful notice-based evidence for Plaintiff's *Monell* claim (if accurate). On April 22, 2026, Plaintiff filed a notice asserting the record was in fact "ambiguous as to whether and when the NHPD received a full copy of the FBI report." Pl.'s FBI Notice, ECF No. 384 at 1. The record reflects that while NHPD

40

officers and senior leadership were aware of the FBI report and the investigation broadly, there is no concrete evidence that any "relevant high-level members of the NHPD ever acknowledged having personally seen or reviewed the FBI report." *Id.* at 2. At most, FBI agent Brian Donnelly testified that he *thought* NHPD had gotten a copy of the report. *Id.* at 1. On this record, the Court cannot conclude that the NHPD received a full copy of the FBI report so as to constitute notice evidence rather than hearsay.

But, the report may be introduced by other means. Following the Pretrial Conference, the Court also ordered the parties to submit supplemental briefing on whether the FBI constitutes a "public office," and whether then the FBI report could also be admitted as the record of a public office under FRE 803(8)(A)(ii) as an exception to hearsay. ECF No. 366; *see* Pl.'s Resp., ECF No. 384. The "findings of an agency" are admissible pursuant to FRE 803(8)(A)(iii) as "factual findings from a legally authorized investigation," by a public office. *Cortes v. MTA New York City Transit*, 802 F.3d 226, 232 (2d Cir. 2015). Courts within the Second Circuit have found that FBI reports are included within FRE 803(8)'s public records exception. *See e.g.*, *Bradford Tr. Co. of Bos. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 805 F.2d 49, 54 (2d Cir. 1986) (under a previous version of FRE 803, stating that FBI reports are admissible under the public records exception to hearsay); *Picard v. Sage Realty*, No. 20-CV-10109 (JFK), 2021 WL 6052422, at *3 (S.D.N.Y. Dec. 21, 2021) ("FBI 302 reports may be admissible as an exception to the hearsay rule [] as … a public record under Fed. R. Evid. 803(8)"); *Spanierman Gallery, Profit Sharing Plan v. Merritt*, No. 00-CV-5712 (LTS) (THK), 2003 WL 22909160, at *3 (S.D.N.Y. Dec. 9, 2003) ("[a]s is true for police reports, FBI reports are admissible in evidence as . . . public records" (citations omitted)). They may also be admissible under the business records exception. *Spanierman*

41

*Gallery, Profit Sharing Plan*, 2003 WL 22909160, at *3. The City's concurrent response to the Court's order similarly recognizes this. City Reply, ECF No. 387 at 1–2.

Accordingly, these exceptions to hearsay form a basis for admitting at least portions of the FBI report. But, as Plaintiff and the City both recognize, any such portions of the FBI report are admissible "to the extent they either do not contain hearsay statements or that any internal out-of-court statements are subject to a hearsay objection." ECF No. 384 at 4; ECF No. 387 at 1–2. Accordingly, the Court shall rule on any individual section of the FBI report as it is presented at trial, taking into consideration the content of any such section and the theory of relevance it is being presented under. The Court thus defers ruling on this portion of Defendant Raucci's motion.

### c. Association with Parise

Next, evidence and testimony of Raucci's association with Parise is admissible. One of Plaintiff's theories as to why he and Lewis were prosecuted for the Turner-Fields homicides is that Lewis owed a drug debt to Parise, with whom Raucci was connected, and Raucci implicated Plaintiff and Lewis in the murders to assist Parise. Pl.'s Opp'n, 316 at 12. Accordingly, evidence or testimony of Raucci's association with Parise has probative value to support a motive or intent on Raucci's part to pursue Plaintiff's (and Lewis's) prosecution. Plaintiff's express purpose for seeking the introduction of this evidence is to demonstrate that Raucci had motive and opportunity to frame Plaintiff for the Turner-Fields homicides, not any impermissible propensity evidence. Accordingly, the probative value of such evidence, when used for such purpose, is not outweighed by an unfair risk of prejudice, especially with the implementation of limiting jury instructions. Raucci's motion, therefore, is denied as to this request.

### d. Corrupt, Dirty, Bad Cop Language

Finally, the Court denies Raucci's motion to the extent he seeks to exclude use of words referring to him as "corrupt," "dirty," or "bad" from the record. These terms, as they appear in the

record, reflect the opinions and thoughts of the individuals who uttered the statements. Further, to the extent these phrases appear as part of counsel's questions, they are not considered evidence. *See Joiner*, 2009 WL 10713596 at *3 n.2. These phrases are part and parcel of the facts and investigations here and the risk of unfair prejudice from their mere appearance in testimony or statements is not high, especially when they appear in counsel's questions.

The Court will address any hearsay objections related the parties' exhibit submissions separately from this ruling.

Thus, Raucci's motion is granted in part, denied in part, and deferred in part.

