**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| STEFON MORANT, | ) | 3:22-CV-630 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF NEW HAVEN et al., | ) | |
| *Defendants*. | ) | May 4, 2026 |

### <u>SUPPLEMENTAL RULING AND ORDER ON PLAINTIFF'S MOTION IN LIMINE</u>

Sarala V. Nagala, United States District Judge.

On April 23, 2026, the Court issued a ruling on the parties' motions *in limine*. *Morant v. City of New Haven et al.*, No. 3:22-CV-630 (SVN), 2026 WL 1108118 (D. Conn. Apr. 23, 2026) ("MIL Ruling"); ECF No. 393. As part of that ruling, the Court deferred in part ruling on Plaintiff's motion *in limine* at ECF No. 290 with respect to the admissibility of the designations of prior testimony of certain unavailable non-party witnesses as an exception to hearsay pursuant to Federal Rule of Evidence 804(b). MIL Ruling at *11.[1] On April 30, 2026, the Court precluded the former trial testimony of Anthony Stevenson in Adam Carmon's criminal trial. *See* Order, ECF No. 423, *Morant*, 2026 WL 1180105 (D. Conn. Apr. 30, 2026) ("Stevenson Ruling").

The Court issues this ruling, supplementing the Stevenson Ruling and the MIL Ruling, concerning Plaintiff's proffered former testimony for: (1) Diane Basilicato from *Morant v. Commissioner of Correction* (Jan. 25, 2007) and *State v. Morant* (May 27, 1994); (2) Hector Ortiz

---

[1] The Court notes for the record the transfigured nature of Plaintiff's motion *in limine* at ECF No. 290. Initially, the motion sought to preclude Defendants' counter-designations as "indiscriminate" and overly broad, in violation of the Court's Joint Trial Memorandum instructions. ECF No. 290 at 1. Opposing the motion, the City nipped the indiscriminate counter-designation issue in the bud by arguing that "none of the witnesses' testimony raised in plaintiff's motion is admissible," mooting the question of counter-designations. City Opp'n, ECF No. 315 at 1. The dispute over ECF No. 290 has since predominantly proceeded along the question of admissibility of the former testimony, though the Court addresses designation disputes where it has decided that the former testimony is admissible.

from *Morant v. State* (Oct. 27, 1999) and *Morant v. State* (October 28, 1999); (3) Carol Cheek from *State v. Streater* (July 31, 1991); (4) Doreen Stiles from *Gould et al. v. Warden* (August 3, 2009); and (5) Francisco Ortiz from *Lewis v. Commissioner of Correction* (June 4, 2013).[2]

The Court holds that the proffered testimony of Diane Basilicato and Hector Ortiz is admissible, but the proffered testimony from Carol Cheek and Doreen Stiles is not. The admissibility of the proffered testimony from Francisco Ortiz is moot in light of the parties' representations.

For the sake of brevity, the Court incorporates in full its discussion of Rule 804 and its application to the Stevenson testimony from its Stevenson Ruling. *See* Stevenson Ruling, 2026 WL 1180105 at *1–4. In brief, however: for former testimony to be admissible under Rule 804(b)(1), Plaintiff must show, by a preponderance of the evidence, that (1) the witness is unavailable; (2) the party against whom the testimony is offered is the same as in the prior proceeding or a predecessor in interest; and (3) that the party had the same motive and opportunity to examine the witness. *See Annunziata v. City of New York*, No. 06-CV-7637 (SAS), 2008 WL 2229903, at *7 (S.D.N.Y. May 28, 2008). In determining whether a party to a prior proceeding was a predecessor in interest, the second and third elements are not separate inquiries, but rather should be taken together. "[A]ll of the requirements of Rule 804(b)(1) must be met." *United States v. DiNapoli*, 8 F.3d 909, 912 (2d Cir. 1993) (*en banc*).

