Case 3:22-cv-00630-SVN    Document 486    Filed 05/13/26    Page 1 of 24

NEWS

# 'Tricking the jury': New Haven defends convictions of exonerated men in trial

By **Nathaniel Rosenberg**, *Staff Writer*
May 13, 2026



Scott Lewis stands outside the U.S. District Court in Hartford after testifying in co-defendant Stefon Morant's wrongful conviction trial against the city of New Haven.

Nathaniel Rosenberg/Hearst Connecticut Media



🎧 Listen Now:
'Tricking the jury': New Haven defends convictions of exonerated men in trial

About 6 Minutes

1x

📊 Everlit

HARTFORD — In the eyes of the law in Connecticut, Stefon Morant and Scott Lewis are innocent men.



0:14 / 1:21

The pair — who both spent close to 20 years in prison for a 1990 double murder they did not commit — were eventually exonerated and released after evidence emerged that the lead detective in the case coerced witnesses to frame the two men.

Case 3:22-cv-00630-SVN    Document 486    Filed 05/13/26    Page 3 of 24

**ADVERTISEMENT**
Article continues below this ad

Lewis settled a lawsuit against the city for $9.5 million in 2017, and Morant received a $5.8 million payout from the state for his wrongful conviction.

But as the federal jury trial in Morant's lawsuit against the city of New Haven over his wrongful conviction in the October 1990 murder of Ricardo Turner and Lamont Fields has progressed, the city's attorneys have consistently argued in defense of those initial convictions, despite the substantial evidence to the contrary.

## More News

**New Haven man injured in stabbing Tuesday night, investigation underway: Police**



**'Tricking the jury': New Haven defends wrongful murder convictions in trial**



**Unit in Guilford's iconic 'The Spaceship' condos just listed for $779,000**

**New Haven man threatened to detonate explosives during standoff, cops say**



---

**East Haven man held woman hostage with knife, caused school lockdown, police say**



In his opening arguments, Thomas Gerarde, the city's attorney, told jurors that Morant's story was not a wrongful conviction, and that "nothing improper happened" in the prosecution of the double murder.

![Scott Lewis and Stefon Morant photographed in a tent]

Scott Lewis (left) and Stefon Morant photographed in Hamden on August 30, 2021. The two were wrongfully convicted of a double-murder in New Haven and spent decades in prison.
Arnold Gold/Hearst Connecticut Media

During the testimony of several key witnesses, including Lewis, Gerarde repeatedly pressed them on testimony from the original investigation that was later recanted.



## Want more New Haven Register?

Make us a Preferred Source on Google to see more of us when you search.

**Add Preferred Source**

Those recantations emerged amid allegations that the lead detective on the case, Vincent Raucci, framed Lewis over a drug debt and coerced multiple witnesses into giving false accounts through threats and intimidation.

**ADVERTISEMENT**
Article continues below this ad

Lewis, for one, is upset with the city's legal strategy in opposing his longtime friend's lawsuit.

"The fact that they're able to argue that we did it as a defense after already being exonerated is just crazy," Lewis said after testifying on Monday. "It's like they're

tricking the jury all over again."



Vincent Raucci, center, leaves Hartford Federal Court with his attorneys Friday afternoon on May 8, 2026, in Hartford.

Jim Michaud/Hearst Connecticut Media

Last week, Gerarde questioned Augustin Castro, the state's key witness in the 1990s trials, about his story that he was in the car with Lewis and Morant when the two men robbed and shot Lamont and Turner in an apartment in the Hill.

---

ADVERTISEMENT

Article continues below this ad

5/13/26, 11:10 AM New Haven Lieutenant convictions for exonerated trio in federal...

Case 3:22-cv-00630-SVN Document 486 Filed 05/13/26 Page 7 of 24

Castro, who was 16 years old and went by Ovil Ruiz at the time of the murders, recanted his testimony to the FBI in 1996, saying he was threatened by Raucci. Approximately a year later, he changed his story again, saying that his recantation was because of a threat from Lewis.

A few years after that, Castro flipped back to the second story, saying that Raucci had threatened him. His final story lined up with that of another key witness, Jose Roque, as well as Michael Sweeney, a detective in the room during Castro's interrogation.

Case 3:22-cv-00630-SVN    Document 486    Filed 05/13/26    Page 8 of 24



New Haven Police Department veteran Michael Sweeney photographed at his home in Madison on September 2, 2021.

