UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STEFON MORANT,                          :           CIV. NO. 3:22-cv-00630 (SVN)
  Plaintiff,                  :
                  :
vs.                                     :
                  :
CITY OF NEW HAVEN, ET AL.,              :           JUNE 26, 2026
  Defendants.                  :

## VINCENT RAUCCI'S RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL OR REMITTITUR UNDER RULE 59

Defendant Vincent Raucci respectfully renews his motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure following the jury's verdict and, in the alternative, moves for a new trial or remittitur pursuant to Rule 59.

## I.  PRELIMINARY STATEMENT

At the close of Plaintiff's case and again at the close of all evidence, Mr. Raucci moved under Rule 50(a) for judgment as a matter of law on the grounds that Plaintiff had failed to present a legally sufficient evidentiary basis to support the claims asserted against him.  [ECF No. 528]  The Court deferred consideration of that motion. [ECF No. 558].

The jury thereafter returned a verdict against Mr. Raucci on Count One, malicious prosecution; Count Three, failure to disclose favorable evidence; Count Four, fabrication of evidence; Count Five, coercion of statements; and Count Two, civil rights conspiracy. The jury awarded a single compensatory damages award of $38,000,000 against the City of New Haven, Mr. Raucci, and Vaughn Maher.  [ECF

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

No. 569]  Even taking the evidence in the light most favorable to Plaintiff and accepting the jury's findings where legally supported, no reasonable jury could have concluded that Mr. Raucci is liable as alleged on this trial record, and judgment as a matter of law is required.

In the alternative, if the Court concludes that Plaintiff presented evidence minimally sufficient to avoid judgment as a matter of law, a new trial is warranted because the verdict is against the weight of the evidence and was substantially influenced by unfairly prejudicial Monell evidence, unrelated bad act evidence, propensity reasoning, and an excessive damages award unsupported by the admitted evidence related to Plaintiff's claimed injuries.

## II.   MOTION FOR JUDGMENT

### A.   Legal Standard

Under Rule 50(b), the Court may set aside a jury verdict and enter judgment as a matter of law where "a reasonable jury would not have a legally sufficient evidentiary basis" to find for the non-moving party. When a plaintiff is "fully heard on an issue during a jury trial" and fails to present a jury with a "legally sufficient evidentiary basis to find for the [plaintiff] on that issue," a court is empowered to grant judgment as a matter of law. Fed. R. Civ. P. 50(a), (b); Cash v. County of Erie, 654 F.3d 324, 333 (2d Cir. 2011).  A Rule 50(b) motion "can be granted only on grounds advanced in the pre-verdict motion." Lore v. City of Syracuse, 670 F.3d 127, 152–53 (2d Cir. 2012); see also Tolbert v. Queens Coll., 242 F.3d 58, 70 (2d Cir. 2001).

The trial court may set aside a verdict if there is "such a complete absence of evidence supporting the verdict that the jury's finding could have been the result of sheer surmise or conjecture,

2

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [jurors] could not arrive at a verdict against [him]." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 133 (2d Cir. 2008) (internal quotation marks and citation omitted); Kinneary v. City of New York, 601 F.3d 151, 155 (2d Cir. 2010).  In short, a court may grant a Rule 50 motion when, after "viewing the evidence in the light most favorable to the non-movant," it concludes that "a reasonable juror would have been compelled to accept the view of the moving party." Cash, 654 F.3d at 333 (quoting Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007)); see also Ashley v. City of New York, 992 F.3d 128, 138-39 (2d Cir. 2021).

**B.      The Verdict Against Mr. Raucci Cannot Stand Because the Trial Record Did Not Supply Legally Sufficient Claim-Specific Proof of Personal Involvement, Intent, or Causation**

Although "the jury's verdict may rest entirely on circumstantial evidence," see, e.g., United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003), "a conviction based on speculation and surmise alone cannot stand." United States v. D'Amato, 39 F.3d 1249, 1256 (2d Cir. 1994). Here, Plaintiff's theory required the jury to make a series of speculative inferential leaps, each dependent on the one before it, in order to arrive at the conclusion that Mr. Raucci knowingly participated in a framing of Scott Lewis for Frank Parise and, in doing so, violated Mr. Morant's constitutional rights. See United States v. Graziano, 616 F. Supp. 2d 350, 371 (E.D.N.Y. 2008) ("[T]he court is loath to stack inference upon inference in order to uphold the jury's verdict."). The record on which the verdict was rendered does not provide a legally sufficient basis to find that Mr. Raucci fabricated evidence, suppressed favorable material from prosecutors, coerced Plaintiff's January 16, 1991

statement, maliciously prosecuted him, or entered into an agreement with any other individual to violate his rights.

