# Exhibit 3

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

---

STEFON MORANT,

Plaintiff(s), NO. 3:22-CV-630-SVN

v. JURY TRIAL DAY 6 - MORNING

CITY OF NEW HAVEN, et al, HARTFORD, CONNECTICUT

Defendant(s). May 6, 2026

---

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE SARALA NAGALA
UNITED STATES DISTRICT JUDGE

---

APPEARANCES:

For the Plaintiff(s): Anna Benvenutti Hoffmann
Nick Brustin
Emma Freudenberger
Amelia Green
Elsa Mota
Grace Paras
Katherine Cion
Syeda Ali
Neufeld Scheck Brustin Hoffman & Freudenberger, LLP
200 Varick Street, Ste. 800
New York, NY 10014

Kenneth Rosenthal
Law Office of Kenneth Rosenthal
One Audubon Street, Third Floor
New Haven, CT 06511

For the Defendant(s): Thomas R. Gerarde
Amanda Stone
Lidia M. Michols
Abigail R. Willauer

**Exhibit 3**

that you arrive in the courthouse at the reporting time that I have set. This morning we were ready to go a little bit earlier and had we had everybody, we could have gotten going.

I'm trying to be mindful of your time, as well as everyone else's, as we move this trial along, so, again, if I set a reporting time, please plan to be in the building by that time. Thank you.

Attorney Gerarde, you may resume.

MR. GERARDE: Yes, thank you.

THE COURT: Mr. Maher, I'll remind you that you remain under oath.

VAUGHN MAHER

CONTINUED EXAMINATION

BY MR. GERARDE:

Q. Good morning, Mr. Maher.

A. Good morning.

MR. GERARDE: If I could have the screen, please.

BY MR. GERARDE:

Q. I have Exhibit 514 coming up on the screen and that is a full exhibit so I'd like the members of the jury to be able to see this.

And you remember we ended yesterday listening to the audio of the Jose Roque statement that was given on

January 15, 1991; right?
A. That's correct.
Q. All right. And, so, I'm on the front page. I'm scrolling down to the bottom of the front page, and I see that there are three initials here. There's a VM, a VR and a JR. Do you see that?
A. Yes, I do.
Q. And whose initials are VM?
A. Those are mine.
Q. And whose initials are VR?
A. Detective Raucci.
Q. And whose initials are JR?
A. Mr. Roque.
Q. Jose Roque's?
A. Jose Roque.
Q. Okay. So after the statement was completed on audiotape, it was typed up by a transcriptionist at the police department?
A. That is correct.
Q. And then this typed version is what comes from that; is that right?
A. That's correct.
Q. And were you present when each page was turned and Mr. Roque initialed?
A. Yes, I was.

**Exhibit 3**

Q. All right. If we scroll down, you'll see that the second page, it's the same thing. Do you see that?
A. I do.
Q. All right. And the jury will have this, but I'll represent to you those same three initials are on every page. And is that because -- did you ask the witness to read what was typed before he initialed?
A. Yes. Yes.
Q. Okay.
THE COURT: Attorney Gerarde, I think I forgot to say on the record that Defense Exhibit 514 is admitted as a full exhibit.
MR. GERARDE: Thank you, Judge.
BY MR. GERARDE:
Q. All right. So at the bottom we see that -- at the last part of the statement is this answer, "Yes," and then we see signed Jose Roque. Do you see that?
A. I do.
Q. It's dated January 15, 1991?
A. Correct.
Q. And then whose signature is this first witness?
A. That is mine.
Q. And so that's Vaughn Maher?
A. Correct.
Q. All right. Second witness is whose?

