DRAFT: 5/21/2026

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| STEFON MORANT,<br>*Plaintiff*, | ) | 3:22-CV-630 (SVN) |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF NEW HAVEN et al.,<br>*Defendants*. | ) | May 26, 2026 |

**DRAFT JUDICIALLY NOTICED FACTS**

You must accept the following judicially noticed facts, which I have read to you at trial, as conclusive.

1. In 1991, Eric Ham was charged with and incarcerated for the murder of Markiest Alexander. On March 4, 1996, a federal jury found that NHPD officers Joseph Greene and Michael Sweeney falsely arrested and maliciously prosecuted Ham.

2. In May 1991, James Fleming was charged with felony murder, murder, attempted robbery, and conspiracy to commit robbery in the first degree in connection with the death of Christian Prince. At a 1992 trial, James Fleming was acquitted of the murder charge, no verdict was reached on felony-murder and attempted robbery charges, and he was found guilty of conspiracy to commit robbery. In 1993, he was retried on the felony-murder and attempted robbery charges and acquitted of both. James Fleming's conviction for conspiracy to commit robbery in the first-degree was affirmed by the Connecticut Appellate Court in 1995.

3. The U.S. Court of Appeals for the Second Circuit published an opinion on December 3, 1991, in *Golino v. City of New Haven*. In discussing the evidence in that case, the Second Circuit noted that Officer DiLullo testified at his deposition in that case that it was his general practice to omit exculpatory information from affidavits submitted in support of applications for warrants. The Second Circuit did not decide whether any officer acted unconstitutionally. The trial court separately dismissed the municipal liability claim against the City, finding the plaintiff had not put forward sufficient evidence of unconstitutional municipal policies or practices

4. In 1993, Maceo Streater was convicted of the murder of Terrance Gamble. On April 6, 2022, Streater was granted a full pardon.

**Exhibit 9**

5. In 1994, Daryl Valentine was convicted of the murders of Hury Poole and Andrew Paisley. In 1997, Mr. Valentine's conviction was reversed and remanded for a new trial. In 1998, Mr. Valentine was re-tried and convicted. The Connecticut Supreme Court affirmed that conviction in 2000, and subsequent habeas petitions and related post-conviction challenges were denied. In 2022, the State of Connecticut Board of Pardons and Paroles commuted Mr. Valentine's sentence and he was released.

6. In 1995, George Gould and Ronald Taylor were convicted of felony murder and other charges in connection with the death of Eugenio Vega. In 2010, a habeas court vacated their convictions, based in part on the recantation of a witness. The State appealed the 2010 decision, and in 2011, the Connecticut Supreme Court reversed the judgment of the habeas court. Mr. Gould was returned to custody, though Mr. Taylor passed away in 2011. Mr. Gould had a second habeas hearing in 2012, which resulted in denial of relief. In 2024, Mr. Gould and Mr. Taylor's convictions were vacated and the charges were dismissed.

7. In 1994, Stefon Morant was convicted of the felony murder of Ricardo Turner and Lamont Fields. Mr. Morant appealed his criminal conviction, and the conviction was affirmed by the Connecticut Supreme Court. Mr. Morant's state court petitions for a new trial and habeas relief were denied, both at the trial court and on appeal. On June 17, 2015, Mr. Morant's sentence was modified by the Connecticut Superior Court. On July 7, 2021, the Board of Pardons and Paroles granted Mr. Morant an absolute pardon.

8. In 1995, Scott Lewis was convicted of murdering Ricardo Turner and Lamont Fields. Mr. Lewis appealed his criminal conviction, and the conviction was affirmed by the Connecticut Supreme Court. Mr. Lewis's state court petitions for a new trial and habeas relief were denied, both at the trial court and on appeal. Mr. Lewis then filed a federal habeas corpus petition in the United States District Court for the District of Connecticut; in 2013, this petition was granted and his conviction was vacated. The United States Court of Appeals for the Second Circuit affirmed the District of Connecticut's order granting Mr. Lewis habeas relief on May 14, 2015. On August 5, 2015, the charges against Mr. Lewis were dismissed by the Connecticut Superior Court.

9. In 1995, Adam Carmon was convicted of murdering Danielle Taft and shooting Taft's grandmother, Charlene Troutman. In June 2023, Carmon's convictions were vacated and the charges dismissed.

10. On September 28, 1995, Frank Parise was arrested and charged with intent to distribute cocaine, and a related criminal conspiracy charge. Following a trial, Parise was found

guilty by a jury as to both charges against him. On August 18, 1997, Parise was sentenced to 240 months (20 years) in federal prison, followed by ten years of supervised release.

*****

11. From the morning of October 10, 1990, into October 11, 1990, there was torrential rainfall throughout the state of South Carolina. This heavy rain fell from Dorchester County, in which the town of Summerville, South Carolina is located, to Georgetown County, in which the town of Georgetown, South Carolina is located.

12. Summerville, South Carolina is 70.8 miles from Georgetown, South Carolina. It takes approximately 1 hour and 25 minutes to drive from Summerville, South Carolina, to Georgetown, South Carolina, under normal traffic conditions.

13. Georgetown, South Carolina is 150 miles from Fayetteville, North Carolina. It takes approximately 2 hours and 30 minutes to drive from Georgetown, South Carolina, to Fayetteville, North Carolina, under normal traffic conditions.

