**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| STEFON MORANT,<br><br>        Plaintiff,<br><br>   v.<br><br>CITY OF NEW HAVEN, et. al.,<br><br>        Defendants. | Civil Action No. 2:22-cv-00630 (SVN) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT CITY OF NEW HAVEN'S MOTION FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

LEGAL STANDARD ..................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

I.    There is no basis for a new trial on liability. ........................................................................ 2

   A.    The verdict was not against the weight of the evidence. .................................................. 2

   B.    The Court did not abuse its discretion in denying bifurcation and the City was not

      prejudiced by a joint trial. .................................................................................................. 3

   C.    The Court did not err in instructing the jury what issues remained to be decided as to

      Sweeney and the City was not prejudiced. ......................................................................... 5

II.   There is no basis for a new trial on damages. ...................................................................... 7

III.  There is no basis for remittitur, as the jury's damage award was reasonable. ..................... 12

IV.   There is no basis for setoff. ................................................................................................. 18

CONCLUSION............................................................................................................................... 20

## INTRODUCTION

Motions for a new trial always face an uphill battle, as "a litigant is entitled to a fair trial but not a perfect one, for there are no perfect trials." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984) (cleaned up). But here the City's task is particularly onerous, because the trial was about as perfect and free from error as it is possible to be. The evidence presented was all properly admitted. The jury was correctly instructed on the governing legal standards. And the jury was exceptionally meticulous in its approach, paying careful attention throughout trial and devoting three days to deliberations before issuing a nuanced verdict.

The handful of issues the City raises—none of which have any merit—only serve to underscore that point. The jury's reasoned liability verdict is incredibly well supported, with multiple overlapping layers of proof buttressing each finding. The jury's damages award is likewise based on ample evidence and falls well within the range of awards that have been upheld in like cases. Under binding Second Circuit authority, the City is not entitled to any setoff. The City's motion should be denied in full.

## LEGAL STANDARD

"A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Ortiz v. Stambach*, 137 F.4th 48, 71–72 (2d Cir. 2025) (cleaned up). Although when considering a new trial motion "the trial judge may weigh the evidence and the credibility of witnesses" itself, Second Circuit "cases teach…the high degree of deference accorded to the jury's evaluation of witness credibility, and that jury verdicts should be disturbed with great infrequency." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012).

1

A district court's denial of a Rule 59 motion for a new trial is reviewed for abuse of discretion. *Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010).[1]

Where a request for a new trial is based on alleged trial errors, the standard depends on whether the moving party timely objected. If the movant raised a contemporaneous objection, it must still demonstrate *both* the existence of legal error *and* that the error was "clearly prejudicial to the outcome of the trial." *Vogelfang v. Riverhead Cnty. Jail*, No. 04-cv-1727, 2012 WL 1450560, at *6 (E.D.N.Y. Apr. 19, 2012). Where the movant failed to raise a contemporaneous objection, it faces an even higher burden. "When a Rule 59 movant fails to object at trial, a new trial is warranted only for plain error so serious and flagrant that it goes to the very integrity of the trial." *Penz v. Washer*, No. 18-cv-4964, 2024 WL 3594572, at *2 (S.D.N.Y. July 30, 2024) (cleaned up).

### ARGUMENT

### I.    There is no basis for a new trial on liability.

### A.  The verdict was not against the weight of the evidence.

The City's throwaway argument that the verdict was against the weight of the evidence can be easily disposed of. As catalogued more fully in Plaintiff's opposition to the City's Rule 50 motion, the evidence supporting the jury's verdict, including the *Monell* verdict, was overwhelming. It included testimony from multiple high-ranking NHPD officers describing a widespread practice at the NHPD of suppressing exculpatory and impeachment evidence, admissions by the City's own Rule 30(b)(6) representative corroborating that testimony, and

---

[1] A denial of motion on the grounds that the verdict is against the weight of the evidence may not be subject to appellate review at all. *See Ortiz*, 137 F.4th at 71 (noting "ambiguity" in precedent on this point and finding it unnecessary to conclusively resolve it).

2

proven specific examples which the City knew about at the time and admittedly took no steps to address. The jury was well within its right to credit this evidence, especially as much of it was undisputed. For example, Plaintiff's experienced police practices expert described how in 40 years of policing and many years as an expert he had never seen like evidence of a widespread practice of suppression of evidence; Defendants' hired expert offered no opinion defending the NHPD practice.

Furthermore, Defendants themselves admitted Sweeney and Pettola, who offered much of this testimony, were credible. And while the City now seeks to disparage Sweeney in post-verdict briefing, tellingly, it did not dare to make that argument to the jury. In short, the great weight of the evidence amply supported the jury's verdict; there is no basis whatsoever to disturb the jury's reasoned finding based on that evidence. *See Raedle*, 670 F.3d at 418; *Icon Int'l, Inc. v. Elevation Health LLC*, 812 F. Supp. 3d 288, 316 (S.D.N.Y. 2025) (finding movants making similarly perfunctory argument "have certainly not met their burden to establish that the jury has reached a seriously erroneous result or its verdict is a miscarriage of justice") (cleaned up).

