**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| STEFON MORANT, <br><br>     *Plaintiff,* <br><br> v. <br><br> CITY OF NEW HAVEN, ET AL., <br><br>     *Defendants.* | No. 3:22-cv-630 (SVN) |

**DEFENDANT CITY OF NEW HAVEN'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT
PURSUANT TO FED. R. CIV. P. 50(b)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................ii

ARGUMENT ........................................................................................................................ 1

   I.   There is insufficient evidence to support the jury's finding of a widespread pattern or practice of withholding exculpatory evidence. ................................ 1

      A.   Isolated incidents do not establish a *Monell* policy........................................ 3

      B.   The testimony of NHPD officers does not establish a *Monell* policy............. 6

      C.   The Rule 30(b)(6) testimony does not establish a *Monell* policy. .................. 7

   II.   There is insufficient evidence to establish that any custom was the moving force    behind the constitutional violation........................................................ 9

CONCLUSION.................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agosto v. NY City Dep't of Educ.,*
   982 F.3d 86 (2d Cir. 2020)...................................................................................... 1

*Bd. of Cnty. Comm'rs v. Brown,*
   520 U.S. 397 (1997) .............................................................................................. 1

*Bradshaw v. City of New York,*
   855 F. App'x 6 (2d Cir. 2021) .............................................................................. 6

*Carmichael v. City of New York,*
   34 F. Supp. 3d 252 (E.D.N.Y. 2014)................................................................... 5

*Cipolloni v. City of New York,*
   758 F. App'x 76 (2d Cir. 2018) ........................................................................... 5

*City of Canton v. Harris,*
   489 U.S. 378 (1989) .............................................................................................. 9

*Connick v. Thompson,*
   563 U.S. 51 (2011) ............................................................................................ 1, 9

*Edelman v. NYU Langone Health Sys.,*
   141 F.4th 28 (2d Cir. 2025) ................................................................................. 6

*Floyd v. City of New York,*
   959 F. Supp. 2d 540 (S.D.N.Y. 2013) ................................................................ 5

*Golino v. City of New Haven,*
   761 F. Supp. 962 (D. Conn. 1991) ...................................................................... 4

*Golino v. City of New Haven,*
   950 F.2d 864 (2d Cir. 1991)................................................................................. 4

*Iacurci v. Lummus Co.,*
   387 U.S. 86 (1967) ............................................................................................... 2

*Jeffes v. Barnes,*
   208 F.3d 49 (2d Cir. 2000).................................................................................... 7

*Jones v. Town of East Haven,*
   691 F.3d 72 (2d Cir. 2012).................................................................................... 3

*Outlaw v. City of Hartford,*
    884 F.3d 351 (2d Cir. 2018)............................................................................ 3, 4, 6

*Sorlucco v. New York City Police Dep't,*
    971 F.2d 864 (2d Cir. 1992)................................................................................ 5

*Tieman v. City of Newburgh,*
    2015 WL 1379652 (S.D.N.Y. Mar. 26, 2015) ....................................................... 4

**Statutes**

42 U.S.C. § 1983................................................................................................ 1, 3

**Other Authorities**

Rule 30(b)(6)........................................................................................................ 7

The City has renewed its motion for judgment on Counts Seven and Nine. *See* D.E. 618. In his opposition, Plaintiff concedes that judgment should enter for the City on Count Nine, *see* D.E. 637 at 4 n.1, but contends that the evidence supports the jury's verdict on Count Seven. In so doing, Plaintiff obscures two distinct failures of proof. First, even crediting Plaintiff's witnesses, the evidence did not establish that the actual practice found by the jury—suppression of evidence favorable to criminal defendants—was sufficiently widespread and settled so as to carry the force of law as of January 1991. Second, even assuming such a practice existed, the evidence did not establish it was the moving force behind Plaintiff's claimed injuries.

## ARGUMENT

### I. There is insufficient evidence to support the jury's finding of a widespread pattern or practice of withholding exculpatory evidence.

"A municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Instead, a plaintiff must show that, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Agosto v. NY City Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020) (emphasis in original). Such deliberate conduct may be shown through an official custom, but only where the custom is "so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

1

Here, the jury found that the City fostered a widespread practice or custom of suppressing favorable evidence. *See* D.E. 569 at 4.[1] But it is undisputed that the NHPD Code of Conduct expressly *prohibited* employees from withholding or destroying "any evidence of any kind." D.E. 618-2 at 4. Every officer witness acknowledged that the City expressly forbade them from fabricating evidence, coercing witness statements, or withholding favorable evidence. *See* Trial Tr. 450:9–451:2 (Sweeney); Trial Tr. 1041:16–1045:16 (Maher); Trial Tr. 2618:17–2622:8 (Sullivan). While a formal policy does not categorically foreclose proof of a contrary custom, it certainly makes it harder: Plaintiff had to prove not only that this formal policy was not followed, but that it was violated so persistently and pervasively that the City's true custom was to *violate* its formal policy by suppressing favorable evidence.