### 17. ECF No. 276

Pursuant to FRE 401, 402, 403, 404, 801, and 802 Raucci moves to preclude the admission of evidence, documents, testimony, argument or comment surrounding his separation and retirement from NHPD employment in 1996 and his eligibility for and receipt of a pension. ECF No. 276-1 at 1. His motion is denied.

First, evidence surrounding Raucci's retirement and retirement with a pension is relevant to Plaintiff's theories of *Monell* liability and goes towards demonstrating a refusal to discipline, correct, or recognize officer misconduct on the part of the City. The fact that Raucci's retirement post-dates the Turner-Fields homicides is not dispositive, as the evidence speaks to the City's and Pastore's alleged indifference to officer misconduct, offering circumstantial evidence for Plaintiff's theories of *Monell* liability at the time of his arrest and prosecution. *See Morant*, 2025 WL 2821260 at *29. Nor is the evidence unfairly prejudicial to Raucci, as used to support Plaintiff's *Monell* claim against the City.

But the Court does not find this evidence relevant as to Plaintiff's individual claims against Raucci. None of Plaintiff's individual claims against Raucci would be supported by evidence pertaining to Raucci's departure or entitlement to a pension. To the extent such evidence could be

relevant, its probative value would nevertheless be outweighed by risk of unfair prejudice by distracting the jury with questions about Raucci's departure, as opposed to his conduct during the investigation into the Turner-Fields homicides. Accordingly, the Court will issue a limiting instruction to the jury to curb this risk, instructing them to consider evidence, documents, testimony, argument or comment surrounding Raucci's separation and retirement from the NHPD and his entitlement to a pension solely for the purpose of Plaintiff's *Monell* claim.

Finally, the Court will address any hearsay objections related the parties' exhibit submissions with the Joint Trial Memorandum separately from this ruling. The Court otherwise denies Raucci's motion.

### 18. ECF No. 277

Pursuant to FRE 401, 402, 403, 801 and 802, Raucci moves to preclude the introduction of evidence concerning alleged misconduct in unrelated prosecutions for purposes of establishing liability against individual defendants; or, alternatively, (2) requiring a clear, contemporaneous, and repeated limiting instruction directing the jury that such evidence may be considered solely in connection with Plaintiff's *Monell* claim against the City, and not in determining whether any individual Defendant, including Detective Raucci, violated Plaintiff's constitutional rights. ECF No. 277-1 at 1.

The Court grants Raucci's motion in part. The Court will instruct the jury that examples of other NHPD investigations not involving the individual Defendants should be considered only as evidence against the City on Plaintiff's *Monell* claims.

To the extent the Court admits conduct from other investigations involving the individual Defendants themselves for a non-propensity purpose under Rule 404(b), the Court intends to instruct the jury as to the permissible purpose(s) for consideration of such evidence. *See* Fed. R. Evid. 404(b)(1); *McKoy v. County of Suffolk*, No. 14-CV-249 (JMW), 2025 WL 552610, at *4

44

(E.D.N.Y. Feb. 18, 2025) (noting the "curative power of jury instructions and limiting instructions," which work to "effectively minimize[]" any concerns about unfair prejudice). At least some of Plaintiff's proposed evidence of individual Defendant's misconduct in other cases will likely be admissible under FRE 404(b)(2) for the permissible purpose of "proving motive, opportunity, [and] intent." Where this misconduct is being shown for a permissible 404(b)(2) reason, "it makes no difference whether the acts occurred before or after the events at issue." *Lombardo v. Stone,* No. 99 Civ. 4603 (SAS), 2002 WL 113913, at *6 (S.D.N.Y. Jan. 29, 2002). This misconduct is further relevant as to the individual Defendants because "the defendant's intent is a relevant element of the constitutional tort" in section 1983 claims and thus evidence of a repeated pattern and absence of a mistake is relevant and permissible on the question of intent. *Id.*; *Ismail v. Cohen,* 899 F.2d 183, 188 (2d Cir.1990) ("the district court set forth several legitimate reasons for the admission of the . . . evidence (pattern, intent, absence of mistake, etc.)"). Nor would such evidence be unfairly prejudicial under Rule 403 with an appropriately tailored limiting instruction, as the Court intends to issue. Accordingly, Raucci's motion is denied without prejudice to renewal based on the specific evidence, individual Defendant, and context being argued at trial.

The Court does not adopt the proposed limiting instruction in Raucci's motion as it impermissibly seeks to restrict use of this evidence to solely Plaintiff's *Monell* claim. *See* ECF No. 277-1 at 6. At trial, the parties may propose an appropriate jury instruction.

Finally, Raucci argues that to the extent Plaintiff seeks to introduce "judicial findings, transcripts, complaints, or media accounts from unrelated prosecutions," these should be excluded as hearsay. ECF No. 277-1 at 7. Raucci, as the party moving for relief *in limine*, does not carry his burden to demonstrate exclusion of entire swaths of evidence with a two-paragraph conclusory

argument, citing no caselaw and only the barebones rules.  *See Pugh*, 162 F. Supp. 3d at 101 (moving party bears the burden to demonstrate that "the evidence is not admissible for any purpose").  For this reason alone, Raucci's motion would be denied.  But the motion fails as well on its merits.  Plaintiff has identified a number of examples that fall into each of Raucci's enumerated categories, which the Court takes in turn.