---

[2] On April 24, 2026, Plaintiff filed a notice of updated designation testimony. ECF No. 397. There, Plaintiff suggested that the Court "need not rule" on the proposed designation testimony of Leroy Dease, Rose Dell, Anthony DiLullo, Jeff Rochler, and Melvin Wearing, whose former testimony were also the subject to the City's opposition at ECF No. 315, as Plaintiff "*may* seek to offer the . . . testimony depending on the course of the trial," and the Court could rule at such time, if necessary. On April 27, 2026, Plaintiff provided a list of prior testimony designations he intends to introduce, which does not include prior testimony from Dease, Dell, or Rochler. ECF No. 410. As such, the Court does not rule on these sets of former testimony at this time. With respect to former testimony of DiLullo, on the morning of May 4, 2026, Plaintiff and the City indicated that they had reached agreement about the former testimony that will be introduced, which is limited to portions of DiLullo's testimony in *Golino v. City of New Haven*, where the City was a party. And with respect to Wearing, the testimony Plaintiff seeks to admit is likewise from litigation where the City was a party. Thus, the Court does not address the DiLullo or Wearing former testimony here.

## I.    DIANE BASILICATO TESTIMONY

First, the Court rules that Diane Basilicato's former testimony is admissible.

Plaintiff seeks to admit the testimony of Diane Basilicato, whose apartment abutted homicide victim Ricardo Turner's apartment, from both (1) Plaintiff's criminal trial, *State v. Morant* (May 27, 1994), Basilico Test. at Pl.'s Criminal Trial, ECF No. 293-24, and (2) Plaintiff's state habeas proceeding, *Morant v. Comm'r of Corr.* (Jan. 25, 2007), Basilicato Test. at Pl.'s Habeas Proceeding, ECF No. 293-23.  The City opposed the introduction of Basilicato's former testimony, arguing that her testimony is inadmissible hearsay not subject to Rule 804(b)'s exception for prior testimony of an unavailable witness; Defendants Raucci, Lawlor, and Maher have joined the City's opposition.  ECF Nos. 315, 320, and 326.

Basilicato's testimony from Plaintiff's criminal trial discussed how she heard a Hispanic man whistling "to get attention," followed by "five or six . . . bangs" on the night of the homicides sometime after 4:01 a.m. on October 11, 1990.  ECF No. 293-24 at 11, 18–19.  Plaintiff contends this tracks the later statement of a confidential informant that two men—who were not Plaintiff or Scott Lewis—were involved with the Turner-Fields homicides, whistling to each other as a signal just before gunshots were heard.  When she testified at Plaintiff's state habeas proceeding, Basilicato discussed those observations again, as well as her 2005 photo identification of one of the two people she believed, with reasonable certainty, had been the person she saw whistling the night of the Turner-Fields homicides.  ECF No. 293-23 at 15–21.

On April 27, 2026, the Court issued an order directing Plaintiff to submit further information on the relevance of Basilicato's testimony, particularly with respect to "the person Basilicato identified in the photo arrays she was shown at the East Haven Police Department in 2005."  ECF No. 409.  On May 1, 2026, Plaintiff clarified on the record that the person Basilicato

identified in 2005 was one of the Cardwell brothers (who had been suspects early in the Turner-Fields investigation).

Plaintiff represents that Basilicato lives in Oklahoma, outside of the subpoena power of the Court.[3]  *See* ECF No. 341 at 9.

A.  Basilicato's Testimony in Plaintiff's Criminal Trial

As stated on the record at trial on May 1, 2026, the City has withdrawn its FRE 804(b) objection with respect to Basilicato's prior criminal trial testimony, and no other Defendant voiced a continuing objection.  The testimony is admissible as against all Defendants.  The City did not raise a relevance objection in its opposition, but the Court nevertheless finds that her testimony is relevant.  As Plaintiff stated on the record, Basilicato's criminal trial testimony is being introduced for the purpose of establishing the time of the Turner-Fields homicides, which goes to the issue of Plaintiff's actual innocence since he claims to have been out of state when the homicides occurred. The City put Plaintiff's guilt or innocence at issue from the outset of the trial, at its opening statement.  Moreover, the state prosecutor in Plaintiff's criminal trial would have had the same incentive as Defendants here to develop her testimony regarding the time of the homicides in order to establish Plaintiff's guilt.  With respect to Basilicato's testimony regarding her observations of the people who were around her building at that time, the state prosecutor also would have been incentivized to develop these issues in her testimony, insofar they pertain to whether Scott Lewis, accompanied by Plaintiff, committed the homicides or not.

---

[3] As the Court noted in the Stevenson Ruling, at least one Second Circuit case suggests that the proponent of testimony for a purportedly unavailable witness who is outside of the subpoena power of the Court must also establish that the party was unable to obtain the witness's attendance by voluntary request.  *See* Stevenson Ruling, 2026 WL 1180105, at *2 (citing *United States v. Losada*, 674 F.2d 167, 172 (2d Cir. 1982)).  But as no Defendant contests Plaintiff's representation that Basilicato is unavailable, the Court finds that she is.

Basilicato's criminal trial testimony is admissible, subject to the following rulings as to the parties' proposed designations.  Plaintiff's designations are accepted, and his objections to Defendants' counter-designations are overruled, except as to the following page and lines:  537:6-12; 537:26-538:1; 538:12-14; 540:11–27; 541:24–25; 552:13–23.  These pages/lines are excluded as irrelevant, and their inclusion would waste the jurors' time.

B.  Basilicato's Testimony in Plaintiff's Habeas Proceeding

As to Basilicato's prior testimony in Plaintiff's state habeas proceeding, the Court finds it is admissible prior testimony under Rule 804(b)'s exception for the prior testimony of an unavailable witness.  Plaintiff has established that while none of the current Defendants were parties to Plaintiff's state habeas proceeding, the state there would have had a substantially similar motive and opportunity to examine Basilicato about her testimony, given Plaintiff raised actual innocence as one of the grounds for his state habeas petition.

The Court takes judicial notice of the fact that at Plaintiff's state habeas proceeding, he specifically raised arguments of "actual innocence" (as well as ineffective assistance of trial counsel, "a violation of the U.S. Supreme Court's decision in *Brady v. Maryland* and a due process violation because the state employed allegedly perjured testimony to convict him").  *Morant v. Comm'r of Corr.*, No. CV-020485200-S, 2007 WL 1893329, at *1 (Conn. Super. Ct. June 12, 2007).  Thus, Plaintiff squarely raised the same issue Defendants contest here with respect to Basilicato's prior testimony.  This means the state in Plaintiff's habeas proceeding would have had a substantially similar intensity of motivation as the Defendants do here to disprove the same side of a substantially similar issue:  actual innocence.  *See DiNapoli*, 8 F.3d at 914–15.  And Basilicato's testimony from Plaintiff's habeas proceeding goes to that issue, since she apparently identified a Cardwell brother as one of the people she testified was whistling signals outside the

apartment building the night of the murders.  Accordingly, Basilicato's former testimony at Plaintiff's state habeas proceeding is admissible as against all Defendants under FRE 804(b), subject to Plaintiff demonstrating, by stipulation or otherwise, that the person Basilicato identified in 2005 was one of the Cardwell brothers.

Basilicato's state habeas testimony is admissible subject to the following rulings as to the parties' proposed designations.  Plaintiff's designations are admissible except the following pages and line numbers: 46:2-6; 56:19–57:2.  Defendants' counter-designations are admissible except the following pages and line numbers:  31:24–32:13; 33:19-34:2; 39:6–15; 46:2–6; 56:19–57:2. These portions are excluded as irrelevant, and because they would waste the jurors' time.

## II.   HECTOR ORTIZ TESTIMONY

Next, the Court rules that Hector Ortiz's former testimony is admissible.

### A.   Factual Background

Defendant Raucci tape-recorded a witness statement provided by Hector Ortiz on February 2, 1991.  *See* City's Trial Ex. 508.  The statement was later transcribed.  *See* City's Trial Ex. 507. In this statement, Ortiz stated that he had known Morant for about five or six years and that Morant and Lewis were friends and sold drugs together from 149 Clay Street.  *Id.* at 2–3.  As part of the statement, Ortiz also positively identified both Lewis and Morant through photos, as well as an individual who used to work for the City of New Haven.  *Id.* at 4–5.  Ortiz stated that he had seen Lewis and the person who worked for the City driving together in a gray BMW vehicle.  *Id.* at 5– 7.  He further stated that "a lot of people say" that Lewis was homosexual.  *Id.* at 10.

On November 27, 1996, Ortiz was interviewed by the FBI in connection with its investigation into Raucci.  According to the report of that interview, Ortiz stated that Raucci asked him for a favor, in the form of giving a statement against Lewis.  *See* Pl.'s Trial Ex. 4 at 172.  Ortiz

6

reported to the FBI that the statement was recorded in Raucci's car and that he said "whatever Det. Raucci wanted him to say, even though it was not true." *Id.* He further stated that Raucci provided him the information for the statement and that the statement was coerced. *Id.* at 172–73. Ortiz noted that he had refused to testify at Lewis's criminal trial[4] and that he did not even know Plaintiff's last name until Raucci gave it to him. *Id.*

In connection with Plaintiff's petition for a new trial ("PNT"), Hector Ortiz testified before the Connecticut Superior Court over two days in October of 1999. *See* Ortiz Test. at PNT Hearing, ECF No. 293-21 & 293-22. In brief summary, he testified that: (a) he frequently consumed drugs with Defendant Raucci; (b) Raucci approached him about needing "help" on a matter, which turned out to be the Turner-Fields investigation, and Raucci showed him photos, including photos of Plaintiff and Lewis; and (c) the tape recording Raucci obtained from him on February 2, 1991, of a statement concerning Lewis and Plaintiff was started and stopped several times while it was recorded, so that Raucci could feed information and answers to Ortiz before he answered Raucci's questions. *See generally id.* Assistant State's Attorney Michael Dearington's cross-examination of Ortiz at the PNT consisted largely of questions related to Ortiz's credibility, including his sixteen prior felony convictions (including one for which he was then serving a sentence of incarceration in federal custody) and internal discrepancies within his testimony at the hearing. *See* ECF No. 293-22 at 17–54.

Plaintiff was unable to depose Ortiz in the current action because he was in a nursing home and unable to answer any questions due to his debilitated physical condition. *See* ECF No. 341 at 9. No Defendant has contested Ortiz's unavailability at trial.

---

[4] The Connecticut Appellate Court's opinion affirming the Superior Court's denial of Plaintiff's petition for a new trial states that Ortiz did not testify at *Plaintiff*'s criminal trial. *See Morant v. State*, 68 Conn. App. 137, 156 n.7 (2002).

B. <u>Discussion</u>

As described in the Stevenson Ruling, the Court must determine "whether the party resisting the offered testimony at a pending proceeding had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue." *DiNapoli*, 8 F.3d at 914–15. "The nature of the two proceedings—both what is at stake and the applicable burden of proof—and, to a lesser extent, the cross-examination at the prior proceeding—both what was undertaken and what was available but forgone—will be relevant though not conclusive on the ultimate issue of similarity of motive." *Id.* at 915.

The Court finds this to be a somewhat close question, but ultimately is persuaded that Attorney Dearington had an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue as Defendants in the present litigation. The relevant issue—present both in 1999 and in the present trial—is whether Ortiz's February 2, 1991, recorded statement was fabricated by Raucci. Defendants' only argument against the admissibility of Ortiz's 1999 testimony is that "[n]one of the defendants in this matter were parties to that proceeding, including the City." ECF No. 315 at 7. Of course, that is not the end of the inquiry under Rule 804.

In order to assess whether Attorney Dearington had an interest of substantially similar intensity to disprove Ortiz's 1999 allegations that the statement was fabricated, the Court must set in context Plaintiff's arguments in his PNT. The grounds for the PNT did not include actual innocence. Instead, the Connecticut Superior Court considered whether "newly discovered evidence as a result of the FBI investigation"—which presumably included Ortiz's interview with the FBI, *see* Pl.'s Trial Ex. 4 at 173–76—warranted a new trial. *See Morant v. State*, No. 398736, 2000 WL 804695, at *2 (Conn. Super. Ct. June 5, 2000). The Superior Court stated that the test

8

is whether "the availability of the new information would have led to a different result" in the underlying criminal trial. *Id.* at *3–4 (internal quotation omitted). Thus, the Court cannot agree with Plaintiff's broad characterization that the designations of Ortiz's testimony from the PNT hearing "*focus* on Plaintiff's guilt or innocence," ECF No. 341 at 9 (emphasis added), though the testimony may be relevant as to the overall integrity of the investigation and Raucci's investigative methods.

But in any event, Attorney Dearington was motivated to vigorously contest Ortiz's 1999 PNT testimony on the issue of Raucci's fabrication of the 1991 statement, to demonstrate that Ortiz's recantation of his 1991 statement was not newly-discovered evidence that would have changed the outcome of Plaintiff's criminal trial. In challenging this testimony, it is clear Attorney Dearington set out to paint Ortiz as not credible: he attempted to show that Ortiz's testimony that the statement was signed in Raucci's police car with only Ortiz and Raucci present was false, as it also bore the signature of Robert Lawlor and as Ortiz had told the FBI that he signed the statement at the police station, ECF No. 293-22 at 18–19, 44; he pointed to Ortiz's potential bias in wanting to help Plaintiff instead of telling the truth, *id.* at 19–20; he highlighted Ortiz's long criminal record, which included sixteen felonies, *id.* at 22–26; he attempted to show that Ortiz provided new information about Raucci giving him $100 and meeting at a different location that had never previously been shared with Plaintiff's defense attorney or the FBI, *id.* at 31, 36; he pointed out that Ortiz had never previously reported to law enforcement Raucci's alleged conduct, until Ortiz was questioned by the FBI in 1996 or 1997, and that Ortiz withheld certain other information about Raucci's conduct from the FBI, *id.* at 33–38; he cross-examined Ortiz about his allegation that he and Raucci met and worked on the tape statement somewhere between five and ten times, over a period of thirty days, *id.* at 42–51; and he highlighted an internal inconsistency in Ortiz's testimony

concerning whether he was shown photographs of only Plaintiff and Lewis, or also three women, *id.* at 51–54.  While the cross-examination is not conclusive on the issue of whether Attorney Dearington had a motive of substantially similar intensity to develop a substantially similar issue, *see DiNapoli*, 8 F.3d at 915, the Court finds it highly relevant here.  Attorney Dearington clearly tried to show that Ortiz's PNT testimony was a sham.[5]  The Defendants here have the exact same motive.

As the Court noted in the Stevenson Ruling, state prosecutors are not necessarily concerned with the interests of the individual officers who may ultimately become defendants in civil rights suits.  *See Pursley v. City of Rockford*, No. 3:18-CV-50040, 2024 WL 1050242, at *3 (N.D. Ill. Mar. 11, 2024) (state prosecutors work to "protect the public and secure a just result in the criminal prosecution," they do not "think and act as surrogate defense counsel for future civil rights lawsuits against officers who are not their clients.  (Put aside for the moment the complications presented when more than one police officer might face a future lawsuit.)" (quoting *Butler v. Indianapolis Metro. Police Dep't*, No. 07-CV-1103, 2009 WL 2092416, at *2 (S.D. Ind. July 13, 2009))).  Nor are state prosecutors tasked with anticipatorily defending a municipality against possible *Monell* liability for officer misconduct when they are prosecuting an underlying criminal matter.  But, in this particular factual scenario, Attorney Dearington's motivations were directly aligned with that of the Defendants in the present case:  he, like Defendants here, sought to fully discredit Ortiz's PNT testimony.  *See DiNapoli*, 8 F.3d at 914 (noting that the motive and opportunity inquiry is "fact specific" and not easily susceptible to a general rule).

---

[5] Ultimately, the Connecticut Superior Court agreed, noting that Ortiz's testimony was "wholly incredible": "Ortiz, a sentenced prisoner with a lengthy record of felony convictions, gave the distinct impression of making up his testimony as he went along." *Morant*, 2000 WL 804695, at *14.

Of course, Attorney Dearington's interests later diverged with Raucci's, as his statements at Plaintiff's 2015 sentence modification hearing blaming Raucci for misconduct in Ovil Ruiz's interview demonstrate: "I know your Honor is fully aware of the fact that at some point in time it was determined that the key witness in this case was not honest in his testimony with respect to both trials, *and it's public information that a certain police officer involved in this had put him up to contriving a story*." *See* Pl.'s Trial Ex. 47 at 3 (emphasis added). But at the relevant time— when Ortiz gave his PNT testimony in 1999—Attorney Dearington had a motive of substantially similar intensity to prove Ortiz was lying about Raucci's misconduct, just as Defendants do now.

Thus, Ortiz's PNT testimony is admissible. The Court believes, however, that it is important for the jury to hear the *entirety* of his testimony that has been designated, so that it can fully assess the weight of the testimony. Thus, all of Plaintiff's designations and all of Defendants' counter-designations are admissible. Plaintiff's counter-counter-designations of the entirety of pages 26 and 27 appearing in ECF No. 239-22 are also admissible, given that the Court has overruled Plaintiff's other objections.

## III.    CAROL CHEEK TESTIMONY

Next, the Court rules that Carol Cheek's proffered testimony is inadmissible.

In support of his *Monell* claim, Plaintiff seeks to admit the July 31, 1991, trial testimony of Carol Cheek, a now deceased witness for the state in *State of Connecticut v. Streater*. Cheek Test., ECF No. 293-6; ECF No. 341 at 5. While Cheek is an unavailable witness,[6] the Court finds her prior testimony is inadmissible hearsay.

---

[6] The parties do not dispute that Cheek is deceased and thus is an unavailable witness pursuant to FRE 804(a)(4). *See Zola v. Gordon*, No. 86-CV-4790, 1993 WL 247821, at *2 (E.D.N.Y. June 30, 1993) (finding deceased witness unavailable under FRE 804(a)(4) where no defendant challenged the plaintiffs' representation that the witness had passed away).

A.  Factual Background

At Troy Streater's criminal trial for the May 8, 1990, murder of Terrance Gamble, Cheek testified on direct examination that her prior sworn statement to Detective Anthony DiLullo on May 10, 1990, implicating Streater was not given "of [her] own free will without any fears, threats, or promises of favor."  ECF No. 293-6 at 12; *see also id.*  at 4–8.  On cross-examination, Streater's defense attorney, Attorney Dow, elicited testimony from Cheek that another detective, Joe Green, had also repeatedly pressured her for testimony that would support an arrest of Streater after she had indicated she did not want to speak with Green, and that Green had coached her on what answers to give, stopping and starting the interview tape until she answered as he desired.  *Id.* at 61–63.  On re-direct, state prosecutor Pepper challenged the aggression with which the officers pursued her testimony, established that Cheek had signed her prior statement, attesting to its accuracy, and attempted to establish if Cheek could remember the questions Detective Green asked her in her recorded statement, and how they compared to the answers she had just given at trial. *Id.* at 65–71.

B.  Discussion

Plaintiff has not demonstrated that Attorney Pepper had an interest of substantially similar intensity to examine whether Cheek's testimony that her sworn statement was coerced (or that any coercion was part of a general pattern and practice in the New Haven Police Department).

As with Anthony Stevenson's testimony, while issues of alleged police misconduct arose in Cheek's testimony—as they do in Plaintiff's case—her testimony was in the context of Troy Streater's criminal trial, where it was Streater's guilt or innocence that was at stake, not Plaintiff's. Plaintiff has not pointed to any caselaw where the former testimony of an unavailable witness,

12

taken in a wholly *separate* criminal defendant's trial, was deemed admissible under Rule 804(b) in a separate civil plaintiff's 42 U.S.C. § 1983 case.

Further, even if Attorney Pepper was on alert of potential civil rights violations by officers Green and DiLullo, those violations would not have been redressable in a criminal trial and Attorney Pepper would have had little to no incentive to act as "surrogate defense counsel for future civil rights lawsuits" against the City or any individual Defendant, who were not his clients. *Butler*, 2009 WL 2092416 at *2. Rather, Attorney Pepper would have been concerned with "protect[ing] the public and secur[ing] a just result in the criminal prosecution." *Id.* This means that Attorney Pepper would have had a strong incentive to mitigate Cheek's testimony, but solely in order to secure Streater's conviction—not to head off potential civil liability for the City.

And even assuming that Attorney Pepper *was* wearing a surrogate defense counsel hat, such duty would have extended at most to the individual officers Green and DiLullo; Attorney Pepper would have had little to no incentive to inquire or beat back allegations that the actions of Green or DiLullo were part of a general pattern or practice in the New Haven Police Department ("NHPD"), as this would be firmly outside the scope of establishing that Cheek's testimony was sufficiently reliable to secure Streater's conviction. This falls far short of the "similar intensity to prove (or disprove) the same side of a substantially similar issue," needed to deem Attorney Pepper to be Defendants' predecessor in interest for purposes of Rule 804(b). *DiNapoli*, 8 F.3d at 914–15. Any such question of civil liability would have been "only peripherally related to a different cause of action"—Streater's guilt or innocence—at his criminal trial. *DiNapoli*, 8 F.3d at 912.

Accordingly, for the foregoing reasons, Cheek's testimony is inadmissible hearsay not subject to Rule 804(b)'s exception.

13

IV.    **DOREEN STILES TESTIMONY**

Next, the Court finds Stiles's testimony is also inadmissible.

Plaintiff also seeks to introduce the August 3, 2009, testimony of Doreen Stiles from the state habeas proceeding for George M. Gould and Ronald Taylor, challenging their convictions for the July 4, 1993, murder of Eugenio Vega in connection with a store robbery. Plaintiff offers this former testimony in support of his *Monell* claim. While Stiles is an unavailable witness, the Court finds her prior testimony is inadmissible hearsay.

A.  Factual Background

At the 2009 habeas proceeding, Gould and Taylor's amended petition raised claims of ineffective assistance of counsel and actual innocence. *Gould v. Comm'r of Corr.*, 301 Conn. 544, 550 (2011). Stiles was a witness for Gould and Taylor, and she recounted the following facts. *See generally* Stiles Test., ECF No. 293-26. At the relevant time, Stiles was addicted to heroin and was working as a prostitute. On July 29, 1993, she was picked up by an undercover police office and taken to the police station, where she was pressured to give testimony against Gould and Taylor. *Id.* at 16–21. Stiles insisted multiple times that she was not at the scene of the crime on the day of the murder; but, as she was experiencing gradually worsening heroin withdrawal symptoms, NHPD Detective Brian Sullivan and Officer Danny Gleason promised they would "take [her] to buy something to get high with" if she admitted she was there and identified Gould and Taylor's photos from a suggestive photo identification process, which she did. *Id.* at 21–25. She testified that, after giving that statement, the officers did, in fact, take her after her interview to a place where she purchased heroin with $60 they had given her. *Id.* at 30–31. Additionally, the night before the probable cause hearing in Gould and Taylor's case, NHPD officers took Stiles and her boyfriend to eat dinner, gave her money to purchase heroin from her dealer, and put her in

14

a room at the Park Plaza hotel, at no expense to her. *Id.* at 43–58. They did not let her leave the hotel room. *Id.* at 56. Detective Sullivan also told her that he would try to vacate an open arrest warrant for Stiles on a failure to appear charge. *Id.* at 58.

On cross-examination, counsel for the state (Attorney Waddock) attempted to impeach Stiles' credibility by eliciting conflicting testimony as to when she had stopped using drugs and whether she had spoken with state's attorneys, establishing that she had had multiple opportunities at the trial proceedings to explain that her testimony was false but did not do so, and asking about the exact manner in which she was shown the photos of Gould and Taylor in the photo identification. *Id.* at 83–85, 88–94, 97–101. Counsel for the state did not cross-examine Stiles about her statements concerning being given money by NHPD officers to purchase heroin or about staying at the hotel the night before the probable cause hearing.

B. Discussion

Plaintiff represents that Stiles cannot be located "[d]espite extensive investigative efforts." ECF No. 341 at 10. Plaintiff does not specify what these efforts have entailed. Without further details about whether Stiles is outside of this Court's subpoena power, deceased, or otherwise unwilling to testify, it is difficult to determine whether Plaintiff has demonstrated unavailability under Rule 804(a). But, as Defendants do not actually contest unavailability, the Court finds that Stiles is an unavailable witness, satisfying the first step of the Rule 804(b) analysis.

The Court cannot conclude, however, that Attorney Waddock had a substantially similar intensity of motive to examine whether Stiles' recanted statements were the result of police misconduct (or whether such misconduct was part of a general pattern and practice in the NHPD). The issue Attorney Waddock was concerned with was minimizing or eliminating the impact Stiles' recantation had on the validity of the criminal trial conviction. The officers' alleged misconduct—

and any potential civil liability for them or the City as a result of such conduct—would be peripheral to the ultimate task of preserving the conviction against an actual innocence challenge, which was based on three sets of allegations:  "(1) there was evidence that was not produced at their criminal trial that would have cast doubt on whether a robbery had actually occurred, as well as evidence pointing to a motive and means for [the victim's son], to have committed the murder; (2) the DNA test exonerated the petitioners; and (3) both Stiles [and another witness] had recanted their testimony."  *See Gould*, 301 Conn. at 550; *DiNapoli*, 8 F.3d at 912.  Stiles' potential recantation was thus only one part of a larger picture on which Attorney Waddock would have been focused (though an important one).

A review of Attorney Waddock's cross-examination of Stiles, while not dispositive, supports the Court's conclusion.  The cross-examination did not touch on perhaps Stiles' worst misconduct accusations:  that the officers gave her money to purchase heroin on two occasions (and drove her to buy it); that they bought her dinner and a hotel room the night before she testified in the probable cause hearing; and that they did not let her leave the hotel before testifying the next morning.  While this line of "forgone" cross-examination is not conclusive on the question of a shared motivation, *see DiNapoli*, 8 F.3d at 914, it does suggest that Attorney Waddock was less concerned with the accusations of potential officer misconduct than the City, if faced with an allegation that such conduct was part of a pattern or practice, would be.  Although Attorney Waddock would have been motivated to cast doubt on the credibility of Stiles' recantation and her corresponding accusations against the officers, the Court cannot conclude, after consideration of all of the factual circumstances, that Attorney Waddock shared the same intensity of interest as the current Defendants to rebut Stiles' allegations of officer misconduct.  And as noted above with respect to Cheek's testimony, even if Attorney Waddock could potentially be characterized as

16

acting as a surrogate defense attorney for the individual officers accused of misconduct, the City's potential liability is one more step removed, and there is no indication Attorney Waddock would have had a similar incentive to pursue the issue of potential *municipal liability* with substantial similar intensity as the City would have, had it been present.

Accordingly, Stiles's testimony is inadmissible hearsay not subject to Rule 804(b)'s exception.

## V.     FRANCISCO ORTIZ TESTIMONY

On May 4, 2026, Plaintiff filed a notice regarding Francisco Ortiz's proposed testimony from Scott Lewis's federal habeas proceeding.  Pl.'s Stip., ECF No. 437.  Plaintiff represents that the parties have reached a stipulation as to Francisco Ortiz's statements on the reliability of Frank Graham as an informant, such that Plaintiff no longer seeks to introduce the testimony at issue.  *Id.* at 1.  The Court will read the parties' proposed stipulation to the jury at the appropriate time and will include it in the Court's exhibit of stipulations that will be available to the jury during deliberations.  In light of Plaintiff's position, the Court finds that the City's objection, joined by Defendants Raucci, Lawlor, and Maher, to the introduction of Francisco Ortiz's proposed designation testimony is moot.

## VI.     CONCLUSION

For the reasons described herein, Defendants' objection to Plaintiff's motion at ECF No. 290 with respect to the former testimony of Diane Basilicato and Hector Ortiz is overruled.

17

Defendants' objection to Plaintiff's motion at ECF No. 290 with respect to the former testimony of Carol Cheek and Doreen Stiles is sustained.

       **SO ORDERED** at Hartford, Connecticut, this 4th day of May, 2026.

                     */s/ Sarala V. Nagala*
                     SARALA V. NAGALA
                     UNITED STATES DISTRICT JUDGE