Arnold Gold/Hearst Connecticut Media

Gerarde played Castro a tape recording of a statement he gave to police in May 1991, where he pins the murder on Morant and Lewis. But Castro distanced himself from those words, saying they were forced by Raucci.

**ADVERTISEMENT**
Article continues below this ad

"I was never in the car with Stefan Morant," Castro said in response to Gerarde's questioning. "We didn't talk, we didn't say anything to each other, everything that I said on this statement is a lie."

During Lewis's two days on the stand this week, Gerarde pressed him over Castro's testimony, asking him about specific details shared at Morant's 1994 trial, including that he and Lewis were alleged to have fled the scene of the murder in a car with Castro, carrying bags full of money and cocaine.

"The reason I'm sitting here is that that was already proven to be false," Lewis said. "That's why I'm sitting here as an exonerated person."

Gerarde also questioned how Castro could have possibly been fed and memorized the lengthy and detailed account of the murders that he presented at Morant and Lewis's trials.

**ADVERTISEMENT**
Article continues below this ad

"Did you know Ovil Ruiz to have some kind of memory that allowed him to memorize 150 pages of lies and spit it out at trial?" Gerarde asked.

"I didn't know Ovil Ruiz," Lewis responded. "I know what he presented at the trial was false testimony."

Unlike Morant, Lewis settled a similar lawsuit with the city without a trial nine years ago.

On Tuesday, Mayor Justin Elicker declined to discuss the specifics of Gerarde's arguments, citing the ongoing legal proceedings.

**ADVERTISEMENT**
Article continues below this ad

Elicker said the city had been open to settling, but the payout demanded by Morant was "well beyond what is reasonable." Morant's legal team declined to comment.

In addition to the city, Morant is also suing former detectives Raucci, Vaughn Maher and Sweeney, the estate of former officer Robert Lawlor, and the estate of former Police Chief Nicholas Pastore.



Former New Haven Police Chief Nicholas Pastore, in a 1990 file photo. Pastore's estate is among the parties named in Morant's federal lawsuit.

Mara Lavitt/New Haven Register File Photo

His suit claims that police "fabricated evidence, including false witness statements, and forwarded that evidence to prosecutors," and that the city, through the Police Department, "maintained policies, practices, and customs that caused the constitutional violations."

ADVERTISEMENT
Article continues below this ad

In addition to the testimony from Lewis and Castro, the trial has included a marathon 12-hour questioning of Raucci, who stridently denied any wrongdoing, even as he repeatedly contradicted himself and his prior testimony over the three decades of the case.

Maher and Sweeney have also both taken the stand, with the former saying he had not seen any wrongdoing from Raucci, and the latter telling jurors that Raucci had coerced Castro in his presence.

The trial has also been marred by a threat sent by Raucci to his ex-wife on the eve of the proceedings to try to prevent her from testifying. The presiding judge described the message as "clear and entirely impermissible witness tampering."

Raucci's ex-wife testified anyway, telling the jury about his frequent drug use, violent abuse and a lavish lifestyle of fancy clothes and vacations funded by mysterious means, which she suspected to be drug dealing.

**ADVERTISEMENT**
Article continues below this ad

On the stand Tuesday, Lewis called Raucci a "sick man." In an interview, he questioned why the city was defending the police work of a man he considered a "dirty cop."

"What I'm surprised about is the continued trickery and deceitfulness in trying to defend this," Lewis said. "If you're supposed to protect the integrity and the safety of the community, then why don't you just deal with the truth?"



**NHR**

### Sign up for the Morning Briefing!

Start your day with important local and statewide headlines.

**Email**

priya@nsbhf.com                                                           Sign Up

By signing up, you agree to our Terms Of Use and acknowledge that your information will be used as described in our Privacy Policy.

May 13, 2026

 **Nathaniel Rosenberg**
**HEARST FELLOW**

Nathaniel Rosenberg is a Hearst Fellow covering breaking and trending news with Hearst Connecticut. He previously wrote for the Philadelphia Inquirer, Milwaukee Journal Sentinel and New Haven Independent. Nathaniel graduated from Yale University with a degree in History. Please send him tips, story ideas and any amusing jokes at nathaniel.rosenberg@hearst.com.

**NEWS**

# New Haven mayor ordered to testify about settlement comments in wrongful conviction trial

By **Nathaniel Rosenberg**, *Staff Writer*

May 13, 2026

    



New Haven Mayor Justin Elicker in a Jan. 5, 2026, file photo. Elicker was called to testify in Hartford federal court on Wednesday over statements he made to the New Haven Register concerning an ongoing trial.

Tyler Sizemore/Hearst Connecticut Media



🎧 Listen Now:
New Haven mayor ordered to testify about settlement comments in wrongful conviction trial
About 3 Minutes

1x

📊 Everlit

HARTFORD — A federal judge in Hartford has ordered New Haven Mayor Justin Elicker to answer questions in court Wednesday concerning statements he made to the New Haven Register about an ongoing wrongful conviction lawsuit against the city.

Discover with Dan: How long into spring will winter's snow piles last in Connecticut?

Watch M

Stefon Morant spent 21 years in prison for a 1990 double-murder before being exonerated and released after evidence emerged that the lead detective in the case coerced witnesses to frame him, as well as his co-defendant Scott Lewis.

**ADVERTISEMENT**
Article continues below this ad

Morant has sued the city, along with several of the detectives involved in the case, alleging that the city, through the Police Department, "maintained policies, practices, and customs that caused the constitutional violations."



Stefon Morant leaves U.S. District Court in Hartford after the first day of a wrongful conviction trial against former New Haven police Detective Vincent Raucci.

Jim Michaud/Hearst Connecticut Media

Lewis settled a similar lawsuit against the city for $9.5 million in 2017. But Morant — who received a $5.8 million payout from the state for his wrongful conviction — had been unable to reach an agreement with the city, leading to the monthlong jury trial in a Hartford federal courtroom.

---

## More News



New Haven mayor ordered to testify about comments in wrongful conviction trial



New Haven man injured in stabbing Tuesday night, investigation underway: Police



'Tricking the jury': New Haven defends wrongful murder convictions in trial



Unit in Guilford's iconic 'The Spaceship' condos just listed for $779,000



New Haven man threatened to detonate explosives during standoff, cops say

On Tuesday, Elicker told the New Haven Register that the city had been open to settling, but that the payout demanded by Morant was "well beyond what is

reasonable." The Register published the mayor's quote in a story on the case on Wednesday morning.



## Want more New Haven Register?

Make us a Preferred Source on Google to see more of us when you search.

**Add Preferred Source**

Elicker also said Morant's demands were "so far beyond what any other case has settled for" and that the city had been "forced into a position where we can't settle."

The mayor and Morant's attorneys declined to share the total requested by Morant. Speaking generally, Elicker said the city evaluates the cost of a settlement against the financial risk of a trial and cost of attorneys' fees before deciding whether to go to trial.

"I'm focused on making sure that the city's police department is run effectively and that we're also managing our city finances effectively," the mayor said Tuesday.

**ADVERTISEMENT**
Article continues below this ad

In court Wednesday, Nick Brustin, Morant's attorney, took issue with Elicker's comments in an argument before U.S. District Court Judge Sarala V. Nagala.

"I was just shown a newspaper article from today quoting the mayor of New Haven disclosing confidential settlement talks, stating that we made a demand that wasn't reasonable and that's why it wasn't settling," Brustin said.

Brustin described Elicker's quote as "disturbing," a "lie," and said it "(violated) the confidentiality of settlement talks." He asked Nagala to call Elicker into court on Wednesday afternoon to answer questions about his comments in the Register.

"I was very surprised to see that, and I made a call to make sure nothing else happens," Thomas Gerarde, the attorney representing the city, told the judge.

ADVERTISEMENT
Article continues below this ad

A spokesperson for the mayor did not immediately respond to a request for comment.

Nagala ruled that the mayor would have to come testify to his interview quotes in federal court.

"I need the mayor in court this afternoon," Nagala said. "I need him to answer questions about why he's saying this to the press in the middle of a trial."

---

ADVERTISEMENT

Article continues below this ad

---

*This is a developing story and will be updated.*



### Sign up for the Morning Briefing!

Start your day with important local and statewide headlines.

**Email**

priya@nsbhf.com                                    Sign Up

By signing up, you agree to our Terms Of Use and acknowledge that your information will be used as described in our Privacy Policy.

May 13, 2026



### [Nathaniel Rosenberg](#)
**HEARST FELLOW**

  

Nathaniel Rosenberg is a Hearst Fellow covering breaking and trending news with Hearst Connecticut. He previously wrote for the Philadelphia Inquirer, Milwaukee Journal Sentinel and New Haven Independent. Nathaniel graduated from Yale University with a degree in History. Please send him tips, story ideas and any amusing jokes at nathaniel.rosenberg@hearst.com.

## Around The Web

Powered by **REVCONTENT**

### Why 30,000 People Are Buying This Hat

By **peoasis**

### New Peptides Breakthrough Builds Muscle Like Crazy

By **ApexLabs**

### How to Find out if GLP-1s Are Covered by Your Insurance

By **GoodRx**

---

☰ **NEW HAVEN REGISTER**

**e-Edition**   👤 **Account**

---

**LEGAL WRITES**

# Judge Orders Mayor To Court Over Settlement Comment

BY **MONA MAHADEVAN**, **DEREEN SHIRNEKHI** and **THOMAS BREEN**
May 13, 2026 3:15 pm



Elicker at an unrelated press conference at City Hall on Wednesday. Credit: Dereen Shirnekhi photo

Mayor Justin Elicker on Wednesday afternoon will head to federal court in Hartford to answer a judge's questions about why he told Hearst Connecticut that the plaintiff in **an ongoing wrongful-conviction trial**

had sought a settlement payment that was "well beyond what is reasonable."

"I work really hard to be transparent and answer questions from the press," Elicker told reporters after an unrelated press conference at City Hall on Wednesday. He said he is going to follow the judge's order and and head to court to hear any concerns she might have.

"I haven't talked with the judge. I want to make sure I don't make comments before hearing about the concerns from the judge," he added.

The quote in question was **first published Wednesday morning in an article written by Hearst's Nathaniel Rosenberg.** According to that article, Elicker said that Stefon Morant — **who is suing the city and a group of former detectives for allegedly framing him for a 1990 double murder** — had demanded a payment that was "well beyond what is reasonable."

Around 10:45 a.m. on Wednesday, Morant's legal team discovered Hearst's article and asked Judge Sarala Nagala to call Elicker into court. Nick Brustin, one of the plaintiff's attorneys, described Elicker's characterization of the settlement talks as a "lie."

Hearst's Rosenberg then **posted another article** with more quotes from the same conversation with Elicker. He is quoted as saying that Morant's demands were "so far beyond what any other case has settled for" and that the city has been "forced into a position where we can't settle."

At 1:00 p.m. on Wednesday, Thomas Gerarde, the attorney representing the city in Morant's civil-rights trial, promised Nagala that Elicker would make no further public statements about the settlement discussions.

The mayor is scheduled to speak in court at 4:15 p.m. Nagala has ordered the 10-person jury to leave the room before Elicker enters.

At City Hall on Wednesday, Elicker declined to comment further on the matter, stressing that he wants to be "sensitive" to the ongoing trial while also "trying to be transparent."

He confirmed that he was accurately quoted in Rosenberg's article. Beyond that, "I don't want to make any comments."

When the Independent asked Elicker **last week** why the city had settled with Morant's alleged co-conspirator, Scott Lewis, in 2017, and not with Morant, the mayor responded, "Oftentimes, both parties want to reach a

settlement agreement, but sometimes different parties have very different expectations as to what's an appropriate settlement agreement." At the time, he declined to share any further details about the settlement.

 **opin1**

May 13, 2026 6:51 pm at 6:51 pm

I think there should be a system of federal or state-level insurance to cover these types of lawsuits. If an innocent person is wrongfully incarcerated, they must be compensated. Likewise Randy Cox deserved to be compensated in his case.

However, who should foot the bill? It is inequitable for the taxpayers of a single municipality to be solely on the hook for these damages. If I live in New Haven and my brother lives in Cheshire, I am financially penalized for a systemic failure while he is not, despite neither of us having any personal involvement.

In our society wealthier people live in wealthier areas and poorer people are limited to living in poorer areas. Where you have more poverty, there is obviously going to be greater likelihood of these things happening (less wealth leads to more crime; more crime leads to the occasional wrongful conviction/Randy Cox type of situation). So cities like New Haven are bound to face far more lawsuits like these than say Woodbridge or Madison.. Because poorer urban centers already contend with tight municipal budgets and higher mill rates, forcing them to absorb these massive payouts creates an unsustainable financial burden.

Its tragic when these things happen but they are going to happen from time to time all over the country. Therefore, the financial burden should be distributed equitably across the state or country, rather than being concentrated strictly on the local taxpayers where the incidents occur.
While the city has liability insurance, the premiums for high-risk municipalities are naturally inflated, and these catastrophic judgments frequently exceed policy limits. A broader risk-pooling mechanism is necessary.

© 2026 New Haven Independent

Powered by Newspack