To prevail on his coerced statement claim, Plaintiff was required to prove that Mr. Raucci's conduct was sufficiently coercive as to impermissibly overbear Plaintiff's will, notwithstanding Plaintiff's voluntarily executed waiver of rights signed in connection with his statement to the police, and the audio recording of same.  See Green v. Scully, 850 F.2d 894, 900-02 (2d Cir. 1988); cf. Thomas v. Mason, No. 1:17-CV-626 (DJS), 2023 WL 2709730, at *10 (N.D.N.Y. Mar. 30, 2023), aff'd, No. 23-753, 2024 WL 5199296 (2d Cir. Dec. 23, 2024) ("[T]he mere fact that the police lie to a suspect to elicit his confession does not necessarily render it coerced." (quoting Santiago Ortiz v. Kelly, 687 F. Supp. 64, 65 (E.D.N.Y. 1988)); United States v. Anderson, 929 F.2d 96, 99 (1991) (holding that the use of trickery, deception, or some form of ruse is a common practice, and does not automatically render a confession involuntary).

As to the conspiracy claim, at trial, Mr. Raucci unequivocally denied Plaintiff's allegations during his testimony; see Trial Tr. Day 8 A.M. at 67:7–68:14; and no witness with personal knowledge of any such conspiracy, including Frank Parise, was offered to testify.  Instead, plaintiff's theory depended principally on Scott Lewis's testimony; see Trial Tr. Day 8 P.M. at 49:10–16; and a hope that the jury would infer wrongful intent from the unrelated allegations, later recantations, distracting Monell evidence, and endless character-based attacks made on Mr. Raucci. Cf. Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (requiring proof that each government-official defendant, "through the official's own individual actions," violated the Constitution); Berkovich v. Hicks, 922 F.2d 1018, 1022-23 (2d

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

Cir. 1991) (affirming exclusion of prior civilian complaints against defendant police officer where the proffer amounted to a "veiled attempt" to use prior bad acts to prove propensity and did not show a sufficiently distinctive pattern or unique scheme); Hynes v. Coughlin, 79 F.3d 285, 291-92 (2d Cir. 1996) (vacating and remanding where disciplinary history evidence was used to invite the jury to infer from character that plaintiff acted in conformity with prior conduct).

For his malicious prosecution claim, Plaintiff had to prove that Mr. Raucci initiated or continued the prosecution against him without probable cause and with malice – but the record establishes that, at the very least, Mr. Raucci had *arguable* probable cause to arrest Plaintiff based on the information and statements gathered, the elimination of other potential suspects, and Plaintiff's own admission of his presence at the scene of the homicide.  See Escalera v. Lunn, 361 F.3d 737, 743-44 (2d Cir. 2004).

And with respect to his fabrication claim, Plaintiff was required to present proof that Mr. Raucci knowingly created false evidence likely to influence the criminal proceeding. See Garnett v. Undercover Officer C0039, 838 F.3d 265, 279 (2d Cir. 2016); Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997).  As discussed herein, Plaintiff's evidence was insufficient on this issue.

As a result, the verdict must be vacated because it is unsupported by the evidence.

**C.      Plaintiff's Conspiracy Verdict Must be Vacated Because There Was No Evidence of an Agreement or Meeting of the Minds**

The conspiracy verdict is particularly vulnerable because Plaintiff did not present legally sufficient evidence of an agreement, tacit or express, between Mr. Raucci and Mr. Maher or any other alleged co-conspirator to act in concert for the purpose of depriving Mr. Morant of constitutional rights.

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

To prevail, Plaintiff needed to show more than participation in the same investigation, in that there must have been a meeting of the minds between the alleged co-conspirators. See Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003) (acknowledging that to prevail on a civil rights conspiracy claim a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."); Zahrey v. City of New York, No. CIVA 98-4546 DCP JCF, 2009 WL 1024261, at *10 (S.D.N.Y. Apr. 15, 2009) (civil rights conspiracy "need not be shown by proof of an explicit agreement but can be established by showing that the 'parties have a tacit understanding to carry out the prohibited conduct'" (quoting United States v. Rubin, 844 F.2d 979, 984 (2d Cir. 1988)); the conspirators need be shown only to "share the general conspiratorial objective" (quoting Snell v. Tunnell, 920 F.2d 673, 702 (10th Cir.1990))).

The record does not contain evidence of a shared conspiratorial objective between Mr. Raucci and any alleged co-conspirator, including Mr. Maher, beyond speculation and surmise. Plaintiff presented evidence that Mr. Raucci and Mr. Maher were both involved in the Turner/Fields homicide investigation, participated in witness interviews, and developed different investigatory leads on suspects. The circumstantial evidence purportedly supporting a reasonable inference that such an agreement existed between them, again, relied on the jury's adoption of the same impermissible propensity considerations permeating the rest of Plaintiff's case.

Without evidence of a meeting of the minds, of which there was none, the conspiracy verdict against Mr. Raucci cannot stand.

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

**D.      Mr. Raucci Is Entitled to Qualified Immunity, Particularly as to Plaintiff's Brady Theory, Because the Law Did Not Clearly Require an Investigating Officer to Do More Than Provide the Underlying Material to Prosecutors**

Qualified immunity provides an independent basis for judgment as a matter of law as well.  Even assuming, *arguendo*, that Plaintiff established a constitutional violation by a preponderance of the evidence, it remains the case that Mr. Raucci did not violate clearly established law in a manner that every reasonable officer in his position would have understood at the time, such that qualified immunity still applies. Anderson v. Creighton, 483 U.S. 635, 640-41 (1987); White v. Pauly, 580 U.S. 73, 78-79 (2017); Ashcroft v. al-Kidd, 563 U.S. 731, 741-42 (2011).[1]

In presenting his failure-to-disclose Brady evidence, Plaintiff characterized ambiguities in the police investigative file and other questions raised with the benefit of hindsight as though they conclusively established a clearly unconstitutional suppression of favorable evidence by Mr. Raucci. But the trial record showed that at least some of the very materials Plaintiff argued Mr. Raucci attempted to hide were, in fact, provided to the State's Attorney's Office.

The most notable example is the recording of the telephone call involving Mr. Raucci and a purported confidential informant named Bobby Wilson.  [Pl. Trial Ex. 22]  Plaintiff emphasized at trial that the recording had apparently not been transcribed by a police department secretary in the same

---

[1] In his Rule 50(a) motion, Mr. Raucci sought to preserve an "Absolute Testimonial Immunity and/or Prosecutorial Immunity" argument. [ECF No. 528, at 6–8]  Upon further review of the trial record and Washington v. Napolitano, 29 F.4th 93, 103 (2d Cir. 2022), Mr. Raucci does not press that argument in this renewed motion. The qualified immunity argument advanced herein is based upon the contention that, *inter alia*, on the trial record and under clearly established law at the time of the 1991 investigation, Mr. Raucci did not violate a clearly established constitutional obligation in the manner alleged by Plaintiff.

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

manner as the other homicide investigation witness interviews Raucci conducted.  Based on this, Plaintiff argued that Mr. Raucci must have intentionally attempted to conceal and suppress its contents. [Trial Tr. Day 8 A.M. at 123:1–124:15, 137:2–140:17]  But the record also confirms that the very tape at issue – while not transcribed – was nevertheless located in the State's Attorney's Office file dating back to the original prosecution.  See id. at 139:17–22.  Such evidence cannot reasonably support a finding that Raucci intentionally suppressed or withheld this, or any other evidence.

Further, Mr. Raucci is entitled to qualified immunity on this issue.  See Walker v. City of New York, 974 F.2d 293, 299 (2d Cir. 1992).  Walker confirms that police officers satisfy their Brady-related obligations by turning exculpatory evidence over to prosecutors.  The Second Circuit explained that prosecutors, not police officers, are the actors with the legal acumen to determine what constitutes Brady material that must be disclosed to the defense, and that requiring police officers to make separate disclosure decisions would create unnecessary confusion.  Walker, therefore, supports the principle that, once the material is provided to the prosecutor's office, later questions concerning whether the material should be transcribed, highlighted, characterized, used, or disclosed to the defense fall within the prosecutor's disclosure and trial preparation function, not within a separate constitutional obligation imposed on the investigating officer.  Cf. Bellamy v. City of New York, 914 F.3d 727, 751 (2d Cir. 2019) (recognizing § 1983 liability where police withhold exculpatory or impeachment evidence from prosecutors).

The timing of Walker also supports qualified immunity to the extent Plaintiff's theory depends on investigative conduct occurring before Walker was decided.  The investigation at issue occurred in

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

1991, whereas <u>Walker</u> was not decided until September 1992.  Thus, even assuming <u>Walker</u> later clarified the contours of police officers' <u>Brady</u>-related responsibilities in this Circuit, it did not clearly establish, at the time of the Turner/Fields homicide in 1991, that an investigating officer violated the Constitution by failing to make separate legal judgments concerning what constitutes sufficiently complete disclosure of exculpatory or impeachment evidence by a police officer under <u>Brady</u>.  <u>See</u> <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198-99 (2004) ("[W]e emphasized in <u>Anderson [v. Creighton]</u> 'that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'")  At the time Mr. Raucci performed the subject investigation, clearly established law did not require him, in the specific factual circumstances presented here, to do more than provide the underlying material to the prosecuting authority such that he should be entitled to qualified immunity on plaintiff's suppression claim.

## III.    <u>MOTION FOR NEW TRIAL/MOTION FOR REMITTITUR</u>

### A.    **Legal Standards**

#### 1.  **Motion for New Trial**

Under Federal Rule of Civil Procedure 59, a court "may grant a new trial" after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).  "A motion for a new trial should be granted when, in the opinion of the court, the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." <u>DLC Mgmt. Corp. v. Town of Hyde Park</u>, 163 F.3d 124, 133 (2d Cir. 1998) (quoting <u>Song v. Ives Lab., Inc.</u>,

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

957 F.2d 1041, 1047 (2d Cir. 1992)).  General grounds for a new trial include that the verdict is against the clear weight of the evidence, the trial was not fair, substantial errors occurred in the admission or rejection of evidence or the giving or refusal to give instructions, or damages are excessive. See Graham v. City of New York, 128 F. Supp. 3d 681, 696 (E.D.N.Y. 2015).

In comparison to a Rule 50 motion, the Rule 59 standard is less onerous for the moving party in important respects.  First, "[u]nlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict." DLC Mgmt. Corp., 163 F.3d at 134. Second, in deciding a Rule 59 motion, "a trial judge is free to weigh the evidence himself, and need not view [the evidence] in the light most favorable to the verdict winner." United States v. Landau, 155 F.3d 93, 104 (2d Cir. 1998).  A new trial is also appropriate where evidentiary error affects a party's substantial rights or where the cumulative effect of unfairly prejudicial evidence produces a seriously erroneous result.  See Outley v. City of New York, 837 F.2d 587, 592-95 (2d Cir. 1988).

### 2.  Motion for Remittitur

A conditional order of remittitur under Rule 59 requires a plaintiff to choose between accepting a reduced verdict or submitting to a new trial.  See Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 165 (2d Cir. 1998).  Under federal law, an award will not be disturbed unless it is "so high as to shock the judicial conscience and constitute a denial of justice." Ismail v. Cohen, 899 F.2d 183, 186 (2d Cir. 1990).  "A remittitur, in effect, is a statement by the court that it is shocked by the jury's award of damages." Id.  In determining whether the jury reached a "seriously erroneous" result, the district court "is free to weigh the evidence and 'need not view [the evidence] in the light most favorable to the verdict winner.'"

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

Farrior v. Waterford Bd. of Educ., 277 F.3d 633, 634 (2d Cir. 2002) (quoting DLC Mgmt. Corp., 163 F.3d at 134).

To determine whether an award is so high as to "shock the judicial conscience," the Court may consider "the amounts awarded in other, comparable cases." DiSorbo v. Hoy, 343 F.3d 172, 183 (2d Cir. 2003) (quoting Mathie v. Fries, 121 F.3d 808, 813 (2d Cir. 1997)).  A court should determine whether the award is "within a reasonable range," not simply "balance the number of high and low awards and reject the verdict in the instant case if the number of lower awards is greater." Ismail, 899 F.2d at 187; see also Tretola v. County of Nassau, 14 F. Supp. 3d 58, 80 (E.D.N.Y. 2014).

**B.      The Verdict Was Substantially Influenced by Generalized Monell Evidence and Unrelated Bad-Act Evidence, Warranting a New Trial Under Rule 59**

Even if the Court declines to enter judgment as a matter of law in his favor, Mr. Raucci is entitled to a new trial because the verdict was substantially influenced by unfairly prejudicial evidence that invited the jury to decide the claims against him on an improper basis, as discussed herein.  The most significant prejudice came from the admission of the mountain of Monell evidence involving other NHPD investigations, other detectives, and other alleged misconduct occurring at various points in time prior to and post-dating the Turner/Fields investigation.  Although that evidence was offered "against the City," the practical effect was to allow Plaintiff to present a broad narrative of departmental misconduct and then invite the jury to view Mr. Raucci through that lens.[2]

---

[2] Mr. Raucci preserved this issue through, *inter alia*, his pretrial motions in limine and objections seeking to limit or preclude prejudicial and irrelevant Monell evidence, unrelated bad act evidence, evidence concerning alleged drug use, evidence concerning unrelated sexual conduct, and Detective Pettola's anecdote concerning alleged cocaine-planting. See ECF Nos. 274-277.

11

That risk was especially acute here because of the inferential nature of Plaintiff's theories against Mr. Raucci.  As such, the admission of dozens of exhibits from a long list of other allegedly problematic investigations to develop Plaintiff's Monell claim *all but guaranteed* the jury would rely on that irrelevant prejudicial matter to fill in evidentiary gaps in rendering its verdict against Mr. Raucci.  See Fed. R. Evid. 403, 404(b); Berkovich, 922 F.2d at 1022-23.

This prejudice was further compounded by admitted, overly prejudicial testimony concerning Mr. Raucci as a police officer including speculated on-the-job drug use, an unrelated consensual intimate relationship arising from a separate police matter, and an anecdote by a former Detective about an alleged attempt by Mr. Raucci to plant cocaine on a suspect during an unrelated motor vehicle stop sometime in the mid 1980's.  This testimony and evidence was inflammatory, collateral, and highly prejudicial, while failing to prove the elements of the constitutional claims at issue.  Its primary effect was to suggest that Mr. Raucci had a propensity for misconduct and, therefore, likely committed the constitutional violations Plaintiff alleged here.  See Berkovich, 922 F.2d at 1022-23 ("[T]he prior [civilian] complaints [against the defendant precluded at trial] showed Hicks' "sadistic," "malicious," "aggravated state of mind." This proffer amounts to no more than a veiled attempt to do what Rule 404(b) expressly prohibits – introducing evidence of bad acts to show the defendant's propensity to commit such acts.").

On the issue of drug use specifically, Mr. Raucci suffered significant prejudice because the defense was, in presenting its case, restricted in its ability to explore that same subject matter with Mr. Raucci's ex-wife, Donna Desai, whose testimony functioned *principally* to accuse Mr. Raucci of drug

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

use where no credible evidence thereof otherwise exists.  The jury was exposed to multiple inflammatory characterizations of Mr. Raucci's personal life, including an utterance in violation of the Court's order precluding evidence of domestic violence between Plaintiff and Ms. Desai which, while promptly stricken from the record by the Court, nevertheless was heard by the jurors.  [Trial Tr. Day 5 P.M. at 21:21–22:6]  Conversely, the defense was constrained in its ability to test, contextualize, or rebut the varied accusations against Mr. Raucci in this regard or to undermine the credibility of the witnesses offering them.  The same is true with respect to counsel's inability to question Plaintiff or Mr. Lewis about their own respective drug and alcohol use during the relevant time period.  [ECF No. 393 at 5-8].

Similarly, after Mr. Raucci responded to a question posed by Plaintiff's counsel about a rescue in which he was involved, the Court determined that Mr. Raucci had "opened the door," to the introduction of another anecdote – without corroborating testimony from the alleged victim or any witness to the alleged conduct – concerning an unrelated matter involving consensual intimate relations with a victim in a separate police investigation.  [Trial Tr. Day 8 A.M. at 121:18–122:2; Trial Tr. Day 8 P.M. at 27:22–29:24]  That evidence clearly did not supply claim-specific proof of fabrication, suppression, coercion, malicious prosecution, or conspiracy in *this* case, and its only effect was to invite impermissible character reasoning.  Id.

The jury's finding against Mr. Raucci on every claim submitted against him cannot be squarely reconciled with the absence of tangible proof that any of what Plaintiff alleged actually happened, particularly when compared against the jury's mixed findings as to Defendant Sweeney and the other named detective defendants.  [ECF No. 569]  The more reasonable inference is that the jury's view of

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

Mr. Raucci was substantially affected by ample spillover evidence and invited character-based reasoning.  Under Rule 59, a new trial is warranted where, as here, the verdict is against the weight of the evidence, and the proceedings created a serious risk that liability was imposed on an improper basis.

### C.    Alternatively, the $38MM Compensatory Damages Award Should Be Reduced

At minimum, the $38 million compensatory damages award cannot stand in its present form.[3]  In closing argument, the undersigned proposed a more modest compensatory range of $2MM to $10MM if the jury found liability based on the evidence admitted into the record related to Plaintiff's damage claim.  This suggestion was not a concession that any damages should be awarded against Mr. Raucci; Mr. Raucci maintains that Plaintiff failed to prove liability against him as a matter of law.  Rather, while Plaintiff undoubtedly claimed a serious injury arising from his conviction and incarceration, the damages awarded must still be *supported by the evidence* and causally attributable to legally valid claims against Mr. Raucci. See DiSorbo, 343 F.3d at 183-84.  For the reasons set forth herein, therefore, the damages awarded are plainly excessive.

The excessiveness of the award is further demonstrated by comparable verdicts and remitted awards in wrongful conviction, malicious prosecution, and constitutional injury cases.  Although no comparator will perfectly match the facts of this case, the Court's task is to determine whether this

---

[3] At the very least, defendants also intend to pursue the statutory offset applicable to plaintiff's final damages award as set forth under Connecticut General Statutes § 54-102uu(h), which provides that, "[a]ny damages awarded after an award pursuant to this section to the claimant resulting from an action by the claimant against any other unit of government within this state by reason of the same subject of the claim *shall be offset* by the amount of the compensation award received under this section." (Emphasis added).  In 2021, plaintiff was awarded more than $5.8MM by the State Claims Commissioner for his 21 years of incarceration pursuant to this statute.  Accordingly, defendants are entitled to a reduction of the final damage award to be determined by the Court in the same amount of the award already received by plaintiff from the State.

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

award falls within a reasonable range.  See, e.g., Restivo v. Hessemann, 846 F.3d 547, 585-88 (2d Cir. 2017) (affirming $18MM awards to each plaintiff, holding that "the district court here plainly did not abuse its discretion in holding that the amount awarded, $1 million per year of wrongful incarceration per plaintiff, neither shocks the conscience nor materially deviates from reasonable compensation. Indeed, the jury award is in line with other approved awards in wrongful conviction cases."); cf. Limone v. United States, 579 F.3d 79, 103-07 (1st Cir. 2009) (approving district court award of $1,000,000 per plaintiff per year for wrongful incarcerations of between eighteen and thirty-three years, but noting that this was at *the high end of what would be permissible*); Smith v. City of Oakland, 538 F. Supp. 2d 1217, 1242 (N.D. Cal. 2008) ("[A] number of verdicts of approximately $1 million per year have been awarded in cases involving periods of wrongful incarceration which span a significant amount of time." (collecting cases)).  Here, the $38 million award substantially exceeds the range supported by the evidence and law, and should be reduced.

Accordingly, if the Court does not enter judgment in Mr. Raucci's favor under Rule 50(b), it should order a new trial under Rule 59.  At the very least, the Court should order a new trial on damages or remit the award to an amount supported by the evidence and consistent with Mr. Raucci's proposed range of $2MM to $10MM.

IV.    **CONCLUSION**

For the foregoing reasons, Defendant Vincent Raucci respectfully requests that the Court grant his renewed motion for judgment as a matter of law pursuant to Rule 50(b), vacate the verdict and judgment entered against him, and enter judgment in his favor on Counts One, Two, Three, Four, and

15

Five.  In the alternative, Mr. Raucci respectfully requests that the Court grant a new trial pursuant to Rule 59 on liability and damages, or, at minimum, order a new trial on damages or remit the $38,000,000 compensatory damages award. Mr. Raucci further requests that, if the Court grants Rule 50(b) relief, it conditionally rule on his alternative Rule 59 motion as required by Rule 50(c).

DEFENDANT, VINCENT RAUCCI

BY/ss/ James N. Tallberg
    James N. Tallberg
    Federal Bar No.: ct17849
    Kimberly A. Bosse
    Federal Bar No.: ct31063
    Karsten & Tallberg, LLC
    500 Enterprise Dr., Suite 4B
    Rocky Hill, CT 06067
    T: (860)233-5600
    F: (860)233-5800
    jtallberg@kt-lawfirm.com
    kbosse@kt-lawfirm.com

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

## **CERTIFICATION**

I hereby certify that on June 26, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

/ss/ Kimberly A. Bosse
Kimberly A. Bosse

**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030