**Exhibit 3**

A. Vincent Raucci.
Q. "VM Raucci, Jr."
A. Yes.
Q. All right. And then it reads, "Subscribed and sworn to before me this 15 day of January, 1991." And whose signature is that?
A. Sergeant Sweeney.
Q. So Sergeant Sweeney had the ability to place a witness under oath?
A. Yes, I'm sure.
Q. And you were present when he did that to Jose Roque?
A. Yes.
Q. Okay.
MR. GERARDE: We can take that down. I'm sorry. I don't need this yet.
I'm all set with the screen for a minute, please.
BY MR. GERARDE:
Q. Now, like every other officer, when you joined the New Haven Police Department, did you go to a police academy?
A. We did.
Q. And you were trained on all aspects of police work?
A. Yes.
Q. Did that include what the constitution requires in

**Exhibit 3**

terms of dealing with persons who are arrested?
A. I'm certain it did, yes.
Q. And there is a certification that police officers get that needs to be kept current through continuing training; is that right?
MR. BRUSTIN: Objection, 611(c).
THE COURT: And we're on direct examination?
MR. GERARDE: Yeah. I'll rephrase.
THE COURT: Okay.
BY MR. GERARDE:
Q. What training is required for you to keep your police certification current?
A. That goes through the department and --
Q. Would you lean forward to the mic, please?
A. Oh, yes, I'm sorry.
That goes through the department. I don't recall exactly what they call the -- but it's in-service training is what it is essentially.
Q. Do you have a thought as to how many hours are required for you to get -- to keep your certification current?
A. I don't recall what that is.
Q. Did you have continuing training throughout your career?
A. Yes, we did.

**Exhibit 3**

Q. All right.

MR. GERARDE: I'd like to show Exhibit 542 as an unobjected-to exhibit.

BY MR. GERARDE:

Q. It's a portion of your training file?

MR. BRUSTIN: No objection.

THE COURT: Defense Exhibit 542 is admitted as a full exhibit.

BY MR. GERARDE:

Q. Do you remember that the New Haven Police Department kept track of all your training that you went to?

A. Oh, I'm certain they did.

Q. And were you advised by a training division that, Maher, you need to go to training and you're up for this, you're up for that, and they would send you places?

A. Correct. You'd get a memo and direct you to where you had to go.

Q. All right. So I'm going to scroll up to the top. And do you ever see your training file? Do you see how these records are kept ever, or no?

A. I don't recall ever seeing them to be honest with you.

Q. Okay. I'm going to direct your attention to Bates stamp number 661. And you know we go by Bates numbers. Do you see the number NHMorant661?

**Exhibit 3**

A. I do.
Q. Okay. This is a letter. It's dated January 3rd, 1991, to the Chief of Police. It was Nicholas Pastore. Do you see that?
A. I see it.
Q. And it was regarding Detective Vaughn Maher. Do you see that?
A. I do.
Q. All right. And it reads:
"Dear Chief Pastore,
"This is to advise you that the above-mentioned officer has successfully completed the State's Attorney's Law Enforcement Training Program. It has been a pleasure to have this officer as a student.
"Warm personal regards.
"Patrick Clifford."
Do you know who Patrick Clifford is?
A. Yes.
Q. Who was he?
A. He was a State's Attorney at the time, I believe.
Q. And did he provide training to you periodically?
A. I recall that he does, yes.
Q. So, the date up on the top of this page is January 3rd, 1991. Do you see that?
A. I do.

Q. All right. So this is roughly two weeks before you were involved in the statements of Mr. Morant and Mr. Roque that we've been through. You completed -- or this note came out?
A. Yes.
Q. That you completed the program?
A. That's correct.
Q. Okay. I also would like to show you Bates stamp number 662. And I will indicate to you at the top that -- you recognize your name, Officer Vaughn F. Maher?
A. Correct.
Q. When you would go to periodic training, you told me that you would learn about the requirements of the constitution in the academy. Did that also come up in recertification training throughout the years as well?
A. It depends. Each in-service training went to a specific task. I guess this is the best way I can tell you. So sometimes it was about the constitution. Sometimes it was about domestic violence. You know, there is a bunch of different topics that a training venture could take.
Q. All right. So when there was -- when there was training on the developments in the law, would that fall under the category, if you look what I'm toggling here, Police and The Law?

**Exhibit 3**

MR. BRUSTIN: Objection, 611(c).

THE COURT: I'll allow that question. You may answer.

THE WITNESS: I believe it would, yes.

BY MR. GERARDE:

Q. As we look at this curriculum content on this particular page, you see that there are -- there was training on Firearms. Do you see that?

A. I do.

Q. Rape Crisis?

A. Yes.

Q. Human Relations?

A. Yes.

Q. Police and The Law?

A. Yes.

Q. Patrol Procedures?

A. Yes.

Q. And Domestic Violence?

A. Yes.

Q. And if you look at Police and The Law, there was seven hours of training as indicated as to what was provided. Do you see that?

A. I do.

Q. And if we look down at a note, I'm going to zoom in on this and then bring the jury to it. Oops.

**Exhibit 3**

Do you see that I'm zooming in on a circled piece of text that reads "From September to November 1990, Clifford." Do you see that?
A. I do.
Q. And as we back out --
MR. GERARDE: I'm sorry. Go a little farther.
BY MR. GERARDE:
Q. You see that that date, that date range, September to November, 1990 applies to the Police and The Law training of seven hours; is that right?
A. Correct.
Q. All right. So the Turner-Fields homicide occurred in October of 1990, and you had activity in October, November, December, January '90?
A. That's correct.
Q. All right. That would have been right after this or right in the middle of this Police and The Law training that you received; correct?
A. Correct.
Q. I'd like to bring you to Bates number 667. All right. Now, I'll show you that this is 667.
And you can see at the bottom there are two signatures. William Farrell was your Police Chief back then?
A. He was.

Q. And Vaughn Maher is you; correct?
A. Correct.
Q. And you can see that the instructors also signed off; is that right?
A. They did.
Q. And they dated -- so this would apply in this case to a training you received in August of '86; correct?
A. That is correct.
Q. All right. And in terms of what was trained, again, there was a category that is titled Mandated Core Curriculum Content. So this is the same topics that were in the other report that we looked at, Firearms, Rape Crisis, Human Relations, Police and The Law, Patrol Procedures. Those were all mandated; is that right?
A. Yes, it is.
Q. Okay. And did you, at any point, lose your certification at any time during your police career?
A. Never.
Q. All right. Would the New Haven Police Department -- in terms of the types of cases the New Haven Police Department Detective Division handled, would the Detective Division handle the homicides?
A. Yes.
Q. Would the Detective Division handle sexual assault?
A. Yes.

Q. Would the Detective Division handle armed robbery?
A. Yes.
Q. Would the Detective Division handle aggravated assault?
A. Yes.
Q. I'm going to call up for you Exhibit 548.
MR. GERARDE: Not objected to.
MR. BRUSTIN: No objection.
THE COURT: Okay. Defense Exhibit 548 is admitted as a full exhibit.
BY MR. GERARDE:
Q. I'll represent to you that is a Connecticut Union Uniform Crime Report related to the City of New Haven and I don't know if you've seen this, but I am going to direct your attention just to one area.
Do you see it? There's a column at the top entitled, "Year"?
A. Yes.
Q. And then, "the population of the City"?
A. Yes.
Q. And then "murder, rape, robbery, aggravated assault," those would all be detective cases?
A. That is correct, yes.
Q. All right. And below that is an annual number of each of those categories. Do you see that?

**Exhibit 3**

A. I do.
Q. And so if anyone -- if you wanted to see how many cases were being handled in a given year in each category, you could go to the year and look over at what the reported number was. Do you see that?
A. I do.
Q. Okay. Did you -- were you ever in charge of keeping statistics or reporting them?
A. No.
Q. All right. Do you remember that the New Haven Police Department had a Code of Conduct?
A. Of course.
Q. Yeah, all right. So does Rule 15 stand out in your mind, that Rule 15 was the Code of Conduct?
A. I don't know.
Q. All right. Was it allowed under the New Haven Police Department's Code of Conduct for a police officer to fabricate any evidence?
A. Absolutely not.
Q. Was it allowed under the New Haven Police Department's Code of Conduct to coerce a witness?
A. No.
Q. Was it allowed under the New Haven Police Department's Code of Conduct to -- for a police officer to withhold exculpatory evidence?

**Exhibit 3**

A. No.
Q. Were you in the courtroom when I asked Sergeant Sweeney, former Sergeant Sweeney, if he remembered any of his supervisors from back in the day?
A. I don't remember that specifically, but I was in the courtroom. I do remember that.
Q. Okay. All right. Well, do you remember that your Police Chief in the 1980s over to 1990 was Chief William Farrell?
A. Yes.
Q. And do you remember Chief Nicholas Pastore after him?
A. I do.
Q. And if you retired in '93, then he was chief when you retired?
A. Yes.
Q. All right. Do you remember working for Major Muller?
A. I do.
Q. Do you remember working for Commander Montanari?
A. Yes. Not often, but yes.
Q. Do you remember working for Captain John O'Connor?
A. Yes.
Q. How about Lieutenant Peter Gill?
A. Yes.
Q. Sergeant Richitelle?
A. Yes.

Q. Sergeant Kikase?
A. Yes.
Q. Did any of your supervisors at the New Haven Police Department ever state to you, in words or substance, that it would be acceptable in the department for a police officer to fabricate evidence?
A. I don't recall any of them doing that.
Q. Did any of your supervisors ever state to you, in words or substance, that it would be acceptable for a police officer to coerce witness testimony?
A. No.
Q. Did any of your supervisors in the police department ever communicate to you, in words or substance, that it would be acceptable to withhold exculpatory evidence?
A. No.
Q. Did you ever see Chief Farrell or any of his command staff condone a New Haven police officer's fabricating evidence?
A. I have not.
Q. Did you ever see Chief Farrell or any of his command staff ever condone a police officer's coercing a witness's testimony?
A. I have not.
Q. Did you ever see Chief Farrell or his command staff condone a police officer's withholding of exculpatory

**Exhibit 3**

evidence?
A. No, sir.
Q. Did you ever see Chief Pastore or any of his command staff ever condone fabrication of evidence?
A. No, I haven't.
Q. Did you ever see Chief Pastore or any member of his command staff condone any police officer's coercion of a witness?
A. No.
Q. Did you ever see Chief Pastore or any of his command staff condone any police officer's withholding of exculpatory evidence?
A. No.
Q. Same questions for the New Haven Police Commission. Did you ever see the New Haven Police Commission ever condone a New Haven police officer's fabrication of evidence?
A. No, I haven't.
Q. Did you ever see the New Haven Police Commission ever condone a New Haven police officer's coercion of witness testimony?
A. Well, I need to tell you that I have little, little contact with the police commission itself, so -- but, having said that, I've never heard from them that they would agree to coercion or anything like that.

**Exhibit 3**

Q. And have you ever seen the New Haven Police Commission condone any New Haven police officer's withholding of exculpatory evidence?
A. No.
Q. Have you ever seen the New Haven Police Department's Internal Affairs Division ever condone a police officer's fabrication of testimony?
A. I have not.
Q. Have you ever seen the New Haven Police Department's Internal Affairs Division ever condone a police officer's coercion of witness testimony?
A. Again, I have not.
Q. Have you ever seen the New Haven Police Department's Internal Affairs Division ever condone a police officer's withholding of exculpatory evidence?
A. No, sir.
MR. GERARDE: Thank you. I don't have any other questions.
THE COURT: Thank you, Attorney Gerarde.
Next defense counsel.
MR. MELLEY: Thank you, Your Honor.

EXAMINATION

BY MR. MELLEY:
Q. Good morning, Mr. Maher.
A. Good morning.

C E R T I F I C A T E

I, Denae L. Hovland, RPR, CRR, RMR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the proceedings of a hearing which was held in the above-entitled action on May 6, 2026 were recorded by Denae L. Hovland by stenograph; that thereafter I transcribed in typewriting the foregoing transcript to the best of my ability; that the foregoing transcript constitutes a true and accurate transcription of the proceedings of such hearing.

/s/ Denae L. Hovland
Denae L. Hovland, RPR, CRR, RMR
Official Court Reporter
United States District Court
450 Main Street
Hartford, CT  06103

**Exhibit 3**