DRAFT: 5/21/2026

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| STEFON MORANT, | ) | 3:22-CV-630 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF NEW HAVEN et al., | ) | |
| *Defendants*. | ) | May 26, 2026 |

## **DRAFT STIPULATIONS OF FACT**

You are instructed to take these facts, to which all parties have stipulated and agreed, as true:

1. Ricardo Turner and Lamont Fields were shot and killed on October 11, 1990, at approximately 4:34 a.m. in Ricardo Turner's apartment at 634 Howard Avenue in New Haven, Connecticut.
2. The shooter used a total of five bullets in the Turner-Fields homicide.
3. Ricardo Turner was shot while standing up confronting his attacker and Lamont Fields was shot while he lay in bed asleep.
4. On April 15, 1991, Scott Lewis was arrested for the Turner-Fields homicide.
5. On February 28, 1992, Stefon Morant was arrested for the Turner-Fields homicide.
6. On June 8, 1994, Stefon Morant was convicted of felony murder related to the Turner-Fields homicide.
7. On May 10, 1995, Scott Lewis was convicted of murder for the Turner-Fields homicide.
8. From the time of his arrest on February 28, 1992, to his release on bond on April 27, 1992, Stefon Morant spent 59 days in jail.



**Exhibit 9**

9. From the time of his conviction on June 8, 1994, to his release from prison on June 17, 2015, Stefon Morant spent 21 years and 9 days incarcerated for the Turner-Fields homicide.

10. Former NHPD Sergeant William McCoy was not involved in the Turner-Fields homicide investigation after December 19, 1990.

11. If former NHPD Sergeant Francisco Ortiz were available, he would testify that Frank Graham was known to him to be a reliable informant whom he considered a credible source.

12. If Robert Lawlor Jr. were called to testify, he would testify to the following facts:

    a. Robert F. Lawlor, Sr. was born in 1946 and died on January 19, 2026.

    b. Robert F. Lawlor, Sr. passed away due to Lewy Body Dementia.

    c. Robert F. Lawlor, Sr. was born and raised on Rock Creek Road in New Haven, Connecticut.

    d. Robert F. Lawlor, Sr. graduated from Eli Whitney Technical School.

    e. Robert F. Lawlor, Sr. served in the United States Army during the Vietnam War from February 7, 1966, through December 20, 1967. He was awarded a Purple Heart for his service.

    f. Robert F. Lawlor, Sr. joined the New Haven Police Department in 1969 and served until 1995, retiring with the Rank of Lieutenant.

    g. Robert F. Lawlor, Sr. joined the State of Connecticut Division of Criminal Justice as an Inspector for the New Haven Judicial District in 1995 and served until 2016.

    h. Robert F. Lawlor, Sr. was married to his wife Gail Lawlor for 56 years.



**Exhibit 9**

13. If Attorney Richard Emmanuel were called to testify at this trial, he would recount that Diane Basilicato indicated she was "60 percent sure" that the person depicted in photo number two of the photo array shown to her at the East Haven Police Department in 2005 was the individual she saw on the night of the Turner/Fields homicide. Photo number two of that photo array depicted Michael Cardwell.

14. Jerry Rodriguez, the City of New Haven's police policies and practices expert, worked for the Los Angeles police department from 1986 through 2013, holding the ranks of officer, field training officer, sergeant, lieutenant, and captain. From 2013 to 2015 he was a sworn deputy police commissioner for the Baltimore Police Department heading its professional standards and accountability bureau. From 2016 through 2019 he was the chief of investigations for the San Francisco District Attorney's office, overseeing all investigations and investigators in cases prosecuted by that office. From 2021 to present, he has worked as a police practices consultant, educator and trainer. He holds a Bachelor of Science degree in business management, a master's degree in leadership, and is a 2008 graduate of the FBI National Academy in Quantico, Virginia.

15. If Jerry Rodriguez were called to testify at this trial, he would testify as follows:

    a. It was an accepted police practice in the 1990's for police officers to have unrecorded interviews with persons prior to taking recorded statements. It was not accepted practice to coerce a person's testimony, to fabricate a person's testimony or to suppress exculpatory information learned from any person.

    b. It was an accepted police practice in the 1990's for police officers to stop the recording of a statement for benign purposes such as a restroom break, or for detectives to confer, or review notes. It was not an accepted practice to stop a



**Exhibit 9**

recording and rewind over spoken words. It also was not an accepted practice to coerce or fabricate witness testimony while a recording is stopped.

c. The New Haven Police Department's code of conduct, Rule 15, met the requirements for a police department's code of conduct in the 1990's. He offers no opinion on whether it was common by this time for police departments to have specific written provisions on officers' obligation to disclose exculpatory and impeachment evidence.

d. The New Haven Police Department's code provision regarding police officer complaints and discipline, Rule 16, met the requirements for a police departments code provision regarding police officer complaints and discipline in the 1990's.

e. It was an accepted practice in the 1990's for police departments to provide and/or coordinate police officer continuing training as necessary to meet or exceed a state's police officer certification standards.

f. Proper supervision, proper reporting of violations and proper discipline for violations are all critical to constitutional policing.



**Exhibit 9**