### B. The Court did not abuse its discretion in denying bifurcation and the City was not prejudiced by a joint trial.

Because whether to bifurcate a trial is within the district court's discretion, *see Getty Petroleum Corp. v. Island Trans. Corp.*, 862 F.2d 10, 15 (2d Cir. 1988), a new trial could be warranted only if both (1) the Court abused its discretion in declining to bifurcate the trial and (2) that decision prejudiced the City, *see Vichare v. AMBAC Inc.*, 106 F.3d 457, 466–67 (2d Cir. 1996); *Vogelfang*, 2012 WL 1450560, at *6; Fed. R. Civ. P. 61. The City can show neither: there was no abuse of discretion and no prejudice.

"Bifurcation is…the exception, not the rule." *Svege v. Mercedes-Benz Credit Corp.*, 329 F. Supp. 2d 283, 284 (D. Conn. 2004). The moving party bears the burden of establishing that

3

bifurcation is warranted. *Byrne v. Yale Univ., Inc.*, 17-cv-1104, 2020 WL 5258998, at *13 (D. Conn. Sept. 3, 2020). The City's arguments for bifurcation were predicated on its claims that it would promote efficiency. *See* ECF No. 233-1. The Court properly denied them at the time. *See Vichare*, 106 F.3d at 466–67 (finding it was "well within the discretion of the trial judge" to deny bifurcation where the issues were intertwined and witnesses overlapped). And hindsight has proven that correct—a bifurcated trial would have been far less efficient, as there was substantial overlap between witnesses on individual and *Monell* liability. The City's forecast that Plaintiff's *Monell* case would require multiple trials-within-a-trial was incorrect.

As the Court noted at the time, "the City [did] not articulate any separate prejudice it may suffer from a non-bifurcated trial." ECF No. 263. And although the City now asserts it was somehow prejudiced by a joint trial, it still completely fails to identify how it was prejudiced. It clearly was not.

The City conceded even if trial had been bifurcated, both phases would have had to be tried to the same jury. ECF No. 233-1 at 14; ECF No. 247 at 4 n.2. So even if the City's motion had been granted and the trial bifurcated, any evidence implicating Raucci would have been presented to this same jury in any event before it considered the City's liability. And that's leaving aside that this evidence was directly relevant to Plaintiff's *Monell* theories and admissible against the City. *See* ECF No. 210 at 58–60 (ruling, in summary judgment order, that evaluation of Pastore's reaction to Raucci's misconduct and failure to sanction him or supervise him more closely was a factual issue for the jury regarding Plaintiff's ratification *Monell* theory); *see also* ECF No. 145 at 39 (Plaintiff's summary judgment opposition argument that Raucci's misconduct, as outlined in the FBI investigation, supported his theory of *Monell* based on the City's custom of suppression of *Brady* material); *see id.* (Plaintiff's summary judgment

opposition argument that Raucci's misconduct was directly relevant to his theory of *Monell* liability for the City's failure to supervise and discipline its officers); *see also* ECF No. 247 at 6–7 (Plaintiff's bifurcation opposition argument that prior instances of Raucci's misconduct would be admissible to support its *Monell* theories of liability against the City). The City notably cannot identify any evidence that was admitted against the individual defendants that it even claims would not have been admissible against the City given the theories of *Monell* liability.

### C. The Court did not err in instructing the jury what issues remained to be decided as to Sweeney and the City was not prejudiced.

To be entitled to a new trial based on the Court's instructions, the City would have to establish both that "(1) the instructions were erroneous, and (2) the error was prejudicial." *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 147 (2d Cir. 2025). "Jury instructions are erroneous if they mislead the jury or do not adequately inform the jury of the law, and error is prejudicial where…the error, in light of the charge as a whole, improperly influenced the jury's verdict." *Id.* (cleaned up). Again, the City fails at both steps.

The City cannot demonstrate any error in the Court's ruling on Sweeney's partial summary judgment motion. The only argument it makes (confined to a footnote) recycles an argument the Court warned "border[ed] on frivolous." ECF No. 393 at 29. As the Court correctly held at summary judgment, the undisputed record demonstrated that Sweeney had intentionally withheld material favorable information from the prosecutor. ECF No. 210 at 31–34. And the trial record further substantiated that finding, as Sweeney admitted that he observed with his own eyes Raucci threaten Ruiz and feed him information, which he understood to be illegal and unconstitutional, and that Ruiz made it "crystal clear" to him that he knew nothing about the Turner-Fields murders, and that the statement used against Plaintiff at trial was not his words, but Raucci's. Trial Tr., ECF No. 580 at 111:1–112:7; Trial Tr., ECF No. 581 at 172:18–22.

Sweeney also admitted that he did not create any documentation concerning Raucci's misconduct in coercing Ruiz or Ruiz's admissions. *See* Trial Tr., ECF No. 581 at 199:20–200:1. Sweeney further admitted that, had a jury had information about what happened on the night he observed Raucci coercing Ruiz, it would have "ma[d]e it impossible to call Ovil Ruiz as a witness because it would make him completely incredible." *Id.* at 211:16–20. *See also* Pl.'s Tr. Ex. 68-C (Q: … A defense lawyer would have had a very easy time impeaching Mr. Ruiz with that evidence at trial, correct? A. Correct. … Q. Because that evidence would devastate the case, right? A. Absolutely it would.").

Nor can the City demonstrate any error in instructing the jury that the Court had made this finding. Of course, the jury had to know what issues it was and was not deciding. Courts have repeatedly endorsed like instructions in similar circumstances. *See Mem'l Drive Consultants, Inc. v. ONY, Inc.*, 29 F. App'x 56, 62 (2d Cir. 2002) (where district court had granted partial summary judgment for plaintiff on contract claim but quantum meruit claim was tried to jury, rejecting argument court erred in instructing jury that it was awarding approximately $1.5 million on contract claim); *Ewing v. 1645 W. Farragut LLC*, 90 F.4th 876, 889 (7th Cir. 2024) (where district court granted the plaintiff's summary judgment motion on liability but the issue of damages remained for trial, affirming district court's instruction to jury that provided the jury "with the district court's summary judgment findings"); *Watchous Enters., LLC v. Mournes*, 87 F.4th 1170, 1178–1182 (10th Cir. 2023) (where district court had found facts not in genuine dispute at summary judgment, it properly instructed jury to find those facts established at trial); *Ridgeway v. Walmart Inc.*, 946 F.3d 1066, 1082 (9th Cir. 2020) (where district court had granted partial summary judgment for plaintiffs, affirming court's instructions which "accurately informed the jury that [the court] had previously found" certain issues established but made clear

what factual questions remained for the jury to decide); *Weber v. FujiFilm Med. Sys. U.S.A., Inc.*, 933 F. Supp. 2d 285, 297–98 (D. Conn. 2013) (rejecting argument court erred in instructing jury about finding that prior ruling had preclusive effect on portion of claim), *aff'd in relevant part, Weber v. Tada*, 589 F. App'x 563 (2d Cir. 2014).[2]

While the failure to show error is of course fatal to the City's argument, the City also fails to demonstrate any prejudice. The Court instructed the jury it must consider the evidence against each defendant separately. *See* ECF No. 557 at 15. And Plaintiff emphasized that the *reason* there was a liability finding against Sweeney was he had admitted his responsibility—which he did again at trial. *See* Trial Tr., ECF No. 609 at 3435:15–18. The City does not and cannot argue that this incredibly compelling evidence from Sweeney was inadmissible. Most importantly, given the overwhelming evidence proving that both Sweeney and Raucci suppressed material exculpatory evidence from trial, the City cannot demonstrate any reasonable likelihood that omitting this instruction from the Court would have led to a different result. *See, e.g.*, *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 155 (2d Cir. 2014) (holding even if instructions were erroneous, they did not prejudice defendants where "we doubt that the presumably reasonable jury could have" reached a different result based on them).

II.     **There is no basis for a new trial on damages.**

As described below, the evidence of the damage Plaintiff suffered was both extraordinary and almost entirely unrebutted; the jury's damage award is well within the range of awards that have been upheld in like cases. The City's contention that the award must have been the result of

---

[2] Notably, the City does not ever suggest what the Court could have done instead. Nor does it cite a single case finding error based on a court's instruction to the jury about its own prior factual or legal findings.

passion or prejudice incited by Plaintiff's summation is completely baseless. Counsel's

arguments were proper. And even improper arguments are almost never grounds for a new trial:

"Rarely will an attorney's conduct so infect a trial with undue prejudice or passion as to require

reversal. In particular, where the jury's verdict finds substantial support in the evidence,

counsel's improper statements will frequently be *de minimis* in the context of the entire trial."

*Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005) (cleaned up).

First, what the City characterizes as a "send a message" argument was made in the

context of liability, not damages. And the "message"—which the City notably omits—was that

based on the evidence the City of New Haven was legally responsible for Plaintiff's wrongful

conviction:

> In their opening statement, the City said so it's the position of the City of New Haven that this is not a case of wrongful conviction. Say it loud and clear with your verdict. This is a wrongful conviction of an innocent man. And this wrongful conviction was caused by defendants' misconduct, including the systemic failures of the NHPD. Say it loud enough and clearly enough that the City of New Haven can finally hear it.

Trial Tr., ECF No. 609 at 3463:4–12. There is nothing remotely wrong with that argument.

Indeed, the Second Circuit has explicitly blessed a like argument as completely permissible:

> The defendant maintains that the plaintiff's attorney injected bias into the proceedings by asking the jury to "send a message" with its damage award. Specifically, the defendant claims that these comments were a plea to the jury to award *de facto* punitive damages contrary to the law. This contention lacks merit. As the trial court stated, "counsel's comments merely suggested that the jury should send a message that this country's civil rights laws are vigorously enforced and that plaintiff should be fully compensated despite the fact that the defendant is a government agency, concepts that are totally appropriate."

*Ramirez v. New York City Off-Track Betting Corp.*, 112 F.3d 38, 40 (2d Cir. 1997) (cleaned up);

*see Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 271 (2d Cir. 1999) (rejecting argument

counsel improperly asked the jury to "send a message" to the defendant that "contracts mean

something"); *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 310 (1986) ("Section

8

1983 presupposes that damages that compensate for actual harm ordinarily suffice to deter constitutional violations."); *Williams v. Marinelli*, 987 F.3d 188, 200 (2d Cir. 2021) ("The 'chief goals' of § 1983 are to provide compensation for violations of federal rights, and to deter such violations."); *Bond v. Sheriff of Ottawa Cnty.*, 173 F.4th 1265, 1308 n.29 (10th Cir. 2026) (noting "it would be consistent with § 1983's deterrent purpose to seek redress for compensable injuries and argue to the jury that a generous award for those injuries will have *the effect* of deterring future tortious conduct.").[3]

Nor did counsel ever tell the jury it should base any portion of its verdict on passion or prejudice instead of evidence. To the contrary, counsel specifically told the jury that "Mr. Morant and his legal team want nothing more but for you to decide this case based on the evidence, the mountains of evidence that we provided to you." Trial Tr., ECF No. 609 at 3568:7–20. The only disagreement with the City's counsel was whether there was anything wrong with the jury *also* being angry *based on that evidence*, including the overwhelming evidence of systemic misconduct at the NHPD that the City ignored at trial (and still ignores in its post-trial briefing). This was not improper. *See Ramirez*, 112 F.3d at 40.[4]

---

[3] Even the cases the City cites demonstrate the propriety of Plaintiff's argument. *See, e.g., Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1033 (N.D. Ill. 2011) (holding plaintiff could properly argue that verdict will "deter the defendant officers and other Chicago police officers from future misconduct"; precluding same argument against the City solely because *Monell* liability was not being addressed at that trial).

[4] The Supreme Court addressed an analogous issue with respect to judges in *Liteky v. United States*, 510 U.S. 540 (1994). It distinguished between biases or prejudices (which are improper) and assessments of a party acquired during the proceedings based on the evidence (which are both natural and proper):

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and

9

In an indication the argument was proper, the City made no objection to this or any other portion of Plaintiff's closing argument at the time. *See id.* ("[T]he fact that no objection was made to counsel's closing at the time is telling."). And because the City failed to object during trial, it could not be entitled to relief unless it could show an "error…so fundamental that gross injustice would result." *Penz*, 2024 WL 3594572, at *2; *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 51 (2d Cir. 1998) (noting because failure to object to allegedly improper closing "deprives the trial court of an opportunity to deal with those remarks then and there," relief would only be warranted for error "so serious and flagrant that it goes to the very integrity of the trial" (cleaned up)); *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 17–18 (2d Cir. 1996) (holding despite arguably improper remark in summation movant could not meet high burden of showing entitlement to a new trial where there was no contemporaneous objection).

The City cannot come close to meeting that high bar. Again, the City has shown no impermissible argument at all. And even assuming *arguendo* any remark was improper, it was trivial in the context of the entire four-week trial and Plaintiff's 50 pages' worth of closing arguments.[5] *See Marcic*, 397 F.3d at 127–28 (rejecting argument that improper arguments required new trial where they "occurred in the context of a summation spanning thirty-seven

---

necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task.

*Id.* at 550–51. The Court further clarified that even judicial "expressions of…anger" arising out of the behavior of the parties or counsel are similarly understandable and human and do not create even the appearance a judge may be making decisions on an improper basis. *Id.* at 555–56. Similarly, juries are not prohibited from having natural human emotions and judgments in response to the evidence presented in front of them, so long as their verdicts are based on the evidence and the law.

[5] *See* Trial Tr., ECF No. 609 at 343:13–3474:16 (Plaintiff's Closing), 3568:7–3577:9 (Plaintiff's Rebuttal Closing).

pages of trial transcript, at the end of a week-long trial in which voluminous evidence was introduced that sufficed to support the jury's verdict"); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1289 (2d Cir. 1990) (affirming decision that admittedly improper argument did not unduly affect the jury in light of the entire record).

As described above, the evidence supporting the verdict was overwhelming. Furthermore, with respect to damages, Plaintiff repeatedly exhorted the jury to base their compensatory damage award on the law and the evidence, not sympathy. *See, e.g.*, Trial Tr., ECF No. 609 3474:11–14 ("We ask only that you follow the law on damages and dispassionately value the full measure of the harm they have caused, to not discount that value, not even one penny."), 3576:21–3577:6 ("Hold them accountable for every single penny of the undisputable damages that they caused.… Not because of sympathy, but because of the overwhelming evidence that we've presented to you over this trial and the utter lack of a defense."). *See, e.g.*, *Session v. Rodriguez*, No. 03-cv-943, 2013 WL 12249739, at *2 (D. Conn. Aug. 9, 2013) (rejecting argument that closing improperly inflamed emotions where counsel "told the jury several times…*not* to sympathize with his client"), *aff'd,* 626 F. App'x 329 (2d Cir. 2015).

Similarly, the Court's charge properly instructed the jury to determine damages based on evidence, not sympathy, and that closing arguments were not evidence. *See, e.g.*, Trial Tr., ECF No. 609 at 3426:9–12 ("You should be guided by dispassionate common sense. Compensatory damages must not be based on speculation or sympathy. They must be based solely on evidence presented at trial."), 3428:17–3429:4 ("Any award you make should be fair and reasonable in light of all of the evidence presented at trial, and should be guided by common sense, not bias, passion, sympathy, speculation, or guesswork."), 3376:2–11 (verdict must be based on evidence and law, not bias or sympathy), 3578:10–3579:7 (same), 3382:11–15 (closing arguments are not

11

evidence), 3429:5–16 (same). "It is a fundamental proposition that a jury is presumed to follow the instructions of the trial judge." *Britt v. Garcia*, 457 F.3d 264, 272 (2d Cir. 2006) (cleaned up).

### III.      There is no basis for remittitur, as the jury's damage award was reasonable.

"A jury's damages award may not be set aside unless the award is so high as to shock the judicial conscience and constitute a denial of justice." *Manganiello*, 612 F.3d at 168 (cleaned up). "We have long held that, when damages are awarded, calculation of damages is the province of the jury. Therefore, in reviewing damages awards, we accord considerable deference to the factual findings of both judge and jury. Although a review of comparable cases is appropriate, we need not average the high and low awards; we focus instead on whether the verdict lies within the reasonable range." *Restivo v. Hessemann*, 846 F.3d 547, 587 (2d Cir. 2017) (cleaned up, internal citations omitted). Here, the jury's award was entirely reasonable based on the evidence presented; the City cannot come close to meeting the high standard necessary to justify remittitur.

The City erroneously reduces the award to solely compensation for time incarcerated, which it then breaks down to a per-year rate. But the jury was properly instructed to compensate for four separate categories of damages: loss of liberty, emotional pain and suffering, physical harm, and loss of a normal life. *See* ECF No. 557 at 40. Plaintiff demonstrated ample evidence of each of these types of damages. Multiple witnesses, including Plaintiff himself and psychological expert Dr. Adeyinka Akinsulure-Smith, testified in detail about how Plaintiff suffered from the time of his wrongful arrest and conviction, throughout his incarceration, to after he was released but before he was granted a pardon in 2015, through today, and also how he will continue to suffer for the rest of his life.

12

Plaintiff presented extensive testimony about his loss of liberty, or in his words, being locked in a "cage" for twenty-one years. *See, e.g.*, Trial Tr., ECF No. 604 at 2902:11–19. Mr. James Jeter described how each cell at a facility where Plaintiff was incarcerated for years "was a coffin." *Id.* at 2808:7–2809:15. Plaintiff testified about the traumatic effect of having his family visit him in prison due to his loss of liberty, and how he'd be strip searched after each visit. *See id.* at 2915:4–25; *see also* Trial Tr., ECF No. 606 at 3083:17–3084:5 (Dr. Akinsulure-Smith testimony regarding the pain Plaintiff felt following family visits).

Plaintiff also amply demonstrated that he endured, and continues to endure, emotional pain and suffering. For example, Dr. Akinsulure-Smith testified that, due to his wrongful conviction and incarceration, Plaintiff currently suffers from chronic Post-Traumatic Stress Disorder, which she explained as akin to experiencing "a car accident every day of your life for 21 years." *Id.* at 3078:19–3079:13; *see also id.* at 3093:13–3094:6 (testifying that Mr. Morant's symptoms will continue for the rest of his life). As a result of being incarcerated, Plaintiff presented testimony that he continues to experience the symptoms of chronic PTSD including hypervigilance, intrusive thoughts, avoidance, and negative cognitions. *See id.* at 3082:25–3083:16, 3087:24–3088:1 (Dr. Akinsulure-Smith discussing Plaintiff's hypervigilance and hyperarousal); 3087:5–15, 3089:10–13, 3089:23–3091:9, 3092:16–3093:5 (Dr. Akinsulure-Smith discussing Plaintiff's intrusion symptoms including nightmares and flashbacks); 3115:7–11 (wife, Kimberly Morant, testifying to Plaintiff's frequent nightmares); 3087:16–19, 3088:7–12, 3093:13–21, 3102:22–3103:6 (Dr. Akinsulure-Smith discussing Plaintiff's avoidance); 3119:7–11 (wife, Kimberly Morant, testifying to Plaintiff's self-isolation); 3087:20–23 (Dr. Akinsulure-Smith discussing Plaintiff's negative cognitions).

13

Plaintiff also presented extensive testimony on all the family moments, both momentous and quotidian, that he missed out on as a result of his incarceration. *See, e.g.*, *id.* at 3063:23–3065:15 (son, Julian Sobin, testifying about all the occasions Plaintiff missed due to his incarceration; "anything you can think of, he's missed"); Trial Tr., ECF No. 603 at 2743:14–24 (daughter, Twyla Washington, testifying that Plaintiff "missed everything"); Trial Tr., ECF No. 604 at 2928:10–2931:8 (Plaintiff testifying on the family milestones he missed); Trial Tr., ECF No. 603 at 2743:9–13 (daughter, Twyla Washington, testifying that when Plaintiff's younger brother died while he was still incarcerated, "[i]t broke him"); Trial Tr., ECF No. 605 at 3020:20–3021:25 (mother, Linda Morant, discussing Plaintiff's mourning the death of his younger brother "all alone"); Trial Tr., ECF No. 604 at 2936:13–2937:23 (Plaintiff testifying about mourning the loss of his brother alone and in shackles).

Additionally, the death of Plaintiff's son who struggled with substance abuse issues caused him extreme emotional pain and suffering, beyond what a normal grieving father would feel, because, due to his wrongful conviction, Plaintiff felt "enormous feelings of guilt as a result of his son's dying, death, and overdose." Trial Tr., ECF No. 606 at 3091:21–3092:15 (Dr. Akinsulure-Smith testimony).

Plaintiff also proved that he suffered physical harm as a result of his wrongful conviction and incarceration. Plaintiff testified about his chronic back and shoulder injuries as a result of the lack of an adequate mattress and medical care and losing five teeth as a result of a lack of adequate dental care. *See* Trial Tr., ECF No. 604 at 2887:17–2888:20.

Further, Plaintiff and Mr. Jeter described the unrelenting atmosphere of violence in prison. *See id.* at 2810:23–2811:12 (Jeter testimony); *id.* at 2890:10–2891:14 (Plaintiff testimony). Plaintiff presented a particularly vivid example of physical harm: enduring the

14

extreme deprivations that accompanied his time in solitary confinement for eleven months for an infraction he did not commit. During that time, he was shackled whenever out of his cell, which was infrequent, and could only take three showers per week. *See* Trial Tr., ECF No. 606 at 3084:6–3086:8 (Dr. Akinsulure-Smith testimony); Trial Tr., ECF 604 at 2900:25–2904:10 (Plaintiff's testimony). For approximately six months during that time period, Plaintiff was exposed to light twenty-four hours a day, seven days a week. *See* Trial Tr., ECF 606 at 3084:19–3085:14 (Dr. Akinsulure-Smith testimony).

Plaintiff presented evidence of his loss of a normal life as he continues to navigate the world post-wrongful incarceration. For example, Plaintiff's family testified to the difficulties of reestablishing their relationships with him as a result of his lengthy wrongful incarceration. *See id.* at 3114:12–23, 3116:2–18 (wife, Kimberly Morant, discussing the challenges of Plaintiff's ability to cope with everyday life post-incarceration and how it negatively affects their relationship); Trial Tr., ECF No. 603 at 2745:20–2746:3 (daughter, Twyla Washington, discussing the "ups and downs" of rebuilding her relationship with Plaintiff as an adult); Trial Tr., ECF No. 605 at 3018:21–3019:10 (mother, Linda Morant, discussing the difficulties of relating to her son post-wrongful incarceration); *see also* Trial Tr., ECF No. 606 at 3089:17–3091:20 (Dr. Akinsulure-Smith testifying on the negative effects of Plaintiff's wrongful incarceration on his family relationships). Plaintiff's wrongful incarceration has led to inabilities to display physical affection to his wife, causing them to sleep on separate mattresses. *See id.* at 3115:3–16 (wife, Kimberly Morant's, testimony); Trial Tr., ECF No. 604 at 2916:1–23 (Plaintiff's testimony).

Notably, this extensive damages testimony was essentially unrebutted. Defense counsel did not ask a single question of any of his non-expert, non-alibi damages witnesses, did not ask

15

Mr. Morant any questions about the extent of his damages, did not question Dr. Akinsulure-Smith's diagnosis, and did not present any contrary opinion from any expert. It was well within the jury's province to evaluate each of these harms and calculate the appropriate damage award. *See, e.g.*, *Restivo*, 846 F.3d at 587 ("Calculation of damages is the province of the jury.") (cleaned up).

But even assuming the award could appropriately be characterized by the $1.8 million per year of incarceration figure the City suggests, that would still not be close to "conscience-shocking" or "a denial of justice" as would be required to disturb the jury's damages verdict. *Id.* First—and contrary to the City's suggestion—the *Restivo* court *never* said $1 million per year represented the "upper limit" of permissible compensation. Rather, the court suggested this was *not* at the upper limit, "easily reject[ing]" defendant's challenge to the size of the verdict, holding the district court "plainly" did not abuse its discretion in rejecting the excessiveness challenge, and noting "Plaintiffs and the district court cited scores of cases, federal and state, with awards in a similar range." 846 F.3d at 588 & n.29.

Indeed, verdicts representing much higher yearly amounts than $1.8 million have been awarded and approved as reasonable, particularly recently. *See Gillispie v. Miami Twp.*, No. 23-3999, 2025 WL 1276900, at *8–9 (6th Cir. May 2, 2025) (affirming reasonableness of $45 million award for 20 years of wrongful imprisonment, or nearly $2.5 million per year, despite no expert evidence of any mental health condition or any physical ailments); *Brown v. City of Chicago*, No. 19-cv-4082, 2025 WL 2785426, at *32 (N.D. Ill. Sept. 30, 2025) (rejecting excessiveness challenge to $50 million award for ten-year detention, or $5 million per year); *Fulton v. Bartik*, No. 20-cv-3118, 2026 WL 884774, at *21–22 (N.D. Ill. Mar. 31, 2026) (rejecting excessiveness challenge to $120 million award—$60 million per plaintiff incarcerated

16

for 16 years each—or $3.75 million per year); *Lobato v. Las Vegas Metro. Police Dep't*, No. 19-cv-01273, 2026 WL 891887 (D. Nev. Mar. 31, 2026) (rejecting post-verdict challenges to $34 million damages award for 16 years' wrongful imprisonment, or approximately $2.125 million per year); Verdict Sheet at 3, *Weppner v. County of Erie*, No. 22-cv-00519 (W.D.N.Y. Nov. 25, 2025) (jury award of $80 million for 27 years' wrongful incarceration or nearly $3 million per year).

Further, when assessing comparator verdicts, the Court "must take into account inflation." *Gonzalez v. United States*, 80 F.4th 183, 199 (2d Cir. 2023). Particularly when adjusting for inflation, there are many more verdicts well above the $1.8 million per year metric that have been approved over the past 25 years. *See, e.g.*, *White v McKinley*, 605 F.3d 525, 534–36, 539 (8th Cir. 2010) (affirming 2008 verdict of $14 million for 5 ½ years' wrongful imprisonment, or over $4 million per year in 2026 dollars); *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008) (affirming 2008 verdict of $9 million award for 4 years' wrongful imprisonment, or over $3.5 million per year in 2026 dollars); *Jimenez v. City of Chicago*, 732 F.3d 710, 712 (7th Cir. 2013) (affirming 2012 verdict of $25 million for 16 years' wrongful imprisonment, or over $2.3 million per year in 2026 dollars); *Newsome v. McCabe*, 319 F.3d 301, 302 (7th Cir. 2003) (affirming 2001 verdict of $15 million award for 15 years' wrongful imprisonment, or over $1.9 million per year in 2026 dollars).[6] Even adjusting the 2014 *Restivo* verdict for inflation would increase the figure approved by the Second Circuit to over $1.4 million per year—not far off the award here. *See also Limone v. United States*, 579 F.3d 79, 103–

---

[6] All inflation adjustments are made with the CPI Inflation Calculator. *See* U.S. BUREAU OF LABOR STATISTICS, CPI INFLATION CALCULATOR, https://www.bls.gov/data/inflation_calculator.htm.

17

07 (1st Cir. 2009) (affirming 2007 award of $96 million based on baseline of $1 million per year of wrongful incarceration, or over $1.6 million in 2026 dollars).[7]

The City points to other lower verdicts in other cases, but that is irrelevant, as the Court may not "average the high and low awards" but rather must "focus on whether the verdict lies within the reasonable range." *Restivo*, 846 F.3d at 587–88 (rejecting similar argument, cleaned up).[8] The award here plainly does. There is no basis to disturb the jury's assessment of damages here.

**IV.    There is no basis for setoff.**

Finally, there is no basis for setoff, either. In *Restivo*, the Second Circuit considered a nearly identical issue—whether a § 1983 defendant was entitled to a setoff of a prior settlement under the New York unjust-conviction compensation statute—and concluded no setoff was permitted.[9] 846 F.3d at 581–87. The same applies here.

---

[7] The *Newton* case the City cites which ordered remittitur on a 2010 verdict is easily distinguishable on its facts. There, the plaintiff sought compensation for 12 years of wrongful conviction for rape, but stipulated he had spent the immediately preceding 10 years lawfully imprisoned for a separate rape conviction. Newton sought compensation solely for his "pain and suffering" during the 12 years of wrongful incarceration (i.e., not for any post-release injuries), suffered no physical injuries or abuse in prison, and was the sole witness on damages. *Newton v. City of New York*, 171 F. Supp. 3d 156, 172–77 (S.D.N.Y. 2016). Even so, the metric the court found reasonable is over $1.5 million per year in 2026 dollars (as measured from the 2010 verdict, or over $1.4 million per year if measured from the remittitur order).

[8] The statutory rate the Connecticut legislature set for no-fault compensation is also plainly irrelevant to the legal question before the Court: whether the jury's award is so far outside the range of reasonable awards as to "shock the judicial conscience." *Restivo*, 846 F.3d at 587. *Cf. Limone*, 579 F.3d at 105 (rejecting a similar argument and noting state compensation statutes "do not purport to measure the harm actually inflicted by wrongful incarceration; rather, each reflects a legislative choice to limit the sovereign's liability").

[9] The City's failure to address this leading binding authority on this point, particularly given the City's extensive citation to the *Restivo* decision elsewhere in its brief, is troubling.

18

As the *Restivo* court explained, there is a three-step process for determining whether federal or state law applies to determine setoff in a § 1983 suit like this one: (1) if federal law is not deficient, federal law applies; (2) if federal law is deficient, state law applies, unless (3) state law is inconsistent with federal law or policy, including the purposes of § 1983. Id. at 582–87.

And the *Restivo* court held that no federal statute applies and federal common law is deficient on this setoff question for three reasons, all of which apply equally here. First, the source of the prior payment (the State) could not have been joined in the § 1983 suit and could not have been held jointly liable for these causes of action. *Id.* at 583. Second, the jury did not consider whether the State was liable or to what extent (understandably, because the State was not a proper party on any of these causes of action). *Id.* at 583–84. Third, federal common law barring double recovery does not apply because under these circumstances "no total amount of loss can be ascertained." *Id.* at 583.

Assuming, as the City argues, Connecticut law would require setoff of the state compensation award, the next question is whether such a setoff would be inconsistent with the federal policy underlying § 1983. And again, *Restivo* teaches that it is. Specifically, a rule that "allows nonsettling tortfeasors to bear less than the full cost of the harm they inflicted" is "inconsistent with the deterrent goal of Section 1983." *Id.* at 586; *see also id.* at 585 ("The deterrence goal of Section 1983 is best served by internalizing to the violator the costs of violating federal rights.") (cleaned up, citation omitted). As a result, any setoff could only be based on a "proportional reduction" based on the State's "proportionate fault." *Id.* at 586. But, as in *Restivo*, not only has no fault been attributed by the jury to the State, that concept makes no sense given that the prior award was made under a compensation statute which did not require any proof of fault. *Id.*

19

In sum, just as in *Restivo*, "there is no basis for applying a setoff to the damages awarded on [Plaintiff's] Section 1983 claims." *Id.* at 587; *see also Dukes v. City of Albany*, 492 F. Supp. 3d 4, 13 (N.D.N.Y. 2020) (holding under *Restivo* a trial award under New York unjust conviction compensation statute could not be setoff from jury verdict in § 1983 wrongful conviction suit). The City's request for a setoff must be denied.[10]

**CONCLUSION**

There is no basis for a new trial and no basis to reduce the jury verdict. The City's motion should be denied in full.

Dated: July 17, 2026                                   Respectfully Submitted,

                                                      */s/Anna Benvenutti Hoffmann*
                                                      Anna Benvenutti Hoffmann,
                                                      phv208203
                                                      Nick Brustin, phv08609
                                                      Emma Freudenberger, phv08602
                                                      Amelia Green, phv208992
                                                      Grace Paras, phv208762
                                                      Elsa Mota, phv208184
                                                      Katie Cion, phv20899
                                                      Neufeld Scheck Brustin
                                                      Hoffmann & Freudenberger, LLP
                                                      200 Varick Street, Suite 800
                                                      New York, NY 10014

---

[10] Yet another flaw in the City's argument is any setoff of a prior award must be predicated on a determination that "both…represent common damages." *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989). Notably, as the City itself points out, the damages addressed by the Claims Commissioner differ from those awarded at trial; for example, the award from the Claims Commissioner includes damages for economic harms, *see* ECF No. 619-1 at 16; ECF No. 619-2 at 6–8, but Plaintiff did not seek compensation for any economic injury at trial. Notably the City, as the party seeking a setoff, bears the burden of demonstrating its entitlement to it, including "the extent to which a recovery against it would be duplicative" of the prior award. *See Chen v. Yuen*, No. 04-cv-06579, 2015 WL 7758532, at *4 (S.D.N.Y. Dec. 1, 2015); *Maldonado v. Aangan of India LLC*, No. 20-cv-9598, 2024 WL 3910812, at *19 (S.D.N.Y. July 22, 2024), *report and recommendation adopted*, No. 20-cv-9598, 2024 WL 3887130 (S.D.N.Y. Aug. 20, 2024). It has not and cannot do so.

Tel: (212) 965-9081
Fax: (212) 965-9084
nick@nsbhf.com
anna@nsbhf.com
emma@nsbhf.com
amelia@nsbhf.com
grace@nsbhf.com
elsa@nsbhf.com
kcion@nsbhf.com

Kenneth Rosenthal, ct05944
Law Office of Kenneth Rosenthal
One Audubon Street, 3d Fl.
New Haven, CT 06511
(203) 915-4235
krosenthal@gs-lawfirm.com

*Attorneys for Plaintiff Stefon Morant*

21

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*/s/ Anna Benvenutti Hoffmann*