Plaintiff's proof fell into four broad categories: (1) generalized testimony about report writing, note retention, and disclosure; (2) a limited set of other, unrelated investigations; (3) alleged City inaction after notice of violations; and (4) expert opinion. But even if credited, and taken cumulatively, this evidence is not of a

---

[1]     The jury did not find any other widespread practice or custom. Likewise, it did not find that Plaintiff established a custom of suppressing evidence through deliberate indifference or ratification on the part of Chief Pastore. *See id.* Plaintiff therefore contends that, even if the evidence is insufficient to support the jury's finding of a widespread practice, the only remedy is a "new trial on the other two theories, not judgment as a matter of law." D.E. 637 at 2–3 (citing *Iacurci v. Lummus Co.*, 387 U.S. 86 (1967)). *Iacurci* stands for the proposition that unanswered interrogatories cannot be treated as *adverse findings*; but the Court need not assume adverse findings on Plaintiff's alternate theories in order to grant judgment notwithstanding the verdict on the theory the jury did reach. In any case, the evidence is similarly insufficient to support *Monell* liability on Plaintiff's other theories.

sufficient *quality* to demonstrate a deliberate, de facto policy of suppressing exculpatory evidence.

### A. Isolated incidents do not establish a *Monell* policy.

The evidence gathered from other cases involving similar allegations of withholding of evidence is insufficient to establish a pervasive and persistent practice. As the Second Circuit has stressed, "isolated acts of [misconduct] by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012). Thus, in *Jones,* the Court held that several purportedly related incidents of race-based abuse and insensitivity did not suffice to establish a municipal policy of violating the constitutional rights of black people. *Id.* at 82. Though the Court acknowledged that, "[w]ithout doubt some of these incidents . . . would have justified imposition of liability under Section 1983 against the individual abusive officers," it held that they fell "far short of showing a policy, custom, or usage . . . and far short of showing abusive conduct among officers so persistent that it must have been known to supervisory authorities." *Id.* at 84, 85.

Similarly, in *Outlaw v. City of Hartford*, 884 F.3d 351 (2d Cir. 2018), the Second Circuit held that a plaintiff's compilation of eighty-six excessive-force complaints against Hartford police officers (along with evidence from a Civilian Police Review Board report, other lawsuits, and expert testimony) was insufficient to establish a municipal policy of "deliberate indifference to excessive force." *Id.* at 380. As the Court noted, while the *volume* of evidence the plaintiff amassed might appear

compelling, it was "lacking in sufficient detail" to permit the conclusion that these incidents stemmed from a de facto municipal policy. *Id.* at 379.

Likewise, in *Tieman v. City of Newburgh*, the court stressed that even a "litany of other police-misconduct cases" are "insufficient to make a plausible case for *Monell* liability" where "they either were different from the misconduct alleged in the complaint, post-dated the alleged misconduct in the case at hand," or involved less than "evidence of misconduct." 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015) (collecting cases). Indeed, even "allegations of thirteen instances of excessive force during arrests over four years . . . during which hundreds, if not thousands, of arrests were made does not plausibly demonstrate that the use of excessive force during arrest was so frequent and pervasive to constitute a custom." *Id.*[2]

The evidentiary deficiency in these cases is not one of volume, but quality. The mere fact that a plaintiff can point to similar incidents of misconduct does not establish that the incidents are so related, and so pervasive and widespread, to be attributable to a municipal policy, as opposed to individual actors. Plaintiff's evidence is similarly deficient. While he points to purportedly related incidents in which exculpatory evidence was allegedly not revealed to prosecutors (along with

---

[2] Plaintiff also cites the Second Circuit's decision in *Golino v. City of New Haven*, but in *Golino*, the district court granted summary judgment to the City on municipal liability because the evidence did not support an unconstitutional policy or custom. 761 F. Supp. 962, 972–73 (D. Conn. 1991). The Second Circuit's later reference, in addressing the individual officers' qualified immunity, to one detective's "general practice" concerning warrant affidavits did not establish that the practice was department-wide or attributable to the municipality. *See Golino v. City of New Haven*, 950 F.2d 864, 867 (2d Cir. 1991).

generalized descriptions or characterizations of police practices), this evidence does not provide a basis from which the jury could reliably determine that the alleged practice of suppressing favorable evidence was so prevalent, widespread, and persistent that it carried the force of law. It does not, for example, establish how frequently favorable evidence was withheld from prosecutors (and how that compares with how frequently favorable evidence was properly disclosed), how many (and what percentage of) officers engaged in this practice, or how long the practice had been in place prior to January 1991. That omission is especially significant given testimony that the NHPD had approximately 380 officers, including 60 detectives, and handled approximately 1,500 cases in a given year. *See* Trial Tr. 484:4–485:11.

Cases where courts *have* found sufficient evidence of a *Monell* policy or custom tend to include "persuasive statistical evidence" establishing that a particular practice is truly widespread and persistent, or evidence that the practice was approved of by policymakers. *Compare Floyd v. City of New York*, 959 F. Supp. 2d 540, 658–60 (S.D.N.Y. 2013) (noting plaintiffs' "persuasive statistical evidence" regarding the widespread nature of the NYPD's stop-and-frisk practice); *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 872 (2d Cir. 1992) (reinstating jury verdict where 100% of disciplined female probationary officers were terminated compared to roughly 63% of male officers); *with Carmichael v. City of New York*, 34 F. Supp. 3d 252, 263–64 (E.D.N.Y. 2014) (granting summary judgment on *Monell* claim where plaintiff presented statistically significant support for claims because the evidence was too attenuated to show a widespread and persistent practice); *Cipolloni v. City*

5

*of New York*, 758 F. App'x 76, 79 (2d Cir. 2018) (affirming grant of motion to dismiss where plaintiff attempted to rely on statistical analysis to allege persistent and widespread practice of making arrests based on database errors). That sort of evidence—presented even in cases that ultimately failed—stands in stark contrast to the more diffuse evidence presented here (and in *Jones*, *Outlaw*, *Tieman*, and similar cases). Because Plaintiff's evidence is not of sufficient quality to establish a widespread and pervasive practice of evidence suppression, it cannot support the jury's verdict.

## B. The testimony of NHPD officers does not establish a *Monell* policy.

Plaintiff argues that a single witness's testimony can support a verdict, *see* Opp. at 10–11, citing *Bradshaw v. City of New York*, 855 F. App'x 6, 9 (2d Cir. 2021), and *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 52–53 (2d Cir. 2025). But *Bradshaw* actually rejected the plaintiff's *Monell* claim outright, 855 F. App'x at 11 n.2, and *Edelman* was not a *Monell* case at all. Even assuming one witness's testimony can provide sufficient evidence of a *Monell* custom, the testimony of Sweeney, Pettola, and Sullivan does not. While their testimony, if credited, supports an inference that there were deficient documentation and disclosure practices within the NHPD, it does not establish a practice of suppressing evidence so widespread, pervasive, and persistent as to have the force of law. Even crediting their testimony, it does not provide sufficient information about the number or proportion of detectives who engaged in evidence suppression or the degree to which suppressing evidence was approved by policymakers. Particularly in light of NHPD's formal policy

6

*prohibiting* this practice, this witness testimony was not sufficient to show a widespread and pervasive contrary practice having the force of law.

Plaintiff's reliance on *Jeffes v. Barnes*, 208 F.3d 49, 62 (2d Cir. 2000), is misplaced. *See* Opp. at 11. The testimony credited in *Jeffes* came from the official responsible for the facility's day-to-day operations, and the custom it described was traced directly to the Sheriff—the acknowledged final policymaker—whose own conduct adhered to that code of silence. *See* 208 F.3d at 61–62. That link permitted the conclusion that a code of silence was standard operating procedure, rather than the practice of individual employees. In contrast, Sweeney, Pettola, and Sullivan did not occupy policymaking roles, and none testified that Chief Pastore knew of, tolerated, or acquiesced in a practice of withholding favorable evidence from prosecutors. If anything, *Jeffes* illustrates the sort of evidence missing here: evidence of a practice "so widespread as to imply the constructive acquiescence of Chief of Police Nicholas Pastore." Opening Br., Ex. 10 at 31.

**C. The Rule 30(b)(6) testimony does not establish a *Monell* policy.**

Plaintiff offers the deposition testimony of the City's Rule 30(b)(6) designee as corroboration of the custom found by the jury. *See* Opp. at 9, 11. But that testimony does not, and cannot, corroborate the alleged policy because it does not address it.

The designee described what NHPD's written materials required and admitted that: (1) the rules did not use the word "exculpatory" or "impeachment" before 2016; (2) no written policy or training directive required detectives to take notes during unrecorded interviews or to transmit such notes to the prosecutor; and (3) detectives

7

in 1991 commonly conducted lengthy unrecorded interviews before taking a recorded statement. *See id.* at 7 (citing Court Ex. 7, Dell Dep. at 42:8–43:5, 43:22–44:13, 45:5–22); *id.* at 12 (citing Court Ex. 7, Dell Dep. at 49:15–50:21, 51:9–14, 54:1–24). While these admissions may support the inference that NHPD could have done a better job of training its detectives on what constitutes exculpatory and impeachment evidence, they do not support, let alone establish, the conclusion that NHPD had an unwritten policy of withholding favorable evidence or that detectives in fact withheld evidence in such a widespread and pervasive manner as to illustrate a custom with the force of law. In particular, the witness did not testify about what detectives routinely communicated or failed to communicate to prosecutors. The absence of a written directive to take or transmit notes is not, without more, proof that detectives routinely withheld favorable information by all available means.

Additionally, Plaintiff's characterization of Chief Pastore as deliberately protecting Raucci likewise rested on an unsupported inference. Sullivan testified that he had no personal knowledge of any intention on Pastore's part to protect Raucci from the FBI, and that he understood Pastore's instruction as directing Raucci to stop the behavior. *See* Trial Tr. 2615:3–11. The record also reflected that charges were brought and that Raucci was suspended pending a full hearing. *See, e.g.*, Trial Tr. 1793:24–1794:4 (quoting 1996 memorandum from Chief Pastore stating, "Based on an ongoing internal investigation, probable cause exists that Detective Vincent Raucci, Jr. has seriously violated several rules of our department. Formal charges will be issued within a reasonable time frame."). Any inference drawn by the jury

8

that Pastore acted to facilitate or protect unconstitutional investigative practices in Morant's case would have been against the weight of the evidence.

## II. There is insufficient evidence to establish that any custom was the moving force behind the constitutional violation.

Even if Plaintiff had established a widespread custom, the verdict independently fails for lack of causation. *Monell* requires that the municipal practice be the "moving force" behind the violation and requires a "direct causal link" between the constitutional deprivation and the practice, which must be "closely related to the ultimate injury." *City of Canton v. Harris*, 489 U.S. 378, 385, 391 (1989). That requirement prevents municipal liability from collapsing into *respondeat superior*. The asserted causal chain here required proof of three distinct links: (1) that the custom caused or influenced the officers' conduct; (2) that it caused relevant information in this investigation to remain undisclosed; and (3) that the resulting nondisclosure caused Plaintiff's injury. Evidence that deficient disclosure or reporting practices could generally facilitate or conceal misconduct does not establish those links in this case.

Raucci was the only defendant found liable on a *Brady* claim. Plaintiff's theory was that Raucci (and Raucci alone) had a specific personal motive connected to alleged corruption and the drug trade. As Justice Scalia explained in *Connick*, where a police officer willfully suppresses evidence for his own reasons, rather than as part of a systemic failure, then "the 'moving force' . . . behind the suppression of evidence" is the individual, not a municipal practice. 563 U.S. at 76 (Scalia, J., concurring). There is no evidence that Raucci personally knew of or acted in reliance on any of the

9

comparator incidents, that he understood there to be a departmental policy of suppression, or that he made any decision in this investigation because of that practice. Instead, the evidence suggests that his personal motivation to frame Scott Lewis was the moving force behind his suppression of evidence favorable to Plaintiff. Nor does Drago's general opinion supply the missing link. Although he opined that a failure to investigate after notice may communicate tacit approval and embolden a corrupt officer, there was no evidence that Raucci knew before January 1991 of any failure to discipline officers for similar misconduct. A general account of how deficient practices can facilitate misconduct does not establish that the asserted custom actually influenced Raucci's decisions in this investigation.

Plaintiff argues that the jury could find that a custom of suppressing favorable evidence caused Raucci and Maher to commit *other* violations, namely fabricating evidence and coercing witness testimony. D.E. 637 at 17–18. Even if that were true, the same causation problem would remain. Indeed, this very alleged fabrication and coercion is the favorable evidence that Raucci and Maher failed to disclose to prosecutors. In the same way that Raucci's personal motivation was the moving force behind his violation of Plaintiff's *Brady* rights, it caused his (and Maher's) violation of Plaintiff's other constitutional rights.

## CONCLUSION

Because the evidence is insufficient to support the jury's verdict on Count Seven and because Plaintiff concedes that the City is entitled to judgment on Count Nine, the Court should vacate the judgment and enter judgment in the City's favor.

10

Respectfully submitted,

/s/ *Tadhg Dooley*
Tadhg Dooley (ct29364)
Daniel Passeser (ct32099)
Armando Ghinaglia (ct31859)
Wiggin and Dana LLP
One Century Tower
265 Church Street
New Haven, CT 06510
(203) 498-4400
tdooley@wiggin.com

*Counsel for Defendant City of New Haven*

11