### a.   Judicial Findings

First, as discussed above, courts routinely take judicial notice of judgments and filings in state or other court proceedings.  *See VDARE Found., Inc.*, 162 F.4th at 83.  At the Pretrial Conference, the Court directed the parties to confer with respect to which portions of prior judicial rulings they seek to admit (in light of the Court's ruling above concerning judicial notice of prior events), and in what form the evidence would be presented.  Accordingly, Raucci's motion is denied without prejudice to renewal, after the parties confer on this issue.

### b.   Transcripts

Plaintiff indicated that should his motion *in limine* at ECF No. 273 be granted, he will not seek to introduce "transcripts of witnesses who testified in proceedings before the date of Plaintiff's wrongful conviction."  Pl.'s Opp'n, ECF No. 322 at 9.  As the Court has granted Plaintiff's motion at ECF No. 273 subject to a limiting instruction, Raucci's motion is denied as moot as to transcripts.

### c.   Media Accounts

Finally, Plaintiff seeks to introduce media reports that by his account all either constitute statements of a party opponent, pre-date Plaintiff's conviction and thus serve as non-hearsay notice evidence for Plaintiff's *Monell* claim, or predate January 1, 1998, and thus are considered ancient documents pursuant to FRE 803(16).  ECF No. 322 at 10.  The Court will address this portion of Raucci's motion in connection with the objections to the parties' proposed exhibits.

D.  Deposition Designations

On April 22, 2026, Plaintiff filed a notice of amended transcript designations.  Pl.'s Not., ECF No. 377 at 1–4.  Attached to the notice are copies of the re-designated transcripts for:  Robert Lawlor's June 23, 2025, deposition; Nicholas Pastore's January 16, 2024, deposition (Volume One); and Nicholas Pastore's January 24, 2024, deposition (Volume Two).  *Id.*  Plaintiff no longer seeks to designate Defendant Lawlor's testimony from Scott Lewis' federal habeas proceeding or from Plaintiff's proceeding on his new trial petition.  *Id.*  With these changes in mind, the Court rules as follows.

1. *Lawlor Testimony*

The Court has reviewed the designations for Lawlor's prior testimony and his deposition transcript, and rules as follows.

**Deposition (ECF No. 293-3, as modified by ECF No. 377-2):**  The Court accepts all of Plaintiff's designations and accepts Defendants' counter-designations except the following page numbers and lines:  13:8-14; 15:3–5; 20:25–21:2; 27:4; 27:22–29:9; 36:7–37:3; 96:25–97:1

2. *Pastore Testimony*

The Court has reviewed the designations for Pastore's deposition transcripts, and rules as follows:

**Deposition Volume 1 (ECF No. 293-4, as modified by ECF No. 377-3):**  The Court accepts Plaintiff's designations except the following page numbers and lines:  150:15–151:15, subject to the Court's ruling on the admissibility of the New York Times article discussed; 152:2–24, subject to the Court's ruling on the admissibility of the New York Times article discussed; 154:15-156:20; 163:1–163:25, subject to the Court's ruling on the admissibility of the New York Times article discussed.

The Court accepts Defendants' counter-designations except the following page numbers and lines:  7:20–8:13; 16:25–18:1; 18:19-20; 20:4-24: 23:15–24:6; 38:16–42:17; 58:2-19; 69:25–71:17; 74:25–75:12; 75:21–77:7; 77:18–78:16; 85:21–89:18; 92:1–92:10; 104:15–107:3; 111:13–113:9; 115:19–118:24; 124:9–125:25 (through the sentence "So that's a good point though."); 128:23–129:5; 149:23–150:14.

**Deposition Volume II (ECF No. 293-5, as modified by ECF No. 377-4):**  The Court accepts Plaintiff's designations except the following page numbers and lines:  281:13–282:11.

The Court accepts Defendants' counter-designations except the following page numbers and lines:   176:23–178:5;  180:16–182:9;  191:21–192:3;  201:21–202:17;  203:13-21;  207:22–209:20;  212:19-25;  216:16-20;  219:23–227:7;  235:16–236:3;  240:22–246:14;  247:6–250:12; 251:5–253:5;  258:12-16;  261:10–267:18;  268:8–273:3;  279:12-21;  281:2-11;  281:13–282:11; 293:17–294:3.

As to all of these deposition transcripts, Defendants remain free to reduce the number of lines they wish to read, particularly in light of Plaintiff's amended designations.

## IV.    CONCLUSION

The Court's decisions as to each of the motions *in limine* are described above.

**SO ORDERED** at Hartford, Connecticut, this 23rd day of April